UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

TERRE BEACH, *et al.*, individually and on behalf  :
of themselves and all others similarly situated,   :
                                                    :
                          Plaintiffs,               :     Case No. 17-CV-00563-JMF
                                                    :
              v.                                    :
                                                    :
JPMORGAN CHASE BANK, NATIONAL                       :
ASSOCIATION, JPMORGAN CHASE &                       :
COMPANY, *et al.*,                                  :
                                                    :
                          Defendants.               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT

Susan L. Saltzstein
James R. Carroll (*pro hac vice pending*)
Michael S. Hines (*pro hac vice pending*)
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
susan.saltzstein@skadden.com
james.carroll@skadden.com
michael.hines@skadden.com

Counsel for Defendants
JPMorgan Chase Bank, National Association,
JPMorgan Chase & Company, Compensation
& Management Development Committee of
the Board of Directors for JPMorgan Chase &
Company, the Selection Committee, the
Employee Plans Investment Committee, J.P.
Morgan Investment Management Inc., Head of
Human Resources for JPMorgan Chase & Co.,
Chief Financial Officer for JPMorgan Chase &
Co., Benefits Director of JPMorgan Chase &
Co., Stephen B. Burke, Lee R. Raymond,
William C. Weldon, John C. Donnelly,
Marianne Lake, Bernadette J. Branosky, and
Thelma Ferguson, and John Does 1-20

Dated:  June 15, 2017

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND .................................................................................................................. 4

ARGUMENT ....................................................................................................................... 6

I.    COUNT I SHOULD BE DISMISSED BECAUSE THE COMPLAINT IS
      DEVOID OF WELL-PLEADED ALLEGATIONS OF A FIDUCIARY BREACH.......... 7

      A.   Plaintiffs' Allegations Of "Excessive" Fees And Purported
           "Self-Dealing" Do Not Support A Breach Of Fiduciary Duty Claim .................... 8

           1.   The Fees Associated With The Plan's
                Investments Are Within A Range Found By
                Other Courts To Be Reasonable As A Matter Of Law .............................. 8

           2.   Allegations That The Plan Includes
                Investment Options Affiliated With JPMorgan And
                "Business Partners" Do Not Support A Fiduciary Duty Claim ................ 11

      B.   Allegations That Defendants Failed To Implement
           A Process To Monitor Plan Investments Or Make Timely
           Plan Changes Are Not Supported By Any Factual Allegations .......................... 13

      C.   Plaintiffs' Assertions Of A Failure To "Use
           All The Tools Available" Do Not State A Claim,
           And Are Contradicted By The Complaint's Allegations ..................................... 14

II.   COUNT III SHOULD BE DISMISSED BECAUSE DEFENDANTS PROVIDED
      COMPLETE AND ACCURATE DISCLOSURES TO PLAN PARTICIPANTS .......... 15

III.  COUNTS IV AND V SHOULD BE DISMISSED
      BECAUSE THE CHALLENGED TRANSACTIONS
      ARE EXPRESSLY PERMITTED, AND ARE TIME BARRED .................................... 19

      A.   The Challenged Transactions Are Permitted
           Under ERISA's Prohibited Transaction Exemptions ........................................... 19

      B.   The Challenged Transactions Should Be
           Dismissed Insofar As They Purport To Challenge
           Transactions Barred By ERISA's Three-Year Statute Of Limitations ................. 20

IV.   COUNTS II, VI, AND VII SHOULD BE DISMISSED
      BECAUSE THERE CAN BE NO LIABILITY FOR THOSE
      COUNTS IN THE ABSENCE OF AN UNDERLYING ERISA VIOLATION.............. 22

V.    THE COMPLAINT DOES NOT ADEQUATELY ALLEGE THAT JPMORGAN
      CHASE, THE BANK, OR THE CMDC DEFENDANTS WERE FIDUCIARIES.......... 23

CONCLUSION.................................................................................................................... 25

i

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................6, 12, 13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................6, 13

*Brotherston v. Putnam Investments, LLC*,
    No. 15-13825-WGY, 2017 WL 1196648 (D. Mass. Mar. 30, 2017) ............................9, 10

*Coulter v. Morgan Stanley & Co., Inc.*,
    753 F.3d 361 (2d Cir. 2014) .........................................................22

*David v. Alphin*,
    704 F.3d 327 (4th Cir. 2013) ......................................................20, 21

*Dupree v. Prudential Insurance Co. of America*,
    No. 99-8337, 2007 WL 2263892 (S.D. Fla. Aug. 10, 2007) ...............................11

*Fifth Third Bancorp. v. Dudenhoeffer*,
    134 S. Ct. 2459 (2014).................................................................7

*Guo v. IBM 401(k) Plus Plan*,
    95 F. Supp. 3d 512 (S.D.N.Y. 2015) ....................................................4

*Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*,
    530 U.S. 238 (2000)..................................................................22

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) ...................................................2, 8, 9, 15

*In re Citigroup ERISA Litigation*,
    No. 07 Civ. 9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009) .........................24, 25

*In re JPMorgan Chase & Co. ERISA Litigation*,
    No. 12 civ. 04027, 2016 WL 110521 (S.D.N.Y. Jan. 8, 2016)...........................24

*In re Lehman Bros. Sec. & ERISA Litigation*,
    683 F. Supp. 2d 294  (S.D.N.Y. 2010), *aff'd sub nom.*,
    *Rinehart v. Akers*, 722 F.3d 137 (2d Cir. 2013), *vacated on other grounds*,
    134 S. Ct. 2900 (2014)...............................................................24

*Janese v. Fay*,
    692 F.3d 221 (2d Cir. 2012) ........................................................21

*Laboy v. Board of Trustees of Building Service*,
    No. 11-cv-5127(HB), 2012 WL 3191961 (S.D.N.Y. Aug. 7, 2012) ...................................14

*Leber v. Citigroup, Inc.*,
    No. 07 Civ. 9329(SHS), 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) ..............................20

*Loomis v. Exelon Corp.*,
    658 F.3d 667 (7th Cir. 2011) ...................................................................................9, 14, 15

*Malone v. Teachers Insurance & Annuity Ass'n of America*,
    15-cv-08038, 2017 WL 913699 (S.D.N.Y. Mar. 7, 2017)...................................................18

*Meiners v. Wells Fargo & Co.*,
    No. 16-3981(DSD/FLN), 2017 WL 2303968 (D. Minn. May 25, 2017) ...........2, 3, 9, 10, 11

*Pegram v. Herdrich*,
    530 U.S. 211 (2000).........................................................................................................23

*Pension Benefit Guarantee Corp. v. Morgan Stanley Investment Management, Inc.*,
    712 F.3d 705 (2d Cir. 2013) .........................................................................................7, 13

*Ramnaraine v. Merrill Lynch & Co., Inc.*,
    No. 1:13-CV-7889-GHW, 2014 WL 4386733 (S.D.N.Y. Sept. 5, 2014) ............................21

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3rd Cir. 2011) .............................................................................................9

*Rinehart v. Akers*,
    722 F.3d 137 (2d Cir. 2013), *vacated on other grounds*, 134 S. Ct. 2900 (2014)...............22

*Tibble v. Edison International*,
    729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds*, 135 S. Ct. 1823 (2015)........ 9, 15

*Young v. General Motors Investment Management Corp.*,
    550 F. Supp. 2d 416 (S.D.N.Y. 2008), *aff'd on other grounds*,
    325 F. App'x 31 (2d Cir. 2009) ........................................................................................21

## RULES & STATUTES                            PAGE(S)

29 C.F.R. § 2550.404a-5...............................................................................................16, 17, 18

29 U.S.C. § 1002.........................................................................................................................24

29 U.S.C. § 1104............................................................................................................................7

29 U.S.C. § 1106.........................................................................................................................19

29 U.S.C. § 1108.........................................................................................................................19

29 U.S.C. § 1113 ..................................................................................................................20

Fed. R. Evid. 407 ...............................................................................................................14

Investment Company Act, 15 U.S.C. §§ 80a-1, *et. seq.* ....................................15, 19, 20

**OTHER**                                                                                                    **PAGE(S)**

Class Exemption Involving Mutual Fund In-House Plans Requested by the Investment Company
    Institute, 42 Fed. Reg. 18,734 (Mar. 31, 1977) ("PTE 77-3") ........................................11, 20

Notice of Proposed Rulemaking, Participant Directed Individual Account Plans,
    56 Fed. Reg. 10,724 (Mar. 13, 1991) ...................................................................................3

U.S. Department of Labor, Employee Benefits Security Administration, *A Look at 401(k)
    Plan Fees* (Aug. 2013) ........................................................................................................10

## PRELIMINARY STATEMENT

Defendant JPMorgan Chase & Co. ("JPMorgan Chase" or the "Company") is a financial holding company and a leading global financial services firm that employs over 240,000 people. Together with its affiliates and subsidiaries (collectively with JPMorgan Chase Bank, N.A. (the "Bank"), "JPMorgan") the Company offers its employees the opportunity to participate in the JPMorgan Chase 401(k) Savings Plan (the "Plan"). The Plan offers participants a diverse lineup of investment options that includes a range of investment strategies, risk profiles, and investment fees. The Plan's investment options include products managed by JPMorgan and a variety of other unaffiliated investment managers, including BlackRock, Inc. ("BlackRock"). Throughout the putative class period, the Plan offered an array of high-quality investment options with strong performance and reasonable fees, all of which were fully disclosed to Plan participants.[1]

Plaintiffs (six former employees who are or were participants in the Plan) allege that Defendants' conduct with respect to the Plan violated the Employee Retirement Income Security Act of 1974 ("ERISA"). The core allegation of Plaintiffs' Consolidated Amended Complaint (ECF No. 38, the "Complaint") is that Defendants breached their ERISA fiduciary duties of loyalty and prudence because they purportedly retained "unduly expensive Plan investment options" principally managed by JPMorgan and BlackRock, thereby "allowing higher than necessary fees" to be paid to JPMorgan. (Compl. ¶¶ 2-3.) The Complaint identifies twenty of the Plan's investment options as charging "excessive" fees (*id.* ¶¶ 121-57):[2] three JPMorgan-

---

[1]      Attached hereto as Appendix A is a table listing the Plan's investment options during the putative class period (*i.e.*, from 2011 through 2016).

[2]      For the Court's convenience, attached hereto as Appendix B is a table identifying -- to the best of Defendants' ability based on the Complaint's allegations -- which of the Plan's investment options are challenged by each Count of the Complaint. Count I appears to challenge twenty investment options as having purportedly "excessive" fees. (*See* Compl. ¶¶ 121-57.) Counts IV and V appear to challenge all but one of those same funds

affiliated mutual funds, seven BlackRock mutual funds, one separate account managed by another unaffiliated entity, Earnest Partners, and nine "target date" fund of funds.[3]  As explained below, all of Plaintiffs' claims are deficient for a variety of independently sufficient reasons.

Plaintiffs' breach of fiduciary duty claims (Count I) should be dismissed for at least three reasons.  *First*, as a matter of law, other courts have consistently held that the very same expense ratios (*i.e.*, the annual management fees charged by investment funds) identified in the Complaint are reasonable.  *See, e.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) (dismissing ERISA breach of fiduciary duty claims based on allegations of excessive fees).  Moreover, investment options need not be the least expensive available on the market: "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund." *Id.*  Indeed, just a few weeks ago a court in the District of Minnesota dismissed ERISA-based breach of fiduciary duty claims based on allegations that lower-cost, unaffiliated funds could have been added to the plan in lieu of higher-cost, affiliated options, holding that "[i]f such allegations were sufficient to survive a motion to dismiss, it would render fiduciaries liable to suit for failing to choose the cheapest, non-affiliated fund." *Meiners v. Wells Fargo & Co.*, No. 16-3981(DSD/FLN), 2017 WL 2303968, at *3 (D. Minn. May 25, 2017).

*Second*, Plaintiffs' conclusory allegations that the Plan included affiliated funds as investment options "in blatant self-dealing" are also insufficient to support a claim for breach of fiduciary duty.  (Compl. ¶ 3.)  Fundamentally, there is nothing unlawful about a financial services company -- like JPMorgan -- offering a selection of its *own* investment products to its

---

(*see id.* ¶¶ 222, 232 (challenging investment options affiliated with JPMorgan and BlackRock with purportedly "excessive" fees)), and Count III appears to challenge disclosures concerning the Plan generally and in connection with the Plan's Target Date funds.  Counts II, VI, and VII are derivative in nature and therefore do not purport to challenge specific investment options.

[3]        A "target date fund" is an investment in which the allocation of equity, bonds, and cash automatically changes to become more conservative as the "target" or retirement date approaches.  (*See* Compl. Ex. 3 at 3, 18.)

*own* employees in its *own* 401(k) retirement plan.  Plaintiffs' suggestion otherwise is contrary to the Department of Labor's ("DOL") regulations expressly permitting just that practice.  Indeed, the DOL offers the common sense observation that it would be "contrary to normal business practice for a company whose business is financial management to seek financial management services from a competitor."  Notice of Proposed Rulemaking, Participant Directed Individual Account Plans, 56 Fed. Reg. 10,724, 10,730 (Mar. 13, 1991); *see also Meiners*, 2017 WL 2303968, at *3 (rejecting allegations that defendants "acted in self-interest by choosing higher-cost affiliated funds over lower-cost non-affiliated funds").  Plaintiffs' self-dealing allegations are further implausible because JPMorgan, not Plan participants, paid the investment management fees associated with most of the Plan's JPMorgan-affiliated options during the putative class period.  Indeed, in 2016 -- long before Plaintiffs filed this case -- JPMorgan began paying the fees associated with two of the JPMorgan-affiliated mutual funds challenged in the Complaint (the Small Cap Core Fund and the Core Bond Fund).[4]

       *Third*, the Complaint offers no facts in support of Plaintiffs' "information and belief" assertion that JPMorgan receives fees in connection with the BlackRock funds offered in the Plan.  (Compl. ¶ 116.)  Separately, the bald allegation that Defendants failed to implement a process to monitor Plan investments is not only conclusory, but contradicted by the Complaint's allegations that the Plan's fiduciaries instituted a number of Plan changes in 2015 and 2016 that benefited Plan participants.  (*See id.* ¶ 117.)

       Plaintiffs' non-fiduciary claims fare no better.  The allegations relevant to Counts IV and V (Plaintiffs' "prohibited transaction" claims) make clear that the transactions they seek to challenge -- the Plan's offering of the same JPMorgan-affiliated mutual funds, BlackRock

---

[4]     In 2015, the Plan's fiduciaries removed from the Plan's investment lineup the third JPMorgan-affiliated mutual fund challenged in the Complaint -- the Mid Cap Growth Fund.

mutual funds, and target date fund of funds subject to their breach of fiduciary duty claims -- fall within ERISA's permitted transactions, which explicitly allow the offering of affiliated mutual funds and the receipt of reasonable compensation for managing 401(k) plan investment funds. Those claims should therefore be dismissed.  Moreover, even if the addition of those funds to the Plan's fund lineup were not specifically exempted -- and they are -- ERISA's statute of limitations bars Plaintiffs' prohibited transaction claims insofar as Plaintiffs seek to challenge investment options added to the Plan more than three years prior to commencing this action.

*Finally*, the Complaint fails to state any other valid claims because:  (i) the disclosure claims in Count III are barred by the Plan's complete and accurate participant disclosures concerning the Plan's investment options and fees; (ii) Counts II, VI, and VII are derivative, and therefore cannot survive in the absence of an underlying ERISA violation; and (iii) the only named fiduciaries for the Plan are defendants the Administrator, the Employee Plans Investment Committee (the "EPIC"), and the Selection Committee, and the cursory allegations in the Complaint are insufficient to allow the Court to conclude that either JPMorgan Chase, the Bank, or the Compensation Committee and associated individuals are fiduciaries.

## BACKGROUND[5]

The Plan is a "defined contribution" plan (Compl. ¶ 50), funded through both employee-directed contributions and JPMorgan's matching program.  Although not required by ERISA, JPMorgan matches employee contributions dollar-for-dollar up to 5% of eligible compensation for employees making less than $250,000 (*id.* ¶ 55), and makes discretionary

---

[5]     Relevant documents concerning the Plan, public filings, and required fee disclosures that were provided to Plan participants are included for this Court's reference as exhibits to the accompanying Declaration of Susan L. Saltzstein, submitted herewith (cited as "Saltzstein Decl. Ex."). The Court may properly consider these documents on a motion to dismiss because they are either required disclosures or Plaintiffs relied on these documents in bringing this action (*see, e.g.*, Compl. ¶ 99 (relying on the Plan's Forms 5500); and *id.* ¶ 146 n.16 (citing the Plan's Investment Fund Profiles). *See Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 522 (S.D.N.Y. 2015) (taking judicial notice of various plan-related documents relied on in bringing the action).

contributions to accounts for certain non-highly-compensated employees.  (Compl. Ex. 2 at 12.)
In total, JPMorgan voluntarily contributed approximately ***$2.1 billion*** to the Plan from 2011
through 2015.[6]  Moreover, throughout the putative class period, JPMorgan -- not participants --
paid the Plan's recordkeeping fees and other administrative expenses.  (*See* Compl. Ex. 2 at 17.)

   Investments in the Plan are entirely participant-directed -- that is, each participant
allocates the employee and employer contributions into any investment option available under
the Plan.  (*See id.* at 19.)  As set forth in the June 2016 Plan Investment Fund Profiles ("June
2016 Fund Profiles" (Saltzstein Decl. Ex. 13)), the Plan is currently comprised of a broad array
of eight index funds in the form of commingled trusts, four investment products actively-
managed by JPMorgan in the form of separate accounts or commingled trusts and for which the
investment management fees are paid by JPMorgan (not by Plan participants),[7] seven separate
accounts actively-managed by third-party managers, nine target date funds, and the JPMorgan
Chase Common Stock Fund.  (*See also* Appendix A.)  The Plan's investment options reflect a
variety of investment strategies and risk/return profiles; consequently, the management fees
charged by those options vary as well, currently ranging from 0.00% (in the case of options for
which JPMorgan absorbs the investment management fees) to 0.62%.  (*See generally* June 2016
Fund Profiles (Saltzstein Decl. Ex. 13).)

---

[6] JPMorgan contributed $2,089,812,734 to Plan participant accounts from 2011 through 2015.  (*See* 2011
Form 5500, at Schedule H Line 2a(1)(A) ($365,191,391) (Saltzstein Decl. Ex. 1); 2012 Form 5500, at Schedule H
Line 2a(1)(A) ($409,539,173) (Saltzstein Decl. Ex. 2); 2013 Form 5500, at Schedule H Line 2a(1)(A)
($438,186,359) (Saltzstein Decl. Ex. 3); 2014 Form 5500, at Schedule H Line 2a(1)(A) ($415,877,629) (Saltzstein
Decl. Ex. 4); 2015 Form 5500, at Schedule H Line 2a(1)(A) ($461,018,182) (Saltzstein Decl. Ex. 5).)

[7] There are three general types of investments that are included in defined contribution 401(k) plans:  mutual
funds, commingled trusts, and separate accounts.  (*See* Compl. ¶ 89.)  Commingled trusts are administered by a bank
and seek to mix the assets of multiple institutional investors, while separate accounts are managed for a particular
client who becomes the direct owner of the underlying securities.  Each form of investment has its advantages:  for
example, mutual funds are subject to extensive regulatory and disclosure rules (*see infra* Argument, Part I.C at 14-
15), and commingled trusts and separate accounts tend to have lower fees than mutual funds.

The Plan's current investment lineup reflects certain Plan changes instituted in 2015 and 2016 -- a point Plaintiffs unfairly critique but which undercuts Plaintiffs' allegations that the Plan's fiduciaries failed to review the Plan's investment lineup. (*See infra* Argument, Part I.B at 13-14.) Those Plan changes included the (1) removal of two mid-cap funds from the Plan's lineup and the replacement of those funds with a lower-cost index fund (Compl. ¶¶ 121-26); (2) conversion of two mutual funds managed by JPMorgan to separate account and commingled account formats, and ***elimination*** of the fees for Plan participants associated with those two investments (*id.* ¶¶ 133-34; 140-41); and (3) reduction of the investment management fees for all of the BlackRock mutual funds by as much as 40% (*id.* ¶ 148). As a result of those Plan modifications, JPMorgan currently pays all of the investment management fees associated with JPMorgan-affiliated investment options that participants have the ability to select. Prior to those changes, the management fees charged by the Plan's investment options ranged from 0.00% to 0.93%. (*See generally* June 2016 Fund Profiles (Saltzstein Decl. Ex. 13).) Contrary to Plaintiffs' allegations that the Plan's fees were "excessive," even before the Plan's fee reductions in 2015 and 2016, the range of fees associated with the Plan's investments were well within a range found reasonable as a matter of law by other courts. (*See infra* Argument, Part I.A.1 at 8-10.) Now, those fees are even less expensive.

## ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ERISA cases in particular, the Second Circuit has cautioned that "the prospect of discovery in a suit claiming breach of fiduciary duty is

ominous, potentially exposing the ERISA fiduciary to probing and costly inquires and document requests[,]" thus "elevat[ing] the possibility that a plaintiff with a largely groundless claim will simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) (internal quotations and alteration omitted) ("*Morgan Stanley*"). Indeed, the Supreme Court has observed that a motion to dismiss is an "important mechanism for weeding out meritless [ERISA] claims." *Fifth Third Bancorp. v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014). For the multiple independent reasons discussed below, the Complaint should be dismissed.

## I.   COUNT I SHOULD BE DISMISSED BECAUSE THE COMPLAINT IS DEVOID OF WELL-PLEADED ALLEGATIONS OF A FIDUCIARY BREACH

Count I purports to assert a claim that Defendants breached their fiduciary duties under ERISA § 404, 29 U.S.C. § 1104(a). ERISA imposes a "[p]rudent man standard of care" for fiduciaries of employee benefit plans. 29 U.S.C. § 1104(a). The prudent man standard charges fiduciaries with, among other things, acting (1) "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries[] and . . . defraying reasonable expenses" (*i.e.*, a duty of loyalty); and (2) "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use . . ." (*i.e.*, a duty of prudence). *Id.* § 1104(a)(1)(A)-(B)).

Plaintiffs allege that Defendants acted disloyally and imprudently by (a) retaining in the Plan twenty investment options managed by JPMorgan and other investment managers despite their alleged "unduly excessive fees" (Compl. ¶¶ 5; 194; Appendix B); (b) failing to have in place a method of systematic review of the Plan's investment options to monitor expenses and performance, and failing to make timely changes to the Plan's investment lineup to remove

certain investment options to reduce fees (*id.* ¶¶ 5; 195-97); and (c) "failing to consider and offer commingled accounts, separate accounts, or collective trusts" (*id.* ¶ 5).  None of Plaintiffs' allegations are sufficient to state a breach of fiduciary duty claim as a matter of law.

A.    **Plaintiffs' Allegations Of "Excessive" Fees And Purported**
      <u>**"Self-Dealing" Do Not Support A Breach Of Fiduciary Duty Claim**</u>

The essence of Plaintiffs' breach of fiduciary duty claim concerns allegations that Defendants included in the Plan "unduly expensive" investment options managed by JPMorgan or "business partners."  (Compl. ¶¶ 2-3; 5; 194-97.)  Specifically, Plaintiffs identify as purportedly having excessive fees (*see* Appendix B):  (1) three JPMorgan-affiliated mutual funds -- the Mid Cap Growth Fund, the Small Cap Core Fund, and the Core Bond Fund (Compl. ¶¶ 121-145); (2) one separate account managed by Earnest Partners (*id.* ¶¶ 121-30) and seven mutual funds managed by BlackRock (*id.* ¶¶ 146-57); and (3) nine target date fund of funds (*id.*). As discussed below, those allegations do not support a claim.

1.    **The Fees Associated With The Plan's**
      **Investments Are Within A Range Found By**
      <u>**Other Courts To Be Reasonable As A Matter Of Law**</u>

Plaintiffs' "excessive" fee allegations do not support a claim for breach of fiduciary duty because the range of fees associated with the twenty investment options Plaintiffs challenge are reasonable as a matter of law, and Plaintiffs' purported "comparisons" of those fees with the fees for other hypothetical options are meaningless.

*First*, the investment management fees for the twenty options about which Plaintiffs complain (*see* Appendix B) -- which Plaintiffs allege to be between 4 basis points (0.04%) and 93 basis points (0.93%) before the 2015 and 2016 Plan changes described above (Compl. ¶¶ 122; 148) -- are well within a range that other courts have consistently held to be reasonable as a matter of law.  For example, in *Hecker*, the Seventh Circuit affirmed dismissal of

8

claims that defendants breached fiduciary duties by selecting investment options with excessive fees.  556 F.3d at 586.  The court observed that -- like the Plan here -- there was a wide a range of expense ratios from 7 basis points to just over 100 basis points (0.07% to 1.00%).  *Id.*; *see also Brotherston v. Putnam Invs., LLC*, No. 15-13825-WGY, 2017 WL 1196648, at *6-7, and n.6 (D. Mass. Mar. 30, 2017) (holding expense ratios of affiliated funds between 0.25% and 1.65% reasonable); *Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013) (rejecting excessive fee arguments where expense ratios varied from 0.03% to more than 2.00%), *vacated on other grounds*, 135 S. Ct. 1823 (2015); *Renfro v. Unisys Corp.*, 671 F.3d 314, 327-28 (3rd Cir. 2011) (rejecting excessive fee claims where expense ratios ranged from 0.1% to 1.21%); *Loomis v. Exelon Corp.*, 658 F.3d 667, 669-70 (7th Cir. 2011) (rejecting excessive fee claims where expense ratios ranged from 0.03% to 0.96%).  The expense ratios at issue here are alleged to be even lower than those found to be reasonable as a matter of law in *Hecker*, *Brotherston*, *Tibble*, *Renfro*, and *Loomis*.

   *Second*, allegations that other investment options from different investment managers exist and might charge lower fees than the Plan's investment options are indicative of nothing.  (Compl. ¶¶ 123 n.8; 127 n.9; 137; 144; 151.)  Indeed, the *Meiners* court rejected that identical argument in dismissing ERISA breach of fiduciary duty claims based on allegations that a 401(k) plan included higher-cost, affiliated investment options.  2017 WL 2303968, at *3-4.  In that case, plaintiff alleged that defendants violated ERISA by including in their 401(k) plan target date funds managed by defendant Wells Fargo that were more expensive than "comparable" funds offered by Vanguard and Fidelity.  *Id.* at *1.  In rejecting that argument, the court held that fees of other funds from other managers might be lower was inadequate to support a claim for breach of fiduciary duty under ERISA:

> Nothing in the complaint suggests that the Vanguard and Fidelity funds are
> reliable comparators, offer similar services, or are of similar size . . . .  Without a
> meaningful comparison, the mere fact that the Wells Fargo funds are more
> expensive than two other funds does not give rise to a plausible breach of
> fiduciary duty claim.

*Id.* at *3.

Similarly here, the Complaint's attempts to compare the expenses of the Plan's

investment options to other investment options do not give rise to a plausible claim because there

are no allegations that those comparisons are meaningful.  For example, most of the

"comparisons" do not purport to compare *specific* funds to the Plan's investment options, but

rather conclusorily state that other, unidentified funds are available from different investment

managers at lower costs.  (*See e.g.*, Compl. ¶ 144 ("[a]ctively managed mutual funds from

companies such as Vanguard, SEI, and Dimensional Fund Advisors would have similarly cost at

least 40 percent less than the amount Plan participants paid in the JPMorgan Core Bond Fund");

(*see also id.* ¶¶ 123 n.8; 137.)  Further inadequate are Plaintiffs' comparisons of the expense

ratios of the Plan's actively-managed products to expense ratios of passively-managed products

from Vanguard and other managers.  (*See id.* ¶¶ 128 n.10; 137; 144 n.15.)  Actively-managed

funds are operated by "an investment adviser who continually researches, monitors, and actively

trades the holdings of the fund to seek a higher return than the market[ and these funds] generally

have higher fees."  U.S. Dep't of Labor, Emp. Benefits Sec. Admin., *A Look at 401(k) Plan Fees*,

at 7 (Aug. 2013), *available at* http://www.dol.gov/ebsa/pdf/401kFeesEmployee.pdf (last visited

June 14, 2017).  Passively-managed products, by contrast, "seek to obtain the investment results

of an established market index . . . by duplicating the holdings included in the index" and

generally have lower management fees because they "require little research or trading activity."

*Id.*  That is an inapt "apples to oranges" comparison.  *See Brotherston*, 2017 WL 1196648, at *7.

     **2.**     **Allegations That The Plan Includes Investment**
            **Options Affiliated With JPMorgan And "Business**
            <u>**Partners" Do Not Support A Fiduciary Duty Claim**</u>

Plaintiffs' allegations that the twenty purportedly "excessive" fee investment options are affiliated with JPMorgan "and/or business partners" and therefore constitute self-dealing do not support a breach of fiduciary duty claim.  (*E.g.*, Compl. ¶¶ 3; 99-110.)

*First*, there is nothing unlawful about a financial services company offering its own mutual funds to its own employees in an in-house 401(k) plan.  Indeed, ERISA's implementing regulations *expressly allow* mutual fund advisors and their affiliates to invest in affiliated mutual funds.  *See* Class Exemption Involving Mutual Fund In-House Plans Requested by the Investment Company Institute, 42 Fed. Reg. 18,734 (Mar. 31, 1977) ("PTE 77-3").  Consequently, courts have recognized that plan fiduciaries do not violate ERISA merely by offering affiliated investment products.  Indeed, "[i]f such allegations were sufficient to survive a motion to dismiss, it would render fiduciaries liable to suit for failing to choose the cheapest, non-affiliated fund - even if that fund is plagued by other problems."  *Meiners*, 2017 WL 2303968, at *3 (internal quotations omitted).  *See also Dupree v. Prudential Ins. Co. of Am.*, No. 99-8337, 2007 WL 2263892, at *45 (S.D. Fla. Aug. 10, 2007) (holding"[s]imply because Prudential followed such a practice . . . does not give rise to an inference of disloyalty, especially where these practices are universal among plans of the financial services industry").

Moreover, directly contradicting Plaintiffs' self-dealing allegations is that JPMorgan, not Plan participants, currently pays the investment management fees associated with JPMorgan-affiliated investments in the Plan.  (*See* June 2016 Fund Profiles at 11, 19-20, 24, 34 (Saltzstein Decl. Ex. 13).)  As noted, in 2015 and 2016 -- long before this lawsuit was filed -- the Plan's fiduciaries made certain changes to the Plan's investment lineup, including changes to the

three JPMorgan-affiliated options that Plaintiffs specifically challenge.[8]  Even before those

changes, JPMorgan paid the fees associated with many of the JPMorgan-affiliated options that

participants have the ability to select, and did so for the entirety of the putative class period.[9]

Consequently, Plaintiffs' "self-dealing" allegations are not plausible:  if Defendants included

affiliated options to "enrich[] themselves" at the expense of Plan participants (Compl. ¶ 3), then

JPMorgan would not pay the investment management fees associated with those options.

Second, the allegations that the Plan included BlackRock funds due to a

"longstanding business arrangement" fare no better.  (Compl. ¶ 108.)  The Complaint does not

describe the nature of the alleged "longstanding business relationship" with BlackRock; rather, it

merely speculates that (i) "in return for access to the Plan, BlackRock shared management or

performance fees with the Bank and/or an affiliate" (id. ¶¶ 110; 116) and (ii) in January 2017

BlackRock moved a portion of its own assets to the custody of JPMorgan, from which JPMorgan

earns fees (id. ¶¶ 108; 116).  But Plaintiffs do not put forth any factual allegations supporting

those conclusory assertions.  For example, there are no allegations of fact that BlackRock pays

any fees to JPMorgan in connection with the Plan, nor are there any factual allegations that

BlackRock custodied assets with JPMorgan in exchange for BlackRock funds being included in

the Plan.  Rather, there is a "common sense," "obvious alternative explanation" for the inclusion

---

[8]      In 2015 and 2016,  JPMorgan converted the Plan's holdings in the JPMorgan-affiliated Small Cap Core
Fund and Core Bond Fund from mutual funds to separate account and commingled account formats, and eliminated
the fees for Plan participants associated with those investments.  (Compl. ¶¶ 133-34; 140-41.)  The Plan's fiduciaries
also removed the Mid Cap Growth Fund from the Plan's investment lineup.  (Id. ¶¶ 121-24.)  Prior to those changes,
Plan participants were charged the investment management fees associated with those three mutual funds.  (See, e.g.,
January 2015 Fund Profiles at 24, 33, 35 (Compl. Ex. 3).)

[9]      For example, JPMorgan paid the JPMorgan-related investment management fees associated with both the
Short-Term Fixed Income Fund and the Stable Value Fund.  Similarly, for the Plan's Target Date funds JPMorgan
paid the expenses associated with the maintenance of the glide path and the investment management fee for the
JPMorgan emerging market debt component of those funds.  (See July 2011 Fund Profiles at 11, 20-24 (Saltzstein
Decl. Ex. 7); January 2012 Fund Profiles at 11, 20-24 (Saltzstein Decl. Ex. 8); December 2013 Fund Profiles at 11,
19-21 (Saltzstein Decl. Ex. 11); January 2015 Fund Profiles at 11, 19-21 (Saltzstein Decl. Ex. 12); June 2016 Fund
Profiles at 11, 19-21 (Saltzstein Decl. Ex. 13).)

of BlackRock funds in the Plan's investment menu -- those funds were included because
BlackRock is a high-quality investment manager that offers low-cost index products.  *See Iqbal*,
556 U.S. at 679, 682 (internal quotations omitted).

      **B.**      **Allegations That Defendants Failed To Implement
A Process To Monitor Plan Investments Or Make Timely
<u>Plan Changes Are Not Supported By Any Factual Allegations</u>**

      The Complaint's allegation that Defendants "fail[ed] to have in place a method of
systematic review both of the Plan's individual investment options and of the portfolio as a
whole" (Compl. ¶ 196) is wholly conclusory and insufficient to support an ERISA breach of
fiduciary duty claim.  For example, in *Morgan Stanley*, the Second Circuit "consider[ed] the
degree of factual detail needed in a complaint in order to present nonconclusory and plausible
allegations that a pension plan administrator purchased and continued to hold certain mortgage-
backed securities in violation of its fiduciary duties" under ERISA.  712 F.3d at 709.  In
affirming dismissal of the complaint, the court held that the complaint contained no factual
allegations about defendant's knowledge or process of selecting and retaining plan investments,
and the circumstantial factual allegations about the failure to monitor plan investments (such as
poor performance and media reports about mortgage-backed securities) did not give rise to a
plausible inference that defendant acted imprudently in violation of ERISA.  *Id.* at 721-22.

      Similarly here, Plaintiffs have not offered any factual allegations supporting their
process criticism.  Rather, the Complaint ***concedes*** that Plaintiffs have no "actual knowledge of
the specifics of Defendants' decision-making processes with respect to the Plan, including
Defendants' processes for selecting, monitoring, or removing the Plan investments."  (Compl. ¶
21.)  That acknowledgement makes plain that Plaintiffs have not supported their claim with
"enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

13

Moreover, the Complaint concedes that in 2015 and 2016, the Plan's fiduciaries instituted a variety of Plan changes beneficial to Plan participants.  (*See supra* Background, at 4-6.)  Those changes directly contradict Plaintiffs' allegations that the Plan's fiduciaries were not monitoring the Plan's investments.  Further, that the Plan made those changes before Plaintiffs filed this litigation does not -- and cannot -- "serve as evidence that prior conduct was imprudent."  *Laboy v. Bd. of Trs. of Bldg. Serv.*, No. 11-cv-5127(HB), 2012 WL 3191961, at *3 (S.D.N.Y. Aug. 7, 2012) (dismissing ERISA claims and holding "[i]t would turn the law on its head were we to embrace a concept where a plaintiff could use allegations of prudent measures to prove a defendant's imprudence"); *see also* Fed. R. Evid. 407 (subsequent remedial measures not admissible to establish liability).[10]

### C.    Plaintiffs' Assertions Of A Failure To "Use All The Tools Available" Do Not State A Claim, And Are Contradicted By The Complaint's Allegations

In a final attempt to cobble together a fiduciary breach claim, Plaintiffs assert that Plan fiduciaries acted imprudently by including in the Plan the three JPMorgan-affiliated mutual funds that Plaintiffs assert had "excessive" fees (*i.e.*, the Mid Cap Growth Fund, the Small Cap Core Fund, and the Core Bond Fund (*see* Appendix B)), rather than less expensive commingled trusts or separately managed accounts.  (Compl. ¶¶ 158-63.)  That too fails to state a claim.

Many courts have rejected this very argument, concluding that retirement plans may reasonably opt for the expanded package of services offered by mutual funds over

---

[10]    Plaintiffs' assertions, "upon information and belief," that the 2015 and 2016 Plan changes were made in response to an unrelated SEC investigation are conclusory and, in any event, irrelevant to a breach of fiduciary duty claim.  (Compl. ¶¶ 112-13; 119.)  The Complaint makes plain that the SEC investigation did not involve the Plan or the investments in the Plan's lineup in any way, and concerned unrelated allegations of "steering" of client funds into "undisclosed" affiliated products.  (*Id.* ¶¶ 112-114.)  Here, the Plan included both affiliated and unaffiliated investment choices (*see, e.g.*, Compl. Ex. 3 at 11-44); the Plan's fiduciaries cannot "steer" any money into affiliated products because participants choose how their contributions are allocated (*see* Compl. Ex. 2 at 14); and the investment managers of the Plan's options were fully disclosed to participants (*see generally*, Compl. Ex. 3 at 11-44).

14

commingled trusts or separate accounts, even if mutual funds have higher fees. *See, e.g.*, *Loomis*, 658 F.3d at 671 (affirming dismissal and rejecting claim that fiduciaries should have offered commingled trusts rather than mutual funds). Unlike commingled trusts or separately managed accounts, mutual funds are subject to extensive SEC regulation under the Investment Company Act, 15 U.S.C. §§ 80a-1, *et. seq.* Among other things, mutual funds are governed by boards that include independent directors, *see* 15 U.S.C. § 80a-16; registered with the SEC; and provide detailed shareholder communications such as prospectuses and annual reports, *see* 15 U.S.C. §§ 80a-8, 24, 29. Commingled trusts and separate accounts, by contrast, are not subject to SEC regulations and disclosure rules. As the Seventh Circuit held, "we see nothing in [ERISA] that requires plan fiduciaries to include any particular mix of investment vehicles in their plan." *Hecker*, 556 F.3d at 586. Nevertheless, the Complaint concedes -- as it must -- that the Plan offered not only mutual funds, but commingled trusts and separately managed accounts.[11] (*E.g.* Compl. ¶ 160.)

## II. COUNT III SHOULD BE DISMISSED BECAUSE DEFENDANTS PROVIDED COMPLETE AND ACCURATE DISCLOSURES TO PLAN PARTICIPANTS

Count III alleges that Defendants failed to adequately disclose information to participants about the Plan's fees and its investment options in violation of ERISA's disclosure

---

[11] Plaintiffs also allege that the Plan contained "duplicative investments," and criticizes the Plan for offering two Large Cap Value funds and two Large Cap Growth funds, "with one option being significantly more expensive than the other." (Compl. ¶¶ 164-65.) But Plaintiffs never allege -- nor could they -- that those investment options expected or experienced similar returns. Indeed, those funds have expressly different investment objectives. (*See* Compl. Ex. 3 at 27-31.) Plaintiffs also omit that those funds cater to different risk appetites -- two relatively conservative "large cap value" funds (one managed by BlackRock and one managed by T. Rowe Price), two more aggressive "large cap growth" funds (one managed by BlackRock and one managed by Wellington), and a middle-tier S&P 500 Index fund (managed by BlackRock). (*See id.* at 6, 27-31.) Moreover, the fact that certain of the options have higher expense ratios is a result of active versus passive management. (*See id.* at 27-31.) Plaintiffs do not allege anything improper about offering those funds, and as multiple courts have recognized, ERISA encourages participant choice. *E.g.*, *Loomis*, 658 F.3d at 673 (ERISA "encourages sponsors to allow more choice" ); *Tibble*, 729 F.3d at 1134-35 ("Because participant choice is the centerpiece of what ERISA envisions for defined-contribution plans, these sorts of paternalistic arguments have had little traction").

rules set forth in 29 C.F.R. § 2550.404a-5 ("Rule 404a-5").   (Compl. ¶¶ 207-13.)  Plaintiffs'

claims lack merit because the Plan's detailed disclosures fully comply with Rule 404a-5.

Rule 404a-5 requires disclosure of:  (i) "any designated investment alternatives

[*i.e.*, investment funds] offered under the plan," (ii) "any designated investment managers,"

(iii) "any fees and expenses for general plan administrative services . . . which may be charged

against the individual accounts of participants and beneficiaries and are not reflected in the total

annual operating expenses of any designated investment alternative," and, (iv) on a quarterly

basis, "the dollar amount of [any such fees and expenses] that are actually charged."  29 C.F.R. §

2550.404a-5(c).  Defendants' putative class period disclosures contained all of that information

(and more).

*First*, Defendants disclosed detailed information about the Plan's designated

investment alternatives and investment managers (elements (i) and (ii) of Rule 404a-5).  For

example, the Plan's Investment Fund Profiles provided to Plan participants throughout the

putative class period identified each of the investment options offered under the Plan, the

investment managers for each of those options, and the risks, fees and expenses associated with

each investment option.  (*See, e.g.*, Compl. Ex. 3 at 11-18; *see also, generally* Fund Profiles

(Saltzstein Decl. Exs. 6-13).)  Moreover, Plan participants are provided quarterly statements

directing them to the Plan's Fund Profiles for "detailed descriptions of each of the investment

funds within the [Plan], including the investment objective, strategy, and fees."  (*See* Compl. Ex.

4, at 6.)  In addition, there is no allegation -- nor could there be -- that participants were not

provided the annual participant fee disclosure statements required by the DOL showing fund

expenses and historical returns for each fund on a net-of-fee basis compared to relevant

benchmarks.  (*See* "Fee Disclosure Notices" (Saltzstein Decl. Exs. 14-19).)

Plaintiffs' assertions that Defendants did not disclose the identity, managers, risks, fees, and expenses associated with the *underlying* investments in the Target Date funds (Compl. ¶ 210) do not support a Rule 404a-5 claim because such detailed information is not required by Rule 404a-5.  *See* 29 C.F.R. § 2550.404a-5(c).  Rather, as required, the Plan's Fund Profiles fully disclosed, among other things:  (a) the investment option (*i.e.*, each Target Date fund) (*see* Compl. Ex. 3 at 11-18), (b) the fees associated with each Target Date fund (*see id.*), (c) the risks of investment in those funds (*id.* at 12), and (d) that those funds' asset allocation is managed by JPMorgan (*id.* at 11).  Rule 404a-5 requires nothing more.  Nevertheless, the information that Plaintiffs claim is missing is provided -- as participants are directed to the Plan's Web Center to "view the specific asset allocation for each of the Target Date Funds."  (*Id.* at 70.)

*Second*, Plan participants also received Rule 404a-5 quarterly disclosures concerning fees and expenses for general Plan administrative services and amounts actually charged (elements (iii) and (iv) of Rule 404a-5).  In that regard, Plan participants received quarterly statements containing detailed information about their investments, including required fee disclosures.  Contrary to Plaintiffs' assertions (Compl. ¶ 180), those quarterly fee disclosures are clear and unambiguous.  The disclosure provides:

> No individual participant or administrative fees were charged during the period listed.  Some of the plan's administrative fees were paid from the total annual operating expenses of one or more of the plan's investments.  Those amounts could include shareholding servicing fees, 12b-1 fees, sub-transfer agent fees or similar amounts.

(Compl. ¶ 180; *see also* Compl. Ex. 4 at 2.)  That disclosure unambiguously states that ***Plan participants do not pay any administrative fees or expenses*** associated with the Plan (participants were not charged those expenses at any time during the putative class period).  The Plan's SPD likewise informs participants that "JPMorgan Chase pays the administrative fees associated with the Plan."  (Compl. Ex. 2 at 17; *see also, e.g.*, 2016 Fee Disclosure Notice at 1

17

(Saltzstein Decl. Ex. 19) (the "fees for plan administrative services such as trustee, legal, accounting, and recordkeeping and participant services" are "paid by JPMorgan Chase and are not charged to your account or the accounts of other participants").)

The quarterly disclosure further states that "[s]ome of the [P]lan's administrative fees were paid from the total annual operating expenses of one or more of the plan's investments." (Compl. Ex. 4 at 2.) This so-called "revenue sharing" is a widely-accepted practice where investment managers opt to compensate plan service providers, such as recordkeepers, for services provided that the investment managers would otherwise have to perform themselves. *See Malone v. Teachers Insurance & Annuity Assoc. of Am.*, 15-cv-08038, 2017 WL 913699, at *1 (S.D.N.Y. Mar. 7, 2017) (describing revenue sharing, where the investment manager "allocates a portion of the investment fee to pay" for administrative services, as a practice "common throughout the industry"). Rule 404a-5 requires plans to disclose revenue sharing arrangements to plan participants. *See* 29 C.F.R. § 2550.404a-5(c)(2)(ii)(c) (requiring quarterly disclosure where "some of the plan's administrative expenses for the preceding quarter were paid from the total annual operating expenses of one or more of the plan's designated investment alternatives"). Consistent with that requirement, the quarterly fee disclosure informs participants that a portion of the investment-related fees was used to offset some of the administrative costs associated with operating the Plan (with the remainder paid by JPMorgan).[12]

---

[12]     Plaintiffs' allegation that Defendants also did not disclose purported "arrangements" with BlackRock that led to BlackRock funds being included in the Plan is also inadequate to state a claim. (Compl. ¶ 210.) As noted above, other than rote speculation Plaintiffs have not set forth any facts that would support that such "arrangements" even exist. (*See supra* Argument, Part I.A.2 at 11-13.) In any event, Rule 404a-5 does *not* require such a disclosure. *See* 29 C.F.R. § 2550.404a-5(c).

**III.    COUNTS IV AND V SHOULD BE DISMISSED BECAUSE THE CHALLENGED
TRANSACTIONS ARE EXPRESSLY PERMITTED, AND ARE TIME BARRED**

Counts IV and V allege that Defendants engaged in prohibited transactions in

violation of ERISA § 406, 29 U.S.C. § 1106, by including investment options in the Plan

managed by JPMorgan or BlackRock that allegedly had "unduly excessive" fees.  (*See* Compl.

¶¶ 222; 230-33.)  Accordingly, Plaintiffs' prohibited transaction claims purport to implicate

nineteen of the Plan's investment options (*see* Appendix B), because those are the only options

managed by either JPMorgan or BlackRock identified in the Complaint as having "excessive"

fees.  (*See* Compl. ¶¶ 121-57.)  Plaintiffs' prohibited transaction claims should be dismissed for

at least two reasons.

**A.    The Challenged Transactions Are Permitted
Under ERISA's Prohibited Transaction Exemptions**

Plaintiffs' prohibited transaction claims should be dismissed because at least two

prohibited transaction exemptions are applicable to the challenged investment options here.

*First*, ERISA § 408(b)(2) provides that the prohibited transaction rules do not

apply to arrangements for payment of reasonable expenses for services rendered.  29 U.S.C. §

1108.  The Complaint's allegations make plain that the fees associated with the Plan's

challenged investment options -- which Plaintiffs allege to be between 4 basis points and 93

basis points -- are "reasonable" because they are within ranges found by other courts to be

reasonable as a matter of law.  (*See supra* Argument, Part I.A.1 at 8-10.)  Accordingly, all of

Plaintiffs' prohibited transaction claims fail.

*Second*, DOL implementing regulations specifically permit the offering of

affiliated mutual funds in in-house 401(k) plans.  *See* PTE 77-3.  PTE 77-3 expressly permits

retirement plans to invest in affiliated funds registered under the Investment Company Act of

1940 provided there are no commissions or other extraneous fees, and the investments are

offered to the Plan on the best available terms.[13]  Here, the JPMorgan-affiliated mutual funds -- *i.e.*, the Core Bond Fund, the Mid Cap Growth Fund, and the Small Cap Core Fund -- satisfy all of the requirements to qualify for PTE 77-3.  They are mutual funds, and they are not alleged to pay a sales commission, redemption fees, or any other fee beyond the standard advisory fees paid by the investment funds (and not by the Plan).  Where -- as here -- the foregoing exemption clearly applies, courts have dismissed prohibited transaction challenges as a matter of law.  *See, e.g.*, *Leber v. Citigroup, Inc.*, No. 07 Civ. 9329(SHS), 2010 WL 935442, at *10 (S.D.N.Y. Mar. 16, 2010) (dismissing claim on a 12(b)(6) motion because, "even in the light most favorable to plaintiffs, the complaint asserts nothing more than that defendants purchased shares in an affiliated mutual fund, a transaction to which the restrictions of section [] 406 . . . shall not apply") (internal quotations omitted).

     **B.**     **The Challenged Transactions Should Be Dismissed**
                  **Insofar As They Purport To Challenge Transactions**
                  **Barred By ERISA's Three-Year Statute Of Limitations**

        Separate from the above exemptions warranting dismissal, Plaintiffs' prohibited transaction claims should also be dismissed insofar as they are based on investment options added to the Plan more than three years before Plaintiffs commenced this action.

        ERISA's statute of limitations provides that no action may be brought more than "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation."  29 U.S.C. § 1113(2).  Courts have held that for limitations purposes, a prohibited

---

[13]     PTE 77-3 permits a plan to purchase "shares of an open-end investment company registered under the Investment Company Act of 1940 by an employee benefit plan covering only employees of such investment company, employees of the investment adviser or principal underwriter for such investment company, or employees of any affiliated person . . . of such investment adviser or principal underwriter . . . ."  42 Fed. Reg. at 18,734-35.  The plan also must not:  (a) "pay any investment management, investment advisory or similar fee" except for the payment by the fund of investment advisory fees; (b) pay a redemption fee other than to the fund; (c) pay a sales commission; and (d) have dealings with the investment fund "on a basis no less favorable to the plan than such dealings are with other shareholders of" the fund.  *Id.* at 18,735.

transaction only occurs when a plan makes the initial decision to select a fund as an investment option. *See, e.g. David v. Alphin,* 704 F.3d 327, 339-41 (4th Cir. 2013) ("The only action that can support an alleged prohibited transaction is the initial selection of the affiliated funds . . . ."). In addition, a plaintiff has "actual knowledge" of such a transaction when she has "knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." *Janese v. Fay*, 692 F.3d 221, 228 (2d Cir. 2012).  Moreover, courts in this district have concluded that plan participants have actual knowledge of an alleged ERISA violation when provided with documents that would, if read -- regardless of whether the documents were in fact read -- establish actual knowledge of the breach or violation.  *See, e.g.*, *Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 419 n.3 (S.D.N.Y. 2008) ("[W]hen determining whether plaintiffs had actual knowledge of a breach for the purposes of ERISA § 413, this Circuit has focused on whether the documents provided to plan participants sufficiently disclosed the alleged breach of fiduciary duty, not whether individual Plaintiffs actually saw or read the documents."), *aff'd on other grounds*, 325 F. App'x 31 (2d Cir. 2009); *Ramnaraine v. Merrill Lynch & Co., Inc.*, No. 1:13-CV-7889-GHW, 2014 WL 4386733, at *2 n.5 (S.D.N.Y. Sept. 5, 2014).

        In this case, under ERISA's statute of limitations, any investment funds that were added to the Plan and disclosed to Plan participants with no material changes thereafter more than three years prior to the filing of the Complaint (*i.e.*, prior to January 25, 2014) cannot form the basis of a prohibited transaction claim.  Each quarter, Plan participants received quarterly account statements setting forth the Plan's investment options, and referring participants to the Plan's Fund Profiles for "detailed descriptions of each of the investment funds . . . ." (*See, e.g.*, Compl. Ex. 4 at 6.)  The Fund Profiles described each Plan investment option, the investment

21

manager for each option, and the fees associated with each investment. (*See, e.g.*, June 2013 Fund Profiles at 11-43 (Saltzstein Decl. Ex. 10).) As made clear by the Fund Profiles, only the Target Date 2055 Fund was added to the Plan within three years of the filing of the Complaint. (*See* Appendix A; *see also* 2013 Fee Disclosure Notice (Saltzstein Decl. Ex. 15).) Accordingly, ERISA's three-year limitations period bars prohibited transaction claims with regard to at least eighteen of the nineteen investment options that Plaintiffs challenge.

## IV.    COUNTS II, VI, AND VII SHOULD BE DISMISSED BECAUSE THERE CAN BE NO LIABILITY FOR THOSE COUNTS IN THE ABSENCE OF AN UNDERLYING ERISA VIOLATION

Count II purports to assert a claim for a failure to monitor fiduciaries, (Compl. ¶¶ 201-04); Count VI alleges "co-fiduciary" liability against certain defendants, (*id.* ¶¶ 238-48); and Count VII seeks to assert a claim for "non-fiduciary participation" (*id.* ¶¶ 252-57). Insofar as the Court dismisses Plaintiffs' underlying ERISA claims, Counts II, VI, and VII should also be dismissed because they are derivative of Plaintiffs' fiduciary duty and prohibited transactions claims. *See Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000) (holding that non-fiduciary liability requires a "showing that the *plan fiduciary*, with actual or constructive knowledge of the facts satisfying the elements of a § 406(a) transaction, caused the plan to engage in the transaction"); *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 368 (2d Cir. 2014) ("Plaintiffs' latter two claims -- failure to monitor and breach of co-fiduciary duty -- constitute derivative claims that cannot survive absent a viable claim for breach of a duty of prudence."); *Rinehart v. Akers*, 722 F.3d 137, 154 (2d Cir. 2013) (holding that a claim alleging that the appointing fiduciaries failed to provide information to the appointed fiduciaries was a derivative claim), *vacated on other grounds*, 134 S. Ct. 2900 (2014).

## V.   THE COMPLAINT DOES NOT ADEQUATELY ALLEGE THAT JPMORGAN CHASE, THE BANK, OR THE CMDC DEFENDANTS WERE FIDUCIARIES

Counts I through VI -- which are asserted against Defendants in their capacities as alleged fiduciaries (*see* Compl. ¶¶ 199; 206; 213; 224; 236; 250) -- should be dismissed against JPMorgan Chase and the Bank because the Complaint fails to allege that they were fiduciaries with respect to the management or administration of the Plan (Count VII purports to assert a non-fiduciary" claim against JPMorgan Chase and the Bank).  Further, the entire Complaint should be dismissed as against the Compensation & Management Development Committee (the "Compensation Committee"), Mr. Burke, Mr. Raymond, and Mr. Weldon (collectively with the Compensation Committee, the "CMDC Defendants") because the Complaint fails to allege that they were fiduciaries with respect to any of the challenged conduct.

None of those Defendants is a named fiduciary under the Plan.  (*See* Plan Document ¶¶ 12.1-12.2 (identifying Plan Administrator, Selection Committee, and EPIC as Named Fiduciaries of the Plan) (Compl. Ex. 1).)  Since JPMorgan Chase, the Bank, and the CMDC Defendants are not named fiduciaries, their fiduciary status turns on whether they were "acting as a fiduciary (that is, w[ere] performing a fiduciary function) when taking the action subject to complaint."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).  Where -- as here -- ERISA claims concern the management of plan assets, a hallmark of so-called "de facto" fiduciary responsibility is control over investment decisions.  *See Coulter*, 753 F.2d at 366-67 (noting that to qualify as a de facto fiduciary, a fiduciary must have discretionary authority with respect to certain plan management or administration functions, such as "selecting investments, exchanging one instrument or asset for another, and so on") (internal quotations omitted).

Plaintiffs do not plausibly allege that JPMorgan Chase, the Bank, or the CMDC Defendants has or ever had discretionary authority over the Plan's investments that Plaintiffs

specifically challenge.  Indeed, Plaintiffs do no more than allege, without further detail or any supporting facts, that JPMorgan Chase and the Bank are fiduciaries "because they have exercised discretionary authority or control over Plan management and/or exercised authority or control over management or disposition of Plan assets and/or have discretionary authority or discretionary responsibility in the administration of the Plan."  (Compl. ¶ 25.)  Such conclusory allegations, which merely track the statutory definition of a fiduciary (*see* 29 U.S.C. 1002(21)(A)), are insufficient to establish that JPMorgan Chase and the Bank were fiduciaries with respect to the complained-of conduct.  *See In re JPMorgan Chase & Co. ERISA Litig.*, No. 12 civ. 04027, 2016 WL 110521, at *3 (S.D.N.Y. Jan. 8, 2016) (holding that neither JPMorgan Chase nor the Bank were fiduciaries with respect to the challenged conduct because the conclusory allegations of "control regarding the administration and management of the Plans . . . and its assets . . . . are insufficient to state a claim against a purported ERISA fiduciary.").

Similarly, the CMDC Defendants are alleged to be Plan fiduciaries because they "exercised discretionary authority or control" in appointing the members of the Selection Committee.  (Compl. ¶¶ 26; 31.)  Plaintiffs do not allege that the CMDC Defendants breached any duty in making appointments to the Selection Committee.  *See In re Lehman Bros. Sec. & ERISA Litig.*, 683 F. Supp. 2d 294, 299 (S.D.N.Y. 2010), *aff'd sub nom. Rinehart v. Akers*, 722 F.3d 137 (2d Cir. 2013), *vacated on other grounds*, 134 S. Ct. 2900 (2014) (dismissing ERISA claims against directors predicated on authority to appoint and remove members of compensation committee where there was no allegation that directors breached duty by appointing committee members).  Further, although the duty to appoint plan fiduciaries carries the concomitant duty to monitor those appointees, *see In re Citigroup ERISA Litig.*, No. 07 Civ. 9790, 2009 WL 2762708, at *26 (S.D.N.Y. Aug. 31, 2009), the Complaint contains no allegations that the

CMDC Defendants breached any such duty with respect to the Selection Committee or its members.  Lastly, while Plaintiffs allege that the CMDC Defendants "fail[ed] to disclose" purported conflicts of interest (Compl. ¶ 204), the CMDC Defendants' monitoring obligations did not extend so far.  *See In Re Citibank ERISA Litig.*, 2009 WL 2762708, at *26 (holding that defendants charged with monitoring other fiduciaries did not have any duty of disclosure).

## CONCLUSION

For all of the foregoing reasons, Defendants' motion to dismiss should be granted in its entirety and the Complaint dismissed with prejudice.

Dated:  June 15, 2017       Respectfully submitted,
   New York, New York

            /s/ Susan L. Saltzstein
            Susan L. Saltzstein
            James R. Carroll (*pro hac vice pending*)
            Michael S. Hines (*pro hac vice pending*)
            SKADDEN, ARPS, SLATE
             MEAGHER & FLOM LLP
            Four Times Square
            New York, New York 10036
            (212) 735-3000
            susan.saltzstein@skadden.com
            james.carroll@skadden.com
            michael.hines@skadden.com

            Counsel for Defendants
            JPMorgan Chase Bank, National Association,
            JPMorgan Chase & Company, Compensation &
            Management Development Committee of the Board
            of Directors for JPMorgan Chase & Company, the
            Selection Committee, the Employee Plans
            Investment Committee, J.P. Morgan Investment
            Management Inc., Head of Human Resources for
            JPMorgan Chase & Co., Chief Financial Officer for
            JPMorgan Chase & Co., Benefits Director of
            JPMorgan Chase & Co., Stephen B. Burke, Lee R.
            Raymond, William C. Weldon, John C. Donnelly,
            Marianne Lake, Bernadette J. Branosky, and Thelma
            Ferguson, and John Does 1-20

**APPENDIX A**

**JPMORGAN CHASE (401k) SAVINGS PLAN INVESTMENT OPTIONS (2011 THROUGH 2016)[1]**

| | Fund | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|
| 1. | Short Term Fixed Income Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2. | Stable Value Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 3. | Government Inflation-Protected Bond Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 4. | Core Bond Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 5. | Intermediate Bond Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 6. | High Yield Bond Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 7. | Large Cap Value Index Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 8. | Large Cap Value Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 9. | Growth and Income Fund | ✓ | ✓ | ✓ | | | |
| 10. | S&P 500 Index Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 11. | Large Cap Growth Index Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 12. | Large Cap Growth Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 13. | Mid Cap Value Fund | ✓ | ✓ | ✓ | ✓ | ✓ | |
| 14. | Mid Cap Growth Fund | ✓ | ✓ | ✓ | ✓ | ✓ | |
| 15. | S&P MidCap 400 Index Fund | | | | | ✓ | ✓ |
| 16. | Small Cap Index Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 17. | Small Cap Core Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 18. | Small Cap Blend Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 19. | International Large Cap Value Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 20. | International Large Cap Index Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 21. | International Small Cap Fund/International Small Cap Index Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |

---

[1]     This table reflects the investment options offered in the JPMorgan Chase 401(k) Savings Plan from January 2011 through December 2016, based on the 401(k) Savings Plan Investment Fund Profiles.  (*See* 2011 Fund Profiles (Saltzstein Decl. Ex. 6); July 2011 Fund Profiles (Saltzstein Decl. Ex. 7); January 2012 Fund Profiles (Saltzstein Decl. Ex. 8); August 2012 Fund Profiles (Saltzstein Decl. Ex. 9); June 2013 Fund Profiles (Saltzstein Decl. Ex. 10); December 2013 Fund Profiles (Saltzstein Decl. Ex. 11); January 2015 Fund Profiles (Saltzstein Decl. Ex. 12); June 2016 Fund Profiles (Saltzstein Decl. Ex. 13).)

| | Fund | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|
| 22. | Moderately Conservative Lifestyle Portfolio | ✓ | | | | | |
| 23. | Moderately Aggressive Lifestyle Portfolio | ✓ | | | | | |
| 24. | Aggressive Lifestyle Portfolio | ✓ | | | | | |
| 25. | Emerging Market Equity Index Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 26. | Target Date Income Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 27. | Target Date 2015 Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 28. | Target Date 2020 Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 29. | Target Date 2025 Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 30. | Target Date 2030 Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 31. | Target Date 2035 Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 32. | Target Date 2040 Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 33. | Target Date 2045 Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 34. | Target Date 2050 Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 35. | Target Date 2055 Fund | | | | | ✓ | ✓ |
| 36. | JPMorgan Chase Common Stock Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |

APPENDIX B

INVESTMENT OPTIONS CHALLENGED IN THE COMPLAINT BY COUNT[1]

I.    INVESTMENT OPTIONS CHALLENGED IN COUNT I (ALLEGED BREACH OF FIDUCIARY DUTIES)

|  | Investment Option | Manager | Alleged Expense Ratio |
|---|---|---|---|
| 1. | Core Bond Fund | JPMorgan[2] | 35 to 40 basis points (Compl. ¶ 139) As of March 12, 2016, the annual expenses were reduced to zero.  (*Id.* ¶¶ 140-42.) |
| 2. | Small Cap Core Fund | JPMorgan | 83 basis points (Compl. ¶ 131) As of December 19, 2015, the annual expenses were reduced to zero.  (*Id.* ¶¶ 133-34.) |
| 3. | Mid Cap Growth Fund | JPMorgan | 93 basis points  (Compl. ¶ 123) |
| 4. | Mid Cap Value Fund | Earnest Partners, LLC | 42 basis points (Compl. ¶ 123) |
| 5. | Large Cap Value Index Fund | BlackRock | 7 basis points (Compl. ¶ 148) |
| 6. | S&P 500 Index Fund | BlackRock | 4 basis points (Compl. ¶ 148) |

---

[1]      This Exhibit identifies -- to the best of Defendants' ability based on the Complaint's allegations -- which of the Plan's investment options are challenged by each Count of the Complaint.  Count I appears to challenge twenty investment options as having purportedly "excessive" fees.  (*See* Compl. ¶¶ 121-57). Counts IV and V appear to challenge all but one of those same funds (*see id.* ¶¶ 222, 232 (challenging investment options affiliated with JPMorgan and BlackRock with purportedly "excessive" fees)), and Count III appears to challenge disclosures concerning the Plan generally and in connection with the Plan's Target Date funds.  Counts II, VI, and VII are derivative in nature and therefore do not purport to challenge specific investment options.

[2]      For the managers set forth in this Exhibit, *see* January 15, 2015 401(k) Savings Plan Investment Fund Profiles at 11-44 (Compl. Ex. 3).

| | Investment Option | Manager | Alleged Expense Ratio |
|---|---|---|---|
| 7. | Large Cap Growth Index Fund | BlackRock | 7 basis points (Compl. ¶ 148) |
| 8. | Small Cap Index Fund | BlackRock | 10 basis points (Compl. ¶ 148) |
| 9. | International Large Cap Index Fund | BlackRock | 10 basis points (Compl. ¶ 148) |
| 10. | International Small Cap Index Fund | BlackRock | 16 basis points (Compl. ¶ 148) |
| 11. | Emerging Market Equity Index Fund | BlackRock | 18 basis points (Compl. ¶ 148) |
| 12. | Target Date Income Fund | Asset allocation constructed and maintained by JPMorgan. Underlying funds managed by JPMorgan, BlackRock, and other third-party manager(s). | 11 basis points (Compl. ¶ 148) |
| 13. | Target Date 2020 Fund | *Id.* | 9 basis points (Compl. ¶ 148) |
| 14. | Target Date 2025 Fund | *Id.* | 9 basis points (Compl. ¶ 148) |
| 15. | Target Date 2030 Fund | *Id.* | 9 basis points (Compl. ¶ 148) |
| 16. | Target Date 2035 Fund | *Id.* | 9 basis points (Compl. ¶ 148) |
| 17. | Target Date 2040 Fund | *Id.* | 10 basis points (Compl. ¶ 148) |
| 18. | Target Date 2045 Fund | *Id.* | 10 basis points (Compl. ¶ 148) |
| 19. | Target Date 2050 Fund | *Id.* | 10 Basis points (Compl. ¶ 148) |
| 20. | Target Date 2055 Fund | *Id.* | 10 basis points (Compl. ¶ 148) |

**II.**     **INVESTMENT OPTIONS CHALLENGED IN COUNT III (ALLEGED INADEQUATE DISCLOSURES)**

| | Investment Option | Manager | Alleged Expense Ratio |
|---|---|---|---|
| 1. | Target Date Income Fund | Asset allocation constructed and maintained by JPMorgan. Underlying funds managed by JPMorgan, BlackRock, and other third-party manager(s). | 11 basis points (Compl. ¶ 148) |
| 2. | Target Date 2020 Fund | *Id.* | 9 basis points (Compl. ¶ 148) |
| 3. | Target Date 2025 Fund | *Id.* | 9 basis points (Compl. ¶ 148) |
| 4. | Target Date 2030 Fund | *Id.* | 9 basis points (Compl. ¶ 148) |
| 5. | Target Date 2035 Fund | *Id.* | 9 basis points (Compl. ¶ 148) |
| 6. | Target Date 2040 Fund | *Id.* | 10 basis points (Compl. ¶ 148) |
| 7. | Target Date 2045 Fund | *Id.* | 10 basis points (Compl. ¶ 148) |
| 8. | Target Date 2050 Fund | *Id.* | 10 Basis points (Compl. ¶ 148) |
| 9. | Target Date 2055 Fund | *Id.* | 10 basis points (Compl. ¶ 148) |

3

**III.    INVESTMENT OPTIONS CHALLENGED IN COUNTS IV AND V (ALLEGED PROHIBITED TRANSACTIONS)**

|  | Investment Option | Manager | Alleged Expense Ratio |
|---|---|---|---|
| 1. | Core Bond Fund | JPMorgan | 35 to 40 basis points (Compl. ¶ 139) As of March 12, 2016, the annual expenses were reduced to zero.  (*Id.* ¶¶ 140-42.) |
| 2. | Small Cap Core Fund | JPMorgan | 83 basis points (Compl. ¶ 131) As of December 19, 2015, the annual expenses were reduced to zero.  (*Id.* ¶¶ 133-34.) |
| 3. | Mid Cap Growth Fund | JPMorgan | 93 basis points  (Compl. ¶ 123) |
| 4. | Large Cap Value Index Fund | BlackRock | 7 basis points (Compl. ¶ 148) |
| 5. | S&P 500 Index Fund | BlackRock | 4 basis points (Compl. ¶ 148) |
| 6. | Large Cap Growth Index Fund | BlackRock | 7 basis points (Compl. ¶ 148) |
| 7. | Small Cap Index Fund | BlackRock | 10 basis points (Compl. ¶ 148) |
| 8. | International Large Cap Index Fund | BlackRock | 10 basis points (Compl. ¶ 148) |
| 9. | International Small Cap Index Fund | BlackRock | 16 basis points (Compl. ¶ 148) |
| 10. | Emerging Market Equity Index Fund | BlackRock | 18 basis points (Compl. ¶ 148) |

4

| | Investment Option | Manager | Alleged Expense Ratio |
|---|---|---|---|
| 11. | Target Date Income Fund | Asset allocation constructed and maintained by JPMorgan. Underlying funds managed by JPMorgan, BlackRock, and other third-party manager(s). | 11 basis points (Compl. ¶ 148) |
| 12. | Target Date 2020 Fund | *Id.* | 9 basis points (Compl. ¶ 148) |
| 13. | Target Date 2025 Fund | *Id.* | 9 basis points (Compl. ¶ 148) |
| 14. | Target Date 2030 Fund | *Id.* | 9 basis points (Compl. ¶ 148) |
| 15. | Target Date 2035 Fund | *Id.* | 9 basis points (Compl. ¶ 148) |
| 16. | Target Date 2040 Fund | *Id.* | 10 basis points (Compl. ¶ 148) |
| 17. | Target Date 2045 Fund | *Id.* | 10 basis points (Compl. ¶ 148) |
| 18. | Target Date 2050 Fund | *Id.* | 10 Basis points (Compl. ¶ 148) |
| 19. | Target Date 2055 Fund | *Id.* | 10 basis points (Compl. ¶ 148) |