UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

TERRE BEACH, *et al.*, individually and on behalf : 
of themselves and all others similarly situated, :
                               :
                Plaintiffs, :     Case No. 17-CV-00563-JMF
                               :
            v. :
                               :
JPMORGAN CHASE BANK, NATIONAL :
ASSOCIATION, JPMORGAN CHASE & :
COMPANY, *et al.*, :
                               :
                Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## <u>MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED COMPLAINT</u>

Susan L. Saltzstein
James R. Carroll (*pro hac vice*)
Michael S. Hines (*pro hac vice*)
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
susan.saltzstein@skadden.com
james.carroll@skadden.com
michael.hines@skadden.com

Counsel for Defendants
JPMorgan Chase Bank, National Association, JPMorgan
Chase & Company, Compensation & Management
Development Committee of the Board of Directors for
JPMorgan Chase & Company, the Selection Committee,
the Employee Plans Investment Committee, J.P. Morgan
Investment Management Inc., Head of Human
Resources for JPMorgan Chase & Co., Chief Financial
Officer for JPMorgan Chase & Co., Benefits Director of
JPMorgan Chase & Co., Terry Belton, Bernadette
Branosky, Corrine Burger, Sally Durdan, Thelma
Ferguson, Tom Horne, Bei Ling, Pablo Sanchez, Erik
Umlauf, David Watson, Michael Weinbach, Stephen B.
Burke, Lee R. Raymond, William C. Weldon, John C.
Donnelly, Marianne Lake, and John Does 1-20

Dated:  July 27, 2017

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ..................................................................................................................... 4

ARGUMENT ........................................................................................................................... 6

I.     COUNT I SHOULD BE DISMISSED BECAUSE THE COMPLAINT IS
DEVOID OF WELL-PLEADED ALLEGATIONS OF A FIDUCIARY BREACH ......... 7

     A.     Plaintiffs' Allegations Of "Excessive" Fees And Purported
"Self-Dealing" Do Not Support A Breach Of Fiduciary Duty Claim ................... 8

          1.     The Fees Associated With The Plan's
Investments Are Within A Range Found By
Other Courts To Be Reasonable As A Matter Of Law .............................. 8

          2.     Allegations That The Plan Includes Investment
Options Affiliated With JPMorgan And
"Business Partners" Do Not Support A Fiduciary Duty Claim ............... 11

     B.     Allegations That Defendants Failed To Implement
A Process To Monitor Plan Investments Or Make Timely
Plan Changes Are Not Supported By Any Factual Allegations .......................... 13

     C.     Plaintiffs' Assertions Of A Failure To "Use
All The Tools Available" Do Not State A Claim,
And Are Contradicted By The Complaint's Allegations ..................................... 14

II.    COUNT III SHOULD BE DISMISSED BECAUSE DEFENDANTS PROVIDED
COMPLETE AND ACCURATE DISCLOSURES TO PLAN PARTICIPANTS .......... 16

III.   COUNTS IV AND V SHOULD BE DISMISSED
BECAUSE THE CHALLENGED TRANSACTIONS
ARE EXPRESSLY PERMITTED, AND ARE TIME BARRED ................................... 19

     A.     The Challenged Transactions Are Permitted
Under ERISA's Prohibited Transaction Exemptions ........................................ 19

     B.     The Challenged Transactions Should Be Dismissed
Insofar As They Purport To Challenge Transactions
Barred By ERISA's Three-Year Statute Of Limitations ................................... 20

IV.   COUNTS II, VI, AND VII SHOULD BE DISMISSED
BECAUSE THERE CAN BE NO LIABILITY FOR THOSE
COUNTS IN THE ABSENCE OF AN UNDERLYING ERISA VIOLATION ............. 22

V.    THE COMPLAINT DOES NOT ADEQUATELY ALLEGE THAT JPMORGAN
CHASE, THE BANK, OR THE CMDC DEFENDANTS WERE FIDUCIARIES ........ 22

CONCLUSION ..................................................................................................................... 25

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..........................................................................................6, 13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................6, 14

*Brotherston v. Putnam Investments, LLC,*
    CIVIL ACTION NO. 15-13825-WGY, 2017 WL 1196648 (D. Mass. Mar. 30, 2017).........9

*Coulter v. Morgan Stanley & Co.*
    753 F.3d 361 (2d Cir. 2014) .............................................................................22, 23

*David v. Alphin,*
    704 F.3d 327 (4th Cir. 2013) ................................................................................21

*Dupree v. Prudential Insurance Co. of America*,
    No. 99-8337-Civ.-JORDAN, 2007 WL 2263892 (S.D. Fla. Aug. 7, 2007) ......................11

*Fifth Third Bancorp v. Dudenhoeffer*,
    134 S. Ct. 2459 (2014)..........................................................................................7

*Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*,
    530 U.S. 238 (2000)............................................................................................22

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) .......................................................................2, 9, 15

*In re Bear Stearns Cos. Securities, Derivative, & ERISA Litigation.*,
    763 F. Supp. 2d 423 (S.D.N.Y. 2011) .....................................................................24

*In re Citigroup ERISA Litigation*,
    No. 07 Civ. 9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009) .....................................25

*In re JPMorgan Chase & Co. ERISA Litigation*,
    No. 12 Civ. 04027 (GBD), 2016 WL 110521 (S.D.N.Y. Jan. 8, 2016)...............................24

*In re Lehman Bros. Securities & ERISA Litigation*,
    683 F. Supp. 2d 294  (S.D.N.Y. 2010), *aff'd sub nom*,
    *Rinehart v. Akers*, 722 F.3d 137 (2d Cir. 2013), *vacated on other grounds*,
    134 S. Ct. 2900 (2014)..........................................................................................25

*Janese v. Fay*,
    692 F.3d 221 (2d Cir. 2012) ................................................................................21

*Laboy v. Board of Trustees of Building Service*,
    No. 11-cv-5127(HB), 2012 WL 3191961 (S.D.N.Y. Aug. 7, 2012) ..................................14

*Leber v. Citigroup, Inc.*,
    No. 07 Civ. 9329(SHS), 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) ..............................20

*Loomis v. Exelon Corp.*,
    658 F.3d 667 (7th Cir. 2011) ...........................................................................................9, 15

*Malone v. Teachers Insurance & Annuity Ass'n of America*,
    No. 15-cv-08038 (PKC), 2017 WL 913699 (S.D.N.Y. Mar. 7, 2017) .............................18

*Meiners v. Wells Fargo & Co.*,
    Civil No. 16-3981(DSD/FLN), 2017 WL 2303968 (D. Minn. May 25, 2017) ........2, 3, 9, 11

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)..........................................................................................................23

*Pension Benefit Guarantee Corp. v. Morgan Stanley Investment Management, Inc.*,
    712 F.3d 705 (2d Cir. 2013) ..................................................................................7, 10, 13

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3rd Cir. 2011) ..............................................................................................9

*Rinehart v. Akers*,
    722 F.3d 137 (2d Cir. 2013), *vacated on other grounds*, 134 S. Ct. 2900 (2014)...............22

*Tibble v. Edison International*,
    729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds*, 135 S. Ct. 1823 (2015)........ 9, 15

*Young v. General Motors Investment Management Corp.*,
    550 F. Supp. 2d 416 (S.D.N.Y. 2008), *aff'd on other grounds*,
    325 F. App'x 31 (2d Cir. 2009) ........................................................................................21

## RULES & STATUTES                                                                                    PAGE(S)

29 C.F.R. § 2550.404a-5...............................................................................................16, 17, 18

29 U.S.C. § 1002.....................................................................................................................24

29 U.S.C. § 1104.......................................................................................................................7

29 U.S.C. § 1106.....................................................................................................................19

29 U.S.C. § 1108.....................................................................................................................19

29 U.S.C. § 1113.....................................................................................................................20

Fed. R. Evid. 407 ...................................................................................................................14

Investment Company Act, 15 U.S.C. §§ 80a-1, *et. seq.* ..................................................................15

**OTHER**                                                                                                                    **PAGE(S)**

Class Exemption Involving Mutual Fund In-House Plans Requested by the Investment Company
     Institute, 42 Fed. Reg. 18,734 (Mar. 31, 1977) ("PTE 77-3")...................................11, 19, 20

Notice of Proposed Rulemaking, Participant Directed Individual Account Plans,
     56 Fed. Reg. 10,724 (Mar. 13, 1991)........................................................................................3

## PRELIMINARY STATEMENT

Defendant JPMorgan Chase & Co. ("JPMorgan Chase" or the "Company") is a financial holding company and a leading global financial services firm that employs over 240,000 people.  Together with its affiliates and subsidiaries (collectively with JPMorgan Chase Bank, N.A. (the "Bank"), "JPMorgan") the Company offers its employees the opportunity to participate in the JPMorgan Chase 401(k) Savings Plan (the "Plan").  The Plan offers participants a diverse lineup of investment options that includes a range of investment strategies, risk profiles, and investment fees.  The Plan's investment options include products managed by JPMorgan and a variety of other unaffiliated investment managers, including BlackRock, Inc. ("BlackRock").  Throughout the putative class period, the Plan offered an array of high-quality investment options with strong performance and reasonable fees, all of which were fully disclosed to Plan participants.[1]

Plaintiffs (six former employees who are or were participants in the Plan) allege that Defendants' conduct with respect to the Plan violated the Employee Retirement Income Security Act of 1974 ("ERISA").  The core allegation of Plaintiffs' Second Amended Consolidated Complaint (ECF No. 55, the "Complaint") is that Defendants breached their ERISA fiduciary duties of loyalty and prudence because they purportedly retained "unduly expensive Plan investment options" principally managed by JPMorgan and BlackRock, thereby "allowing higher than necessary fees" to be paid to JPMorgan.  (Compl. ¶¶ 2-3.)  The Complaint identifies twenty-one of the Plan's investment options as charging "excessive" fees (*id.* ¶¶ 139-87):[2]  four JPMorgan-affiliated mutual funds, seven BlackRock mutual funds, one separate

---

[1]     Attached hereto as Appendix A is a table listing the Plan's investment options during the putative class period (*i.e.*, from 2011 through 2016).

[2]     In addition, for the Court's convenience, attached hereto as Appendix B is a table identifying -- to the best of Defendants' ability based on the Complaint's allegations -- which of the Plan's investment options are challenged

account managed by another unaffiliated entity, Earnest Partners, and nine "target date" fund of funds.[3]  All of Plaintiffs' claims are deficient for a variety of independently sufficient reasons.

Plaintiffs' breach of fiduciary duty claims (Count I) should be dismissed for at least three reasons.  *First*, other courts have consistently held that the very same investment management fees as those challenged here are reasonable as a matter of law.  *See, e.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) (dismissing ERISA breach of fiduciary duty claims based on allegations of excessive fees).  Moreover, investment options need not be the least expensive available on the market:  "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund." *Id.*  Indeed, a court in the District of Minnesota recently dismissed ERISA-based breach of fiduciary duty claims based on allegations that lower-cost, unaffiliated funds could have been added to the plan in lieu of higher-cost, affiliated options, holding that "[i]f such allegations were sufficient to survive a motion to dismiss, it would render fiduciaries liable to suit for failing to choose the cheapest, non-affiliated fund." *Meiners v. Wells Fargo & Co.*, Civil No. 16-3981(DSD/FLN), 2017 WL 2303968, at *3 (D. Minn. May 25, 2017).

*Second*, Plaintiffs' conclusory allegations that the Plan included affiliated funds as investment options "in blatant self-dealing" are also insufficient to support a claim for breach of fiduciary duty.  (Compl. ¶ 3.)  Fundamentally, there is nothing unlawful about a financial services company -- like JPMorgan -- offering a selection of its *own* investment products to its

---

by each Count of the Complaint.  Count I appears to challenge twenty-one investment options as having purportedly "excessive" fees.  (*See* Compl. ¶¶ 139-87.)  Counts IV and V appear to challenge all but one of those same funds (*see id.* ¶¶ 253, 263 (challenging investment options affiliated with JPMorgan and BlackRock with purportedly "excessive" fees)), and Count III appears to challenge disclosures concerning the Plan generally and in connection with the Plan's Target Date funds.  Counts II, VI, and VII are derivative in nature and therefore do not purport to challenge specific investment options.

[3]      A "target date fund" is an investment in which the allocation of equity, bonds, and cash automatically changes to become more conservative as the "target" or retirement date approaches.  (*See* Compl. Ex. 4 at 3, 18.)

*own* employees in its *own* 401(k) retirement plan.  Plaintiffs' suggestion otherwise is contrary to the Department of Labor's ("DOL") regulations expressly permitting just that practice.  Indeed, the DOL offers the common sense observation that it would be "contrary to normal business practice for a company whose business is financial management to seek financial management services from a competitor."  Notice of Proposed Rulemaking, Participant Directed Individual Account Plans, 56 Fed. Reg. 10,724, 10,730 (Mar. 13, 1991); *see also Meiners*, 2017 WL 2303968, at *3 (rejecting unsupported allegations that defendants "acted in self-interest by choosing higher-cost affiliated funds over lower-cost non-affiliated funds").  Plaintiffs' self-dealing allegations are further implausible because JPMorgan, not Plan participants, paid the investment management fees associated with most of the Plan's JPMorgan-affiliated options during the putative class period.  Indeed, in 2016 -- long before Plaintiffs filed this case -- JPMorgan began paying the fees associated with two of the JPMorgan-affiliated mutual funds challenged in the Complaint (the Small Cap Core Fund and the Core Bond Fund).[4]

     *Third*, the Complaint offers no facts in support of Plaintiffs' baseless speculation of business dealings between BlackRock and JPMorgan in exchange for the Plan's inclusion of BlackRock funds.  (Compl. ¶¶ 122, 134.)  Separately, the bald allegation that Defendants failed to implement a process to monitor Plan investments is not only conclusory, but undermined by the Complaint's allegations that the Plan's fiduciaries instituted a number of Plan changes in 2015 and 2016 that benefited Plan participants.  (*See id.* ¶ 135.)

     Plaintiffs' non-fiduciary claims fare no better.  The allegations relevant to Counts IV and V (Plaintiffs' "prohibited transaction" claims) make clear that the transactions they seek

---

[4]     In 2013 and 2015 the Plan's fiduciaries removed from the Plan's investment lineup the other two JPMorgan-affiliated mutual funds challenged in the Complaint -- the Growth and Income Fund and the Mid Cap Growth Fund.

to challenge -- the Plan's offering of the same JPMorgan-affiliated mutual funds, BlackRock mutual funds, and target date fund of funds subject to their breach of fiduciary duty claims -- fall within ERISA's permitted transactions, which explicitly allow the offering of affiliated mutual funds and the receipt of reasonable compensation for managing 401(k) plan investment funds. Those claims should therefore be dismissed. Moreover, even if the addition of those funds to the Plan's fund lineup were not specifically exempted -- and they are -- ERISA's statute of limitations bars Plaintiffs' prohibited transaction claims insofar as Plaintiffs seek to challenge investment options added to the Plan more than three years prior to commencing this action.

*Finally*, the Complaint fails to state any other valid claims because:  (i) the disclosure claims in Count III are barred by the Plan's complete and accurate participant disclosures concerning the Plan's investment options and fees; (ii) Counts II, VI, and VII are derivative, and therefore cannot survive in the absence of an underlying ERISA violation; and (iii) the only named fiduciaries for the Plan are defendants the Administrator, the Employee Plans Investment Committee (the "EPIC"), and the Selection Committee, and the cursory allegations in the Complaint are insufficient to allow the Court to conclude that either JPMorgan Chase, the Bank, or the Compensation Committee and associated individuals are fiduciaries with respect to the challenged conduct in the Complaint.

## BACKGROUND

The Plan is a "defined contribution" plan (Compl. ¶ 60), funded through both employee-directed contributions and JPMorgan's matching program.  Although not required by ERISA, JPMorgan matches employee contributions dollar-for-dollar up to 5% of eligible compensation for employees making less than $250,000 (*id.* ¶ 65), and makes discretionary contributions to accounts for certain non-highly-compensated employees.  (Compl. Ex. 3 at 12.) In total, JPMorgan voluntarily contributed approximately ***$2.1 billion*** to the Plan from 2011

4

through 2015.[5]  Moreover, throughout the putative class period, JPMorgan -- not

participants -- paid the Plan's recordkeeping fees and other administrative expenses.  (*See*

Compl. Ex. 3 at 17.)

Investments in the Plan are entirely participant-directed -- that is, each participant

allocates the employee and employer contributions into any investment option available under

the Plan.  (*See id.* at 19.)  As set forth in the June 2016 Plan Investment Fund Profiles ("June

2016 Fund Profiles" (Saltzstein Decl. Ex. 13)),[6] the Plan is currently comprised of a broad array

of eight index funds in the form of commingled trusts, four investment products actively-

managed by JPMorgan in the form of separate accounts or commingled trusts and for which the

investment management fees are paid by JPMorgan (not by Plan participants),[7] seven separate

accounts actively-managed by third-party managers, nine target date funds, and the JPMorgan

Chase Common Stock Fund.  (*See also* Appendix A.)  The Plan's investment options reflect a

variety of investment strategies and risk/return profiles; consequently, the management fees

charged by those options vary as well, currently ranging from 0.00% (in the case of options for

which JPMorgan absorbs the investment management fees) to 0.62%.  (*See generally* June 2016

Fund Profiles (Saltzstein Decl. Ex. 13).)

---

[5]     JPMorgan contributed $2,089,812,734 to Plan participant accounts from 2011 through 2015.  (*See* 2011 Form 5500, at Schedule H Line 2a(1)(A) ($365,191,391) (Saltzstein Decl. Ex. 1); 2012 Form 5500, at Schedule H Line 2a(1)(A) ($409,539,173) (Saltzstein Decl. Ex. 2); 2013 Form 5500, at Schedule H Line 2a(1)(A) ($438,186,359) (Saltzstein Decl. Ex. 3); 2014 Form 5500, at Schedule H Line 2a(1)(A) ($415,877,629) (Saltzstein Decl. Ex. 4); 2015 Form 5500, at Schedule H Line 2a(1)(A) ($461,018,182) (Saltzstein Decl. Ex. 5).)

[6]     Citations in the form "Saltzstein Decl. Ex." are to the Declaration of Susan L. Saltzstein, submitted herewith.

[7]     There are three general types of investments that are included in defined contribution 401(k) plans:  mutual funds, commingled trusts, and separate accounts.  (*See* Compl. ¶ 101.)  Commingled trusts are administered by a bank and seek to mix the assets of multiple institutional investors, while separate accounts are managed for a particular client who becomes the direct owner of the underlying securities.  Each form of investment has its advantages:  for example, mutual funds are subject to extensive regulatory and disclosure rules (*see infra* Argument, Part I.C at 14-15), and commingled trusts and separate accounts tend to have lower fees than mutual funds.

The Plan's current investment lineup reflects certain Plan changes instituted in 2015 and 2016 -- a point Plaintiffs unfairly critique but which undercuts Plaintiffs' allegations that the Plan's fiduciaries failed to review the Plan's investment lineup.  (*See infra* Argument, Part I.B at 13-14.)  Those Plan changes included the (1) removal of two mid-cap funds from the Plan's lineup and the replacement of those funds with a lower-cost index fund (Compl. ¶¶ 145-52); (2) conversion of two mutual funds managed by JPMorgan to separate account and commingled account formats, and ***elimination*** of the fees for Plan participants associated with those two investments (*id.* ¶¶ 159-60; 167-68); and (3) reduction of the investment management fees for all of the BlackRock mutual funds by as much as 40% (*id.* ¶ 178).  As a result of those Plan modifications, JPMorgan currently pays all of the investment management fees associated with JPMorgan-affiliated investment options that participants have the ability to select.  Prior to those changes, the management fees charged by the Plan's investment options ranged from 0.00% to 0.93%.  (*See generally* June 2016 Fund Profiles (Saltzstein Decl. Ex. 13).)  Contrary to Plaintiffs' allegations that the Plan's fees were "excessive," even before the Plan's fee reductions in 2015 and 2016, the range of fees associated with the Plan's investments were well within a range found reasonable as a matter of law by other courts.  (*See infra* Argument, Part I.A.1 at 8-11.)  Now, those fees are even less expensive.

## ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege "a plausible entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In ERISA cases in particular, the Second Circuit has cautioned that "the prospect of discovery in a suit claiming breach of fiduciary duty is

ominous, potentially exposing the ERISA fiduciary to probing and costly inquiries and document requests[,]" thus "elevat[ing] the possibility that a plaintiff with a largely groundless claim will simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) (internal quotations and alteration omitted) ("*Morgan Stanley*").  Indeed, the Supreme Court has observed that a motion to dismiss is an "important mechanism for weeding out meritless [ERISA] claims." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014).  For the multiple independent reasons discussed below, the Complaint should be dismissed.

## I.   COUNT I SHOULD BE DISMISSED BECAUSE THE COMPLAINT IS DEVOID OF WELL-PLEADED ALLEGATIONS OF A FIDUCIARY BREACH

Count I purports to assert a claim that Defendants breached their fiduciary duties under ERISA § 404, 29 U.S.C. § 1104(a).  ERISA imposes a "[p]rudent man standard of care" for fiduciaries of employee benefit plans.  29 U.S.C. § 1104(a).  The prudent man standard charges fiduciaries with, among other things, acting (1) "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries[] and . . . defraying reasonable expenses" (*i.e.*, a duty of loyalty); and (2) "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use . . ." (*i.e.*, a duty of prudence).  *Id.* § 1104(a)(1)(A)-(B)).

Plaintiffs allege that Defendants acted disloyally and imprudently by (a) retaining in the Plan twenty-one investment options managed by JPMorgan and other investment managers despite their alleged "unduly excessive fees" (Compl. ¶¶ 5; 224; Appendix B); (b) failing to have in place a method of systematic review of the Plan's investment options to monitor expenses and performance, and failing to make timely changes to the Plan's investment

7

lineup to remove certain investment options to reduce fees (*id.* ¶¶ 5; 225-27); and (c) "failing to consider and offer commingled accounts, separate accounts, or collective trusts" (*id.* ¶ 5).  None of Plaintiffs' allegations are sufficient to state a breach of fiduciary duty claim as a matter of law.

### A.   Plaintiffs' Allegations Of "Excessive" Fees And Purported <u>"Self-Dealing" Do Not Support A Breach Of Fiduciary Duty Claim</u>

The essence of Plaintiffs' breach of fiduciary duty claim concerns allegations that Defendants included in the Plan "unduly expensive" investment options managed by JPMorgan or "business partners."  (Compl. ¶¶ 2-3; 5; 224-27.)  Specifically, Plaintiffs identify as purportedly having excessive fees (*see* Appendix B):  (1) four JPMorgan-affiliated mutual funds -- the Growth and Income Fund, the Mid Cap Growth Fund, the Small Cap Core Fund, and the Core Bond Fund (Compl. ¶¶ 139-175); (2) one separate account managed by Earnest Partners (*id.* ¶¶ 145-56) and seven mutual funds managed by BlackRock (*id.* ¶¶ 176-87); and (3) nine target date fund of funds (*id.*).  As discussed below, those allegations do not support a claim.

### 1.   The Fees Associated With The Plan's Investments Are Within A Range Found By <u>Other Courts To Be Reasonable As A Matter Of Law</u>

Plaintiffs' "excessive" fee allegations do not support a claim for breach of fiduciary duty because the range of fees associated with the twenty-one investment options Plaintiffs challenge are reasonable as a matter of law.  Further, Plaintiffs' hindsight "comparisons" of the fees of certain of the Plan's investment options with the fees and performance of a cherry-picked alternative are superficial and meaningless.

*First*, the investment management fees for the twenty-one options about which Plaintiffs complain (*see* Appendix B) -- which Plaintiffs allege to be between 4 basis points (0.04%) and 93 basis points (0.93%) before the 2015 and 2016 Plan changes described above (Compl. ¶¶ 146; 178) -- are well within a range that other courts have consistently held to be

reasonable as a matter of law.  For example, in *Hecker*, the Seventh Circuit affirmed dismissal of claims that defendants breached fiduciary duties by selecting investment options with excessive fees.  556 F.3d at 586.  The court observed that -- like the Plan here -- there was a wide a range of expense ratios from 7 basis points to just over 100 basis points (0.07% to 1.00%).  *Id.*; *see also Brotherston v. Putnam Invs., LLC*, CIVIL ACTION NO. 15-13825-WGY, 2017 WL 1196648, at *6-7, and n.6 (D. Mass. Mar. 30, 2017) (holding expense ratios of affiliated funds between 0.25% and 1.65% reasonable); *Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013) (rejecting excessive fee arguments where expense ratios varied from 0.03% to more than 2.00%), *vacated on other grounds*, 135 S. Ct. 1823 (2015); *Renfro v. Unisys Corp.*, 671 F.3d 314, 327-28 (3rd Cir. 2011) (rejecting excessive fee claims where expense ratios ranged from 0.1% to 1.21%); *Loomis v. Exelon Corp.*, 658 F.3d 667, 669-70 (7th Cir. 2011) (rejecting excessive fee claims where expense ratios ranged from 0.03% to 0.96%).  The expense ratios at issue here are alleged to be even lower than those found to be reasonable as a matter of law by other courts.

    *Second*, hindsight allegations that other investment options exist and might charge lower fees or had moderately better performance for certain periods than the Plan's investment options do not support a breach of fiduciary duty claim.  (Compl. ¶¶ 142, 148, 154 n.16, 163-64, 172-73, 181.)  Indeed, the *Meiners* court rejected that identical argument in dismissing ERISA breach of fiduciary duty claims based on allegations that a 401(k) plan included higher-cost, affiliated investment options.  2017 WL 2303968, at *3-4.  There, plaintiff alleged that defendants violated ERISA by including in their 401(k) plan target date funds managed by defendant Wells Fargo that were more expensive than, and did not perform as well as, "comparable" funds offered by Vanguard and Fidelity.  *Id.* at *1.  In rejecting that argument, the

court held that comparing the performance and fees of other funds from other managers was
inadequate to support a claim for breach of fiduciary duty under ERISA:

> Nothing in the complaint suggests that the Vanguard and Fidelity funds are
> reliable comparators, offer similar services, or are of similar size . . . . Without a
> meaningful comparison, the mere fact that the Wells Fargo funds are more
> expensive than two other funds does not give rise to a plausible breach of
> fiduciary duty claim.

*Id.* at *2-3 ("a comparison of the returns of two different funds is insufficient" to plausibly allege

that a fund is underperforming).

Similarly here, the Complaint's attempts to compare the expenses or performance

of certain of the Plan's investment options to other investment options do not give rise to a

plausible claim because there are no allegations that those comparisons are meaningful.  For

example, many of the "comparisons" do not purport to compare *specific* funds to the Plan's

investment options, but rather conclusorily state that other, unidentified funds are available from

different investment managers at lower costs.  (*See e.g.*, Compl. ¶ 172 ("[a]ctively managed

mutual funds from companies such as Baird Advisors, SEI, and Dimensional Fund Advisors

would have similarly cost at least 25 percent less than the amount Plan participants paid in the

JPMorgan Core Bond Fund"); (*see also id.* ¶¶ 147 n.13; 164.)  Moreover, even if ERISA

required 401(k) plans to offer the least expensive and best performing funds in the market -- and

it does not -- the fact that Plaintiffs now purport to identify an alternative that allegedly had

lower fees and/or better performance than a Plan investment option does not support a claim for

breach of fiduciary duty.  Rather, as the Second Circuit held, a plaintiff must "allege[] facts that,

if proved, would show that an adequate investigation would have revealed to a reasonable

fiduciary that the investment at issue was improvident."  *Morgan Stanley*, 712 F.3d at 718

(quotation omitted).  Here, Plaintiffs have alleged no such facts.  Plaintiffs' comparison

allegations simply do not give rise to a plausible inference that any of the Plan's investment options were improvident.  *See id.*

> ## 2. Allegations That The Plan Includes Investment Options Affiliated With JPMorgan And "Business Partners" Do Not Support A Fiduciary Duty Claim

Plaintiffs' allegations that the twenty-one purportedly "excessive" fee investment options are affiliated with JPMorgan "and/or business partners" and therefore constitute self-dealing do not support a breach of fiduciary duty claim.  (*E.g.*, Compl. ¶¶ 3; 111-22.)

*First*, there is nothing unlawful about a financial services company offering its own mutual funds to its own employees in an in-house 401(k) plan.  Indeed, ERISA's implementing regulations *expressly allow* mutual fund advisors and their affiliates to invest in affiliated mutual funds.  *See* Class Exemption Involving Mutual Fund In-House Plans Requested by the Investment Company Institute, 42 Fed. Reg. 18,734 (Mar. 31, 1977) ("PTE 77-3"). Consequently, courts have recognized that plan fiduciaries do not violate ERISA merely by offering affiliated investment products.  Indeed, "[i]f such allegations were sufficient to survive a motion to dismiss, it would render fiduciaries liable to suit for failing to choose the cheapest, non-affiliated fund - even if that fund is plagued by other problems."  *Meiners*, 2017 WL 2303968, at *3 (internal quotations omitted); *see also Dupree v. Prudential Ins. Co. of Am.*, No. 99-8337-Civ.-JORDAN, 2007 WL 2263892, at *45 (S.D. Fla. Aug. 10, 2007) (holding"[s]imply because Prudential followed such a practice . . . does not give rise to an inference of disloyalty, especially where these practices are universal among plans of the financial services industry").

Moreover, directly contradicting Plaintiffs' self-dealing allegations is that JPMorgan, not Plan participants, currently pays the investment management fees associated with JPMorgan-affiliated investments in the Plan.  (*See* June 2016 Fund Profiles at 11, 19-20, 24, 34 (Saltzstein Decl. Ex. 13).)  As noted, long before this lawsuit was filed the Plan's fiduciaries

made certain changes to the Plan's investment lineup, including changes to the four JPMorgan-affiliated options that Plaintiffs specifically challenge.[8]  Even before those changes, JPMorgan paid the fees associated with many of the JPMorgan-affiliated options that participants have the ability to select, and did so for the entirety of the putative class period.[9]  Consequently, Plaintiffs' "self-dealing" allegations are not plausible:  if Defendants included affiliated options to "enrich[] themselves" at the expense of Plan participants (Compl. ¶ 3), then JPMorgan would not pay the investment management fees associated with those options.

*Second*, the allegations that the Plan included BlackRock funds due to a "longstanding business arrangement" fare no better.  (Compl. ¶¶ 120, 122.)  The Complaint speculates that the Plan offers BlackRock-managed funds as a *quid pro quo* for BlackRock partnering with JPMorgan in other business dealings, including in January 2017 when BlackRock chose JPMorgan as the custodian of certain of BlackRock's assets.  (*Id.* ¶¶ 123-29.) But Plaintiffs do not put forth *any factual allegations* supporting their conclusory assertions.  For example, there are no allegations of fact that BlackRock pays any fees to JPMorgan in connection with the Plan, nor are there any factual allegations that BlackRock custodied assets with JPMorgan in exchange for BlackRock funds being included in the Plan.  The Complaint's

---

[8]     In 2015 and 2016,  JPMorgan converted the Plan's holdings in the JPMorgan-affiliated Small Cap Core Fund and Core Bond Fund from mutual funds to separate account and commingled account formats, and eliminated the fees for Plan participants associated with those investments.  (Compl. ¶¶ 159-60; 167-68.)  The Plan's fiduciaries also removed the Mid Cap Growth Fund from the Plan's investment lineup (*id.* ¶¶ 145-50), and in 2013 removed the Growth and Income Fund from the Plan's investment lineup.  (*Id.* ¶ 139 n.11.)  Prior to those changes, Plan participants were charged the investment management fees associated with those four mutual funds.  (*See, e.g.*, August 2012 Fund Profiles at 27-28, 37-38, 47-48, 5-52 (Saltzstein Decl. Ex. 9).)

[9]     For example, JPMorgan paid the JPMorgan-related investment management fees associated with both the Short-Term Fixed Income Fund and the Stable Value Fund.  Similarly, for the Plan's Target Date funds JPMorgan paid the expenses associated with the maintenance of the glide path and the investment management fee for the JPMorgan emerging market debt component of those funds.  (*See* July 2011 Fund Profiles at 11, 20-24 (Saltzstein Decl. Ex. 7); January 2012 Fund Profiles at 11, 20-24 (Saltzstein Decl. Ex. 8); December 2013 Fund Profiles at 11, 19-21 (Saltzstein Decl. Ex. 11); January 2015 Fund Profiles at 11, 19-21 (Saltzstein Decl. Ex. 12); June 2016 Fund Profiles at 11, 19-21 (Saltzstein Decl. Ex. 13).)

speculative and unsupported assertions are of the sort that the Second Circuit cautioned courts to analyze with "particular care" because of the "*in terrorem*" effect of discovery in ERISA cases from "a plaintiff with a largely groundless claim." *Morgan Stanley*, 712 F.3d at 718-19 (quotation omitted). Simply put, Plaintiffs' BlackRock allegations do not "give rise to a '*reasonable* inference' that the defendant[s] committed the alleged misconduct." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

### B.    Allegations That Defendants Failed To Implement A Process To Monitor Plan Investments Or Make Timely Plan Changes Are Not Supported By Any Factual Allegations

The Complaint's allegation that Defendants "fail[ed] to have in place a method of systematic review both of the Plan's individual investment options and of the portfolio as a whole" (Compl. ¶ 226) is wholly conclusory and insufficient to support an ERISA breach of fiduciary duty claim. For example, in *Morgan Stanley*, the Second Circuit "consider[ed] the degree of factual detail needed in a complaint in order to present nonconclusory and plausible allegations that a pension plan administrator purchased and continued to hold certain mortgage-backed securities in violation of its fiduciary duties" under ERISA. 712 F.3d at 709. In affirming dismissal of the complaint, the court held that the complaint contained no factual allegations about defendant's knowledge or process of selecting and retaining plan investments, and the circumstantial factual allegations about the failure to monitor plan investments (such as poor performance and media reports about mortgage-backed securities) did not give rise to a plausible inference that defendant acted imprudently in violation of ERISA. *Id.* at 721-22.

Similarly here, Plaintiffs have not offered any factual allegations supporting their process criticism. Rather, the Complaint *concedes* that Plaintiffs have no "actual knowledge of the specifics of Defendants' decision-making processes with respect to the Plan, including Defendants' processes for selecting, monitoring, or removing the Plan investments." (Compl. ¶

13

21.)  That acknowledgement makes plain that Plaintiffs have not supported their claim with "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

Moreover, the Complaint concedes that in 2015 and 2016, the Plan's fiduciaries instituted a variety of Plan changes beneficial to Plan participants.  (*See supra* Background, at 4-6.)  Those changes directly contradict Plaintiffs' allegations that the Plan's fiduciaries were not monitoring the Plan's investments.  Further, that the Plan made those changes before Plaintiffs filed this litigation does not -- and cannot -- "serve as evidence that prior conduct was imprudent."  *Laboy v. Bd. of Trs. of Bldg. Serv.*, No. 11-cv-5127(HB), 2012 WL 3191961, at *3 (S.D.N.Y. Aug. 7, 2012) (dismissing ERISA claims and holding "[i]t would turn the law on its head were we to embrace a concept where a plaintiff could use allegations of prudent measures to prove a defendant's imprudence"); *see also* Fed. R. Evid. 407 (subsequent remedial measures not admissible to establish liability).[10]

### C.    Plaintiffs' Assertions Of A Failure To "Use All The Tools Available" Do Not State A Claim, And Are Contradicted By The Complaint's Allegations

In a final attempt to cobble together a fiduciary breach claim, Plaintiffs assert that Plan fiduciaries acted imprudently by including in the Plan the four JPMorgan-affiliated mutual funds that Plaintiffs assert had "excessive" fees (*i.e.*, the Growth and Income Fund, the Mid Cap Growth Fund, the Small Cap Core Fund, and the Core Bond Fund (*see* Appendix B)), rather than

---

[10]     Plaintiffs' assertions, "upon information and belief," that the 2015 and 2016 Plan changes were made in response to an unrelated SEC investigation are conclusory and, in any event, irrelevant to a breach of fiduciary duty claim.  (Compl. ¶¶ 130-31; 137.)  The Complaint makes plain that the SEC investigation did not involve the Plan or the investments in the Plan's lineup in any way, and concerned unrelated allegations of "steering" of client funds into "undisclosed" affiliated products.  (*Id.* ¶¶ 130-32.)  Here, the Plan included both affiliated and unaffiliated investment choices (*see, e.g.*, Compl. Ex. 4 at 11-44); the Plan's fiduciaries cannot "steer" any money into affiliated products because participants choose how their contributions are allocated (*see* Compl. Ex. 3 at 14); and the investment managers of the Plan's options were fully disclosed to participants (*see generally*, Compl. Ex. 4 at 11-44)  Further undercutting Plaintiffs' allegations is the removal of the Growth and Income Fund from the Plan's investment lineup in 2013.  (Compl. ¶ 139 n.11.)

less expensive commingled trusts or separately managed accounts.  (Compl. ¶¶ 149, 163 and n. 19, 170, 172, 174, 188-93.)  That too fails to state a claim.

Many courts have rejected this very argument, concluding that retirement plans may reasonably opt for the expanded package of services offered by mutual funds over commingled trusts or separate accounts, even if mutual funds have higher fees.  *See, e.g.*, *Loomis*, 658 F.3d at 671 (affirming dismissal and rejecting claim that fiduciaries should have offered commingled trusts rather than mutual funds).  Unlike commingled trusts or separately managed accounts, mutual funds are subject to extensive SEC regulation under the Investment Company Act, 15 U.S.C. §§ 80a-1, *et. seq.*  Among other things, mutual funds are governed by boards that include independent directors, *see* 15 U.S.C. § 80a-16; registered with the SEC; and provide detailed shareholder communications such as prospectuses and annual reports, *see* 15 U.S.C. §§ 80a-8, 24, 29.  Commingled trusts and separate accounts, by contrast, are not subject to SEC regulations and disclosure rules.  As the Seventh Circuit held, "we see nothing in [ERISA] that requires plan fiduciaries to include any particular mix of investment vehicles in their plan."  *Hecker*, 556 F.3d at 586.  Nevertheless, the Complaint concedes -- as it must -- that the Plan offered not only mutual funds, but commingled trusts and separately managed accounts.[11]  (*E.g.* Compl. ¶ 190.)

---

[11]     Plaintiffs also allege that the Plan contained "duplicative investments," and criticizes the Plan for offering two Large Cap Value funds and two Large Cap Growth funds, "with one option being significantly more expensive than the other." (Compl. ¶¶ 194-95.)  But Plaintiffs never allege -- nor could they -- that those investment options expected or experienced similar returns.  Indeed, those funds have expressly different investment objectives.  (*See* Compl. Ex. 4 at 27-31.)  Plaintiffs also omit that those funds cater to different risk appetites -- two relatively conservative "large cap value" funds (one managed by BlackRock and one managed by T. Rowe Price), two more aggressive "large cap growth" funds (one managed by BlackRock and one managed by Wellington), and a middle-tier S&P 500 Index fund (managed by BlackRock).  (*See id.* at 6, 27-31.)  Moreover, the fact that certain of the options have higher expense ratios is a result of active versus passive management.  (*See id.* at 27-31.)  Plaintiffs do not allege anything improper about offering those funds, and as multiple courts have recognized, ERISA encourages participant choice.  *E.g.*, *Loomis*, 658 F.3d at 673 (ERISA "encourages sponsors to allow more choice" ); *Tibble*, 729 F.3d at 1134-35 ("Because participant choice is the centerpiece of what ERISA envisions for defined-contribution plans, these sorts of paternalistic arguments have had little traction").

## II.   COUNT III SHOULD BE DISMISSED BECAUSE DEFENDANTS PROVIDED COMPLETE AND ACCURATE DISCLOSURES TO PLAN PARTICIPANTS

Count III alleges that Defendants failed to adequately disclose information to participants about the Plan's fees and its investment options in violation of ERISA's disclosure rules set forth in 29 C.F.R. § 2550.404a-5 ("Rule 404a-5").  (Compl. ¶¶ 237-44.)  Plaintiffs' claims lack merit because the Plan's detailed disclosures fully comply with Rule 404a-5.

Rule 404a-5 requires disclosure of:  (i) "any designated investment alternatives [*i.e.*, investment funds] offered under the plan," (ii) "any designated investment managers," (iii) "any fees and expenses for general plan administrative services . . . which may be charged against the individual accounts of participants and beneficiaries and are not reflected in the total annual operating expenses of any designated investment alternative," and, (iv) on a quarterly basis, "the dollar amount of [any such fees and expenses] that are actually charged."  29 C.F.R. § 2550.404a-5(c).  Defendants' putative class period disclosures contained all of that information.

*First*, Defendants disclosed detailed information about the Plan's designated investment alternatives and investment managers (elements (i) and (ii) of Rule 404a-5).  For example, the Plan's Investment Fund Profiles provided to Plan participants throughout the putative class period identified each of the investment options offered under the Plan, the investment managers for each of those options, and the risks, fees and expenses associated with each investment option.  (*See, e.g.*, Compl. Ex. 4 at 11-18; *see also, generally* Fund Profiles (Saltzstein Decl. Exs. 6-13).)  Moreover, Plan participants are provided quarterly statements directing them to the Plan's Fund Profiles for "detailed descriptions of each of the investment funds within the [Plan], including the investment objective, strategy, and fees."  (*See* Compl. Ex. 5, at 6.)  In addition, there is no allegation -- nor could there be -- that participants were not provided the annual participant fee disclosure statements required by the DOL showing fund

16

expenses and historical returns for each fund on a net-of-fee basis compared to relevant benchmarks.  (*See* "Fee Disclosure Notices" (Saltzstein Decl. Exs. 14-19).)

Plaintiffs' assertions that Defendants did not disclose the identity, managers, risks, fees, and expenses associated with the *underlying* investments in the Target Date funds (Compl. ¶ 241) do not support a Rule 404a-5 claim because such detailed information is not required by Rule 404a-5.  *See* 29 C.F.R. § 2550.404a-5(c).  Rather, as required, the Plan's Fund Profiles fully disclosed, among other things:  (a) the investment option (*i.e.*, each Target Date fund) (*see* Compl. Ex. 4 at 11-18), (b) the fees associated with each Target Date fund (*see id.*), (c) the risks of investment in those funds (*id.* at 12), and (d) that those funds' asset allocation is managed by JPMorgan (*id.* at 11).  Rule 404a-5 requires nothing more.  Nevertheless, the information that Plaintiffs claim is missing is provided -- as participants are directed to the Plan's Web Center to "view the specific asset allocation for each of the Target Date Funds."  (*Id.* at 70.)

*Second*, Plan participants also received Rule 404a-5 quarterly disclosures concerning fees and expenses for general Plan administrative services and amounts actually charged (elements (iii) and (iv) of Rule 404a-5).  In that regard, Plan participants received quarterly statements containing detailed information about their investments, including required fee disclosures.  Contrary to Plaintiffs' assertions (Compl. ¶ 210), those quarterly fee disclosures are clear and unambiguous.  The disclosure provides:

> No individual participant or administrative fees were charged during the period listed.  Some of the plan's administrative fees were paid from the total annual operating expenses of one or more of the plan's investments.  Those amounts could include shareholding servicing fees, 12b-1 fees, sub-transfer agent fees or similar amounts.

(Compl. ¶ 210; *see also* Compl. Ex. 5 at 2.)  That disclosure unambiguously states that **Plan participants do not pay any administrative fees or expenses** associated with the Plan (participants were not charged those expenses at any time during the putative class period).  The

Plan's SPD likewise informs participants that "JPMorgan Chase pays the administrative fees associated with the Plan."  (Compl. Ex. 3 at 17; *see also, e.g.*, 2016 Fee Disclosure Notice at 1 (Saltzstein Decl. Ex. 19) (the "fees for plan administrative services such as trustee, legal, accounting, and recordkeeping and participant services" are "paid by JPMorgan Chase and are not charged to your account or the accounts of other participants").)

The quarterly disclosure further states that "[s]ome of the [P]lan's administrative fees were paid from the total annual operating expenses of one or more of the plan's investments."  (Compl. Ex. 5 at 2.)  This so-called "revenue sharing" is a widely-accepted practice where investment managers opt to compensate plan service providers, such as recordkeepers, for services provided that the investment managers would otherwise have to perform themselves.  *See Malone v. Teachers Insurance & Annuity Assoc. of Am.*, No. 15-cv-08038 (PKC), 2017 WL 913699, at *1 (S.D.N.Y. Mar. 7, 2017) (describing revenue sharing, where the investment manager "allocates a portion of the investment fee to pay" for administrative services, as a practice "common throughout the industry").  Rule 404a-5 requires plans to disclose revenue sharing arrangements to plan participants.  *See* 29 C.F.R. § 2550.404a-5(c)(2)(ii)(c) (requiring quarterly disclosure where "some of the plan's administrative expenses for the preceding quarter were paid from the total annual operating expenses of one or more of the plan's designated investment alternatives").  Consistent with that requirement, the quarterly fee disclosure informs participants that a portion of the investment-related fees was used to offset some of the administrative costs associated with operating the Plan (with the remainder paid by JPMorgan).[12]

---

[12]      Plaintiffs' allegation that Defendants also did not disclose purported "arrangements" with BlackRock that led to BlackRock funds being included in the Plan is also inadequate to state a claim.  (Compl. ¶ 241.)  As noted above, there are no allegations that any such "arrangements" are related to the Plan.  (*See supra* Argument, Part I.A.2 at 11-13.)  In any event, Rule 404a-5 does *not* require such a disclosure.  *See* 29 C.F.R. § 2550.404a-5(c).

**III.    COUNTS IV AND V SHOULD BE DISMISSED BECAUSE THE CHALLENGED
TRANSACTIONS ARE EXPRESSLY PERMITTED, AND ARE TIME BARRED**

Counts IV and V allege that Defendants engaged in prohibited transactions in
violation of ERISA § 406, 29 U.S.C. § 1106, by including investment options in the Plan
managed by JPMorgan or BlackRock that allegedly had "unduly excessive" fees.  (*See* Compl.
¶¶ 253; 261-66.)  Accordingly, Plaintiffs' prohibited transaction claims purport to implicate
twenty of the Plan's investment options (*see* Appendix B), because those are the only options
managed by either JPMorgan or BlackRock identified in the Complaint as having "excessive"
fees.  (*See* Compl. ¶¶ 139-87.)  Plaintiffs' prohibited transaction claims should be dismissed for
at least two reasons.

**A.    The Challenged Transactions Are Permitted
Under ERISA's Prohibited Transaction Exemptions**

Plaintiffs' prohibited transaction claims should be dismissed because at least two
prohibited transaction exemptions are applicable to the challenged investment options here.

*First*, ERISA § 408(b)(2) provides that the prohibited transaction rules do not
apply to arrangements for payment of reasonable expenses for services rendered.  29 U.S.C. §
1108.  The Complaint's allegations make plain that the fees associated with the Plan's
challenged investment options -- which Plaintiffs allege to be between 4 basis points and 93
basis points -- are "reasonable" because they are within ranges found by other courts to be
reasonable as a matter of law.  (*See supra* Argument, Part I.A.1 at 8-11.)  Accordingly, all of
Plaintiffs' prohibited transaction claims fail.

*Second*, DOL implementing regulations specifically permit the offering of
affiliated mutual funds in in-house 401(k) plans.  *See* PTE 77-3.  PTE 77-3 expressly permits
retirement plans to invest in affiliated funds registered under the Investment Company Act of
1940 provided there are no commissions or other extraneous fees, and the investments are

offered to the Plan on the best available terms.[13]  Here, the JPMorgan-affiliated mutual

funds -- *i.e.*, the Growth and Income Fund, the Core Bond Fund, the Mid Cap Growth Fund, and

the Small Cap Core Fund -- satisfy all of the requirements to qualify for PTE 77-3.  They are

mutual funds, and they are not alleged to pay a sales commission, redemption fees, or any other

fee beyond the standard advisory fees paid by the investment funds (and not by the Plan).

Where -- as here -- the foregoing exemption clearly applies, courts have dismissed prohibited

transaction challenges as a matter of law.  *See, e.g.*, *Leber v. Citigroup, Inc.*, No. 07 Civ.

9329(SHS), 2010 WL 935442, at *10 (S.D.N.Y. Mar. 16, 2010) (dismissing claim on a 12(b)(6)

motion because, "even in the light most favorable to plaintiffs, the complaint asserts nothing

more than that defendants purchased shares in an affiliated mutual fund, a transaction to which

the restrictions of section [] 406 . . . shall not apply") (internal quotations omitted).

> **B.      The Challenged Transactions Should Be Dismissed**
> **Insofar As They Purport To Challenge Transactions**
> **Barred By ERISA's Three-Year Statute Of Limitations**

Separate from the above exemptions warranting dismissal, Plaintiffs' prohibited

transaction claims should also be dismissed insofar as they are based on investment options

added to the Plan more than three years before Plaintiffs commenced this action.

ERISA's statute of limitations provides that no action may be brought more than

"three years after the earliest date on which the plaintiff had actual knowledge of the breach or

violation."  29 U.S.C. § 1113(2).  Courts have held that for limitations purposes, a prohibited

---

[13]      PTE 77-3 permits a plan to purchase "shares of an open-end investment company registered under the Investment Company Act of 1940 by an employee benefit plan covering only employees of such investment company, employees of the investment adviser or principal underwriter for such investment company, or employees of any affiliated person . . . of such investment adviser or principal underwriter . . . ."  42 Fed. Reg. at 18,734-35. The plan also must not:  (a) "pay any investment management, investment advisory or similar fee" except for the payment by the fund of investment advisory fees; (b) pay a redemption fee other than to the fund; (c) pay a sales commission; and (d) have dealings with the investment fund "on a basis no less favorable to the plan than such dealings are with other shareholders of" the fund.  *Id.* at 18,735.

transaction only occurs when a plan makes the initial decision to select a fund as an investment option.  *See, e.g. David v. Alphin,* 704 F.3d 327, 339-41 (4th Cir. 2013) ("The only action that can support an alleged prohibited transaction is the initial selection of the affiliated funds . . . .").  In addition, a plaintiff has "actual knowledge" of such a transaction when she has "knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act."  *Janese v. Fay*, 692 F.3d 221, 228 (2d Cir. 2012) (citation omitted).  Moreover, courts have concluded that plan participants have actual knowledge of an alleged ERISA violation when provided with documents that would, if read -- regardless of whether the documents were in fact read -- establish actual knowledge of the breach or violation.  *See, e.g.*, *Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 419 n.3 (S.D.N.Y. 2008) ("[W]hen determining whether plaintiffs had actual knowledge of a breach for the purposes of ERISA § 413, this Circuit has focused on whether the documents provided to plan participants sufficiently disclosed the alleged breach of fiduciary duty, not whether individual Plaintiffs actually saw or read the documents.").

        In this case, under ERISA's statute of limitations, any investment funds that were added to the Plan and disclosed to Plan participants with no material changes thereafter more than three years prior to the filing of the Complaint (*i.e.*, prior to January 25, 2014) cannot form the basis of a prohibited transaction claim.  Each quarter, Plan participants received quarterly account statements setting forth the Plan's investment options, and referring participants to the Plan's Fund Profiles for "detailed descriptions of each of the investment funds . . . ." (*See, e.g.*, Compl. Ex. 4 at 6.)  The Fund Profiles described each Plan investment option, the investment manager for each option, and the fees associated with each investment.  (*See, e.g.*, June 2013 Fund Profiles at 11-43 (Saltzstein Decl. Ex. 10).)  As made clear by the Fund Profiles, only the

21

Target Date 2055 Fund was added to the Plan within three years of the filing of the Complaint. (*See* Appendix A; *see also* 2013 Fee Disclosure Notice (Saltzstein Decl. Ex. 15).)  Accordingly, ERISA's three-year limitations period bars prohibited transaction claims with regard to at least nineteen of the twenty investment options that Plaintiffs challenge.

## IV.    COUNTS II, VI, AND VII SHOULD BE DISMISSED BECAUSE THERE CAN BE NO LIABILITY FOR THOSE COUNTS IN THE ABSENCE OF AN UNDERLYING ERISA VIOLATION

Count II purports to assert a claim for a failure to monitor fiduciaries, (Compl. ¶¶ 231-36); Count VI alleges "co-fiduciary" liability against certain defendants, (*id.* ¶¶ 269-81); and Count VII seeks to assert a claim for "non-fiduciary participation" (*id.* ¶¶ 283-90).  Insofar as the Court dismisses Plaintiffs' underlying ERISA claims, Counts II, VI, and VII should also be dismissed because they are derivative of Plaintiffs' fiduciary duty and prohibited transactions claims.  *See Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000) (holding that non-fiduciary liability requires a "showing that the *plan fiduciary*, with actual or constructive knowledge of the facts satisfying the elements of a § 406(a) transaction, caused the plan to engage in the transaction"); *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 368 (2d Cir. 2014) ("Plaintiffs' latter two claims -- failure to monitor and breach of co-fiduciary duty -- constitute derivative claims that cannot survive absent a viable claim for breach of a duty of prudence."); *Rinehart v. Akers*, 722 F.3d 137, 154 (2d Cir. 2013) (holding that a claim alleging that the appointing fiduciaries failed to provide information to the appointed fiduciaries was a derivative claim), *vacated on other grounds*, 134 S. Ct. 2900 (2014).

## V.    THE COMPLAINT DOES NOT ADEQUATELY ALLEGE THAT JPMORGAN CHASE, THE BANK, OR THE CMDC DEFENDANTS WERE FIDUCIARIES

Counts I through VI -- which are asserted against Defendants in their capacities as alleged fiduciaries (*see* Compl. ¶¶ 229; 236; 244; 255; 267; 281) -- should be dismissed against

JPMorgan Chase and the Bank (Count VII purports to assert a "non-fiduciary" claim against JPMorgan Chase and the Bank), and the entire Complaint should be dismissed as against the Compensation & Management Development Committee (the "Compensation Committee"), Mr. Burke, Mr. Raymond, and Mr. Weldon (collectively with the Compensation Committee, the "CMDC Defendants"), because Plaintiffs do not allege a single fact demonstrating that any of those Defendants directed or controlled the Plan's investment decisions.

None of those Defendants is a named fiduciary under the Plan.  (*See* Plan Document ¶¶ 12.1-12.2 (identifying Plan Administrator, Selection Committee, and EPIC as Named Fiduciaries of the Plan) (Compl. Ex. 1).)  Since JPMorgan Chase, the Bank, and the CMDC Defendants are not named fiduciaries, their fiduciary status turns on whether they were "acting as a fiduciary (that is, w[ere] performing a fiduciary function) when taking the action subject to complaint."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).  Where -- as here -- ERISA claims concern the management of plan assets, a hallmark of so-called "de facto" fiduciary responsibility is control over investment decisions.  *See Coulter*, 753 F.2d at 366-67 (noting that to qualify as a de facto fiduciary, a fiduciary must have discretionary authority with respect to certain plan management or administration functions, such as "selecting investments, exchanging one instrument or asset for another, and so on") (internal quotations omitted).

Plaintiffs do not plausibly allege that JPMorgan Chase, the Bank, or the CMDC Defendants have or ever had discretionary authority over the Plan's investments that Plaintiffs specifically challenge.  With respect to the Bank, Plaintiffs assert that it was a fiduciary because (i) under the Plan's Trust Agreement (Compl. Ex. 2), it purportedly has the power to appoint or designate committees as fiduciaries with authority to control and manage Plan assets, and (ii) it is a corporate entity that "cannot act on its own without any human counterpart," and the actions of

23

its employees, including their breaches of fiduciary duties, must therefore imputed to it.  (Compl. ¶¶ 23-25.)  Both assertions are meritless.  *First*, the EPIC -- which controls and manages Plan assets -- was designated by the Plan as the named fiduciary, *not* by the Bank.  (*See* Compl. Ex. 1 at ¶ 12.1.)  Although the Trust Agreement states that the Bank may appoint such a committee, the Trust Agreement also provides that such a committee may be "designated under the Plan as the named fiduciary with the authority to control and managed the assets, operation and administration of the Plan."  (Compl. Ex. 2 at 1.)  Here, the Plan Document, not the Bank, designated the EPIC.  Thus, contrary to Plaintiffs' allegations, the Trust Agreement does not render the Bank a fiduciary.  *Second*, it is well-settled that the doctrine of *respondeat superior*, and agency theories generally, do not apply in the ERISA context.  *See, e.g.*, *In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 569 (S.D.N.Y. 2011) ("[A] company is liable for its own fiduciary duties under ERISA, not those designated to its employees." Accordingly, the Bank is not a fiduciary merely because certain named Defendants who are, or who may be, named fiduciaries are employed by the Bank.

With respect to JPMorgan Chase, Plaintiffs' *respondeat superior* allegations (Compl. ¶ 28) fail for the same reasons.  Plaintiffs also allege that JPMorgan Chase is a fiduciary "because [it has] exercised discretionary authority or control over Plan management and/or exercised authority or control over management or disposition of Plan assets and/or have discretionary authority or discretionary responsibility in the administration of the Plan."  (Compl. ¶ 30.)  Such allegations, which merely track the statutory definition of a fiduciary (*see* 29 U.S.C. 1002(21)(A)), are insufficient to establish that JPMorgan Chase was a fiduciary with respect to the complained-of conduct.  *See In re JPMorgan Chase & Co. ERISA Litig.*, No. 12 Civ. 04027 (GBD), 2016 WL 110521, at *3 (S.D.N.Y. Jan. 8, 2016) (holding that neither JPMorgan Chase

nor the Bank were fiduciaries regarding the challenged conduct because the allegations of "control regarding the administration and management of the Plans . . . and its assets . . . . are insufficient to state a claim against a purported ERISA fiduciary.").

Similarly, the CMDC Defendants are alleged to be Plan fiduciaries because they "exercised discretionary authority or control" in appointing the members of the Selection Committee.  (Compl. ¶¶ 31; 32; 40.)  Plaintiffs do not allege that the CMDC Defendants breached any duty in making appointments to the Selection Committee.  *See In re Lehman Bros. Sec. & ERISA Litig.*, 683 F. Supp. 2d 294, 299 (S.D.N.Y. 2010), *aff'd sub nom. Rinehart v. Akers*, 722 F.3d 137 (2d Cir. 2013), *vacated on other grounds*, 134 S. Ct. 2900 (2014) (dismissing ERISA claims against directors predicated on authority to appoint and remove members of compensation committee where there was no allegation that directors breached duty by appointing committee members).  Further, although the duty to appoint plan fiduciaries carries the concomitant duty to monitor those appointees, *see In re Citigroup ERISA Litig.*, No. 07 Civ. 9790, 2009 WL 2762708, at *26 (S.D.N.Y. Aug. 31, 2009), the Complaint contains no allegations that the CMDC Defendants breached any such duty with respect to the Selection Committee or its members.  Lastly, while Plaintiffs allege that the CMDC Defendants "fail[ed] to disclose" purported conflicts of interest (Compl. ¶ 234), the CMDC Defendants' monitoring obligations did not extend so far.  *See In Re Citigroup ERISA Litig.*, 2009 WL 2762708, at *26 (holding defendants charged with monitoring other fiduciaries did not have duty of disclosure).

## CONCLUSION

For all of the foregoing reasons, Defendants' motion to dismiss should be granted in its entirety and the Complaint dismissed with prejudice.

25

Dated:  July 27, 2017
        New York, New York

Respectfully submitted,

/s/ Susan L. Saltzstein
Susan L. Saltzstein
James R. Carroll (*pro hac vice*)
Michael S. Hines (*pro hac vice*)
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
susan.saltzstein@skadden.com
james.carroll@skadden.com
michael.hines@skadden.com

Counsel for Defendants
JPMorgan Chase Bank, National Association,
JPMorgan Chase & Company, Compensation &
Management Development Committee of the Board
of Directors for JPMorgan Chase & Company, the
Selection Committee, the Employee Plans
Investment Committee, J.P. Morgan Investment
Management Inc., Head of Human Resources for
JPMorgan Chase & Co., Chief Financial Officer for
JPMorgan Chase & Co., Benefits Director of
JPMorgan Chase & Co., Terry Belton, Bernadette
Branosky, Corrine Burger, Sally Durdan, Thelma
Ferguson, Tom Horne, Bei Ling, Pablo Sanchez,
Erik Umlauf, David Watson, Michael Weinbach,
Stephen B. Burke, Lee R. Raymond, William C.
Weldon, John C. Donnelly, Marianne Lake, and
John Does 1-20

**APPENDIX A**

**JPMORGAN CHASE (401k) SAVINGS PLAN INVESTMENT OPTIONS (2011 THROUGH 2016)[1]**

|     | Fund | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|-----|------|------|------|------|------|------|------|
| 1.  | Short Term Fixed Income Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2.  | Stable Value Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 3.  | Government Inflation-Protected Bond Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 4.  | Core Bond Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 5.  | Intermediate Bond Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 6.  | High Yield Bond Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 7.  | Large Cap Value Index Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 8.  | Large Cap Value Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 9.  | Growth and Income Fund | ✓ | ✓ | ✓ |   |   |   |
| 10. | S&P 500 Index Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 11. | Large Cap Growth Index Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 12. | Large Cap Growth Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 13. | Mid Cap Value Fund | ✓ | ✓ | ✓ | ✓ | ✓ |   |
| 14. | Mid Cap Growth Fund | ✓ | ✓ | ✓ | ✓ | ✓ |   |
| 15. | S&P MidCap 400 Index Fund |   |   |   |   | ✓ | ✓ |
| 16. | Small Cap Index Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 17. | Small Cap Core Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 18. | Small Cap Blend Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 19. | International Large Cap Value Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 20. | International Large Cap Index Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 21. | International Small Cap Fund/International Small Cap Index Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |

---

[1]     This table reflects the investment options offered in the JPMorgan Chase 401(k) Savings Plan from January 2011 through December 2016, based on the 401(k) Savings Plan Investment Fund Profiles.  (*See* 2011 Fund Profiles (Saltzstein Decl. Ex. 6); July 2011 Fund Profiles (Saltzstein Decl. Ex. 7); January 2012 Fund Profiles (Saltzstein Decl. Ex. 8); August 2012 Fund Profiles (Saltzstein Decl. Ex. 9); June 2013 Fund Profiles (Saltzstein Decl. Ex. 10); December 2013 Fund Profiles (Saltzstein Decl. Ex. 11); January 2015 Fund Profiles (Saltzstein Decl. Ex. 12); June 2016 Fund Profiles (Saltzstein Decl. Ex. 13).)

| | Fund | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|
| 22. | Moderately Conservative Lifestyle Portfolio | ✓ | | | | | |
| 23. | Moderately Aggressive Lifestyle Portfolio | ✓ | | | | | |
| 24. | Aggressive Lifestyle Portfolio | ✓ | | | | | |
| 25. | Emerging Market Equity Index Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 26. | Target Date Income Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 27. | Target Date 2015 Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 28. | Target Date 2020 Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 29. | Target Date 2025 Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 30. | Target Date 2030 Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 31. | Target Date 2035 Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 32. | Target Date 2040 Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 33. | Target Date 2045 Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 34. | Target Date 2050 Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 35. | Target Date 2055 Fund | | | | | ✓ | ✓ |
| 36. | JPMorgan Chase Common Stock Fund | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |

APPENDIX B

INVESTMENT OPTIONS CHALLENGED IN THE COMPLAINT BY COUNT[1]

**I.      INVESTMENT OPTIONS CHALLENGED IN COUNT I (ALLEGED BREACH OF FIDUCIARY DUTIES)**

|    | Investment Option | Manager | Alleged Expense Ratio |
|----|-------------------|---------|------------------------|
| 1. | Core Bond Fund | JPMorgan[2] | 35 to 40 basis points (Compl. ¶ 166) As of March 12, 2016, the annual expenses were reduced to zero.  (*Id.* ¶¶ 167-169.) |
| 2. | Small Cap Core Fund | JPMorgan | 80 to 83 basis points (Compl. ¶ 157 n.18) As of December 19, 2015, the annual expenses were reduced to zero.  (*Id.* ¶¶ 159-60.) |
| 3. | Growth and Income Fund | JPMorgan | 65 basis points (Compl. ¶ 140) |
| 4. | Mid Cap Growth Fund | JPMorgan | 93 basis points (Compl. ¶ 147) |
| 5. | Mid Cap Value Fund | Earnest Partners, LLC | 42 basis points (Compl. ¶ 147) |
| 6. | Large Cap Value Index Fund | BlackRock | 7 basis points (Compl. ¶ 176) |

---

[1]      This Exhibit identifies -- to the best of Defendants' ability based on the Complaint's allegations -- which of the Plan's investment options are challenged by each Count of the Complaint.  Count I appears to challenge twenty-one investment options as having purportedly "excessive" fees.  (*See* Compl. ¶¶ 139-87). Counts IV and V appear to challenge all but one of those same funds (*see id.* ¶¶ 253, 263 (challenging investment options affiliated with JPMorgan and BlackRock with purportedly "excessive" fees)), and Count III appears to challenge disclosures concerning the Plan generally and in connection with the Plan's Target Date funds.  Counts II, VI, and VII are derivative in nature and therefore do not purport to challenge specific investment options.

[2]      For the managers set forth in this Exhibit, *see* January 15, 2015 401(k) Savings Plan Investment Fund Profiles at 11-44 (Compl. Ex. 4).

|  | Investment Option | Manager | Alleged Expense Ratio |
|---|---|---|---|
| 7. | S&P 500 Index Fund | BlackRock | 4 basis points (Compl. ¶ 176) |
| 8. | Large Cap Growth Index Fund | BlackRock | 7 basis points (Compl. ¶ 176) |
| 9. | Small Cap Index Fund | BlackRock | 10 basis points (Compl. ¶ 176) |
| 10. | International Large Cap Index Fund | BlackRock | 10 basis points (Compl. ¶ 176) |
| 11. | International Small Cap Index Fund | BlackRock | 16 basis points (Compl. ¶ 176) |
| 12. | Emerging Market Equity Index Fund | BlackRock | 18 basis points (Compl. ¶ 176) |
| 13. | Target Date Income Fund | Asset allocation constructed and maintained by JPMorgan. Underlying funds managed by JPMorgan, BlackRock, and other third-party manager(s). | 11 basis points (Compl. ¶ 176) |
| 14. | Target Date 2020 Fund | *Id.* | 9 basis points (Compl. ¶ 176) |
| 15. | Target Date 2025 Fund | *Id.* | 9 basis points (Compl. ¶ 176) |
| 16. | Target Date 2030 Fund | *Id.* | 9 basis points (Compl. ¶ 176) |
| 17. | Target Date 2035 Fund | *Id.* | 9 basis points (Compl. ¶ 176) |
| 18. | Target Date 2040 Fund | *Id.* | 10 basis points (Compl. ¶ 176) |
| 19. | Target Date 2045 Fund | *Id.* | 10 basis points (Compl. ¶ 176) |
| 20. | Target Date 2050 Fund | *Id.* | 10 Basis points (Compl. ¶ 176) |

| | Investment Option | Manager | Alleged Expense Ratio |
|---|---|---|---|
| 21. | Target Date 2055 Fund | *Id.* | 10 basis points (Compl. ¶ 176) |

II.    **INVESTMENT OPTIONS CHALLENGED IN COUNT III (ALLEGED INADEQUATE DISCLOSURES)**

|    | **Investment Option** | **Manager** | **Alleged Expense Ratio** |
|----|-----------------------|-------------|---------------------------|
| 1. | Target Date Income Fund | Asset allocation constructed and maintained by JPMorgan. Underlying funds managed by JPMorgan, BlackRock, and other third-party manager(s). | 11 basis points (Compl. ¶ 176) |
| 2. | Target Date 2020 Fund | *Id.* | 9 basis points (Compl. ¶ 176) |
| 3. | Target Date 2025 Fund | *Id.* | 9 basis points (Compl. ¶ 176) |
| 4. | Target Date 2030 Fund | *Id.* | 9 basis points (Compl. ¶ 176) |
| 5. | Target Date 2035 Fund | *Id.* | 9 basis points (Compl. ¶ 176) |
| 6. | Target Date 2040 Fund | *Id.* | 10 basis points (Compl. ¶ 176) |
| 7. | Target Date 2045 Fund | *Id.* | 10 basis points (Compl. ¶ 176) |
| 8. | Target Date 2050 Fund | *Id.* | 10 Basis points (Compl. ¶ 176) |
| 9. | Target Date 2055 Fund | *Id.* | 10 basis points (Compl. ¶ 176) |

### III.    INVESTMENT OPTIONS CHALLENGED IN COUNTS IV AND V (ALLEGED PROHIBITED TRANSACTIONS)

|      | Investment Option | Manager | Alleged Expense Ratio |
|------|-------------------|---------|-----------------------|
| 1.   | Core Bond Fund | JPMorgan | 35 to 40 basis points (Compl. ¶ 166) As of March 12, 2016, the annual expenses were reduced to zero.  (*Id.* ¶¶ 167-169.) |
| 2.   | Small Cap Core Fund | JPMorgan | 80 to 83 basis points (Compl. ¶ 157 n.18) As of December 19, 2015, the annual expenses were reduced to zero.  (*Id.* ¶¶ 159-60.) |
| 3.   | Growth and Income Fund | JPMorgan | 65 basis points (Compl. ¶ 140) |
| 4.   | Mid Cap Growth Fund | JPMorgan | 93 basis points (Compl. ¶ 147) |
| 5.   | Large Cap Value Index Fund | BlackRock | 7 basis points (Compl. ¶ 176) |
| 6.   | S&P 500 Index Fund | BlackRock | 4 basis points (Compl. ¶ 176) |
| 7.   | Large Cap Growth Index Fund | BlackRock | 7 basis points (Compl. ¶ 176) |
| 8.   | Small Cap Index Fund | BlackRock | 10 basis points (Compl. ¶ 176) |
| 9.   | International Large Cap Index Fund | BlackRock | 10 basis points (Compl. ¶ 176) |
| 10.  | International Small Cap Index Fund | BlackRock | 16 basis points (Compl. ¶ 176) |
| 11.  | Emerging Market Equity Index Fund | BlackRock | 18 basis points (Compl. ¶ 176) |

|  | Investment Option | Manager | Alleged Expense Ratio |
|---|---|---|---|
| 12. | Target Date Income Fund | Asset allocation constructed and maintained by JPMorgan. Underlying funds managed by JPMorgan, BlackRock, and other third-party manager(s). | 11 basis points (Compl. ¶ 176) |
| 13. | Target Date 2020 Fund | *Id.* | 9 basis points (Compl. ¶ 176) |
| 14. | Target Date 2025 Fund | *Id.* | 9 basis points (Compl. ¶ 176) |
| 15. | Target Date 2030 Fund | *Id.* | 9 basis points (Compl. ¶ 176) |
| 16. | Target Date 2035 Fund | *Id.* | 9 basis points (Compl. ¶ 176) |
| 17. | Target Date 2040 Fund | *Id.* | 10 basis points (Compl. ¶ 176) |
| 18. | Target Date 2045 Fund | *Id.* | 10 basis points (Compl. ¶ 176) |
| 19. | Target Date 2050 Fund | *Id.* | 10 Basis points (Compl. ¶ 176) |
| 20. | Target Date 2055 Fund | *Id.* | 10 basis points (Compl. ¶ 176) |