## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Terre Beach, Antoinette Fondren, Ferdinand Orellana, William Stirsman, Sean Daly, and James C. Monaghan, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> JPMorgan Chase Bank, National Association, JPMorgan Chase & Company, Compensation & Management Development Committee of the Board of Directors for JPMorgan Chase & Company, the Selection Committee, the Employee Plans Investment Committee, J.P. Morgan Investment Management Inc., Head of Human Resources for JPMorgan Chase & Co., Chief Financial Officer for JPMorgan Chase & Co., Benefits Director of JPMorgan Chase & Co., Terry Belton, Bernadette Branosky, Corrine Burger, Sally Durdan, Thelma Ferguson, Tom Horne, Bei Ling, Pablo Sanchez, Erik Umlauf, David Watson, Michael Weinbach, Stephen B. Burke, Lee R. Raymond, William C. Weldon, John C. Donnelly, Marianne Lake, and John Does 1-20, <br><br> Defendants. | Case No.: 1:17-cv-00563-JMF |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
## MOTION FOR CLASS CERTIFICATION

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................. 4

        A.      Nature of the Plan ................................................................................. 4

        B.      Defendants Were Fiduciaries of the Plan............................................. 4

        C.      The Defendants' Self-Dealing and Breaches of Fiduciary Duties.......... 6

        D.      Named Plaintiffs ................................................................................ 11

III.    PLAINTIFFS ASSERT VIABLE CLAIMS.................................................... 11

IV.     ARGUMENT ................................................................................................... 12

        A.      Standard for Class Certification.......................................................... 12

        B.      The Proposed Class Satisfies the Requirements of Federal Rule of Civil Procedure
                23(a) .................................................................................................. 13

                1.      The Proposed Class Satisfies the "Numerosity" Requirement of 23(a)(1)13

                2.      The Case Satisfies the "Commonality" Requirement of 23(a)(2) ............ 14

                3.      Plaintiffs' Claims Satisfy the "Typicality" Requirement of 23(a)(3) ....... 17

                4.      Plaintiffs Will Fairly and Adequately Protect the Interest of the Class,
                        Satisfying Rule 23(a)(4)............................................................... 18

                5.      The Proposed Class is Adequately Defined and Clearly Ascertainable ... 19

        C.      The Class May be Properly Certified Under Rule 23(b)(1)................................. 20

                1.      Certification Under Rule 23(b)(1)(B) is Most Appropriate..................... 21

                2.      Certification is Also Appropriate under Section 23(b)(1)(A).................. 22

        D.      KTMC Will Adequately Represent the Class....................................... 23

V.      CONCLUSION.................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Amchem Prods. v. Windsor*,
521 U.S. 591, 615 (1997) .................................................................................................21, 22

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013) ....................................................................................................................12

*In re AOL ERISA Litig.*,
No. 02-cv-8853 (S.D.N.Y. Sept. 28, 2006) ...........................................................................24

*In re AOL Time Warner ERISA Litig.*,
2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006) .........................................................................3

*Banyai v. Mazur*,
205 F.R.D. 160 (S.D.N.Y.2002) ..............................................................................................22

*Board of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
269 F.R.D. 340 (S.D.N.Y. 2010) ....................................................................................... *passim*

*Brieger v. Tellabs, Inc.*,
No. 06-cv-01882 (N.D. Ill.) .....................................................................................................24

*In re Bristol-Myers Squibb Co. ERISA Litig.*,
No. 02-cv-10129 (LAP) (S.D.N.Y Oct. 12, 2005) .................................................................24

*In re Chesapeake Energy Corp. 2012 ERISA Class Litig.*,
286 F.R.D. 621 (W.D. Okla. 2012) ..........................................................................................24

*Clark v. Duke Univ.*,
2018 WL 1801946 (M.D.N.C. April 13, 2018) ............................................................ *passim*

*Coan v. Kaufman*,
457 F.3d 250 (2d Cir. 2006) .......................................................................................................3

*In re Colgate-Palmolive Co. ERISA Litig.*,
No. 07-cv-9515 (S.D.N.Y. Jul. 8, 2014) .................................................................................24

*Cryer v. Franklin Templeton Res., Inc.*,
2017 WL 4023149 (N.D. Cal. July 26, 2017) .....................................................................1, 14

*Douglin v. Greatbanc Trust Co., Inc.*,
115 F. Supp. 3d 404 (S.D.N.Y. 2015) ..................................................................................3, 13

ii

*Fuller et al. v. SunTrust Banks, Inc. et al.*,
  2018 U.S. Dist. LEXIS 113108 (N.D. Ga. June 27, 2018)
  ..........................................................................................................1, 16, 19, 23

*General Tel. Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982).............................................................................................12

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................3, 24

*Henderson, et al. v. Emory Univ.*............................................................................ *passim*

*In re Initial Pub. Offerings Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006)..................................................................................13

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
  2017 WL 1273963 (S.D.N.Y. Mar. 31, 2017) ................................................ *passim*

*Johnson v. Nextel Comms. Inc.*,
  780 F.3d 128 (2d Cir. 2015)................................................................................14

*Krueger v. Ameriprise Fin., Inc.*,
  304 F.R.D. 559 (D. Minn. 2014)..........................................................................23

*Leber, et al. v. Citigroup 401(k) Plan Inv. Comm.*,
  323 F.R.D. 145 (S.D.N.Y. 2017) ................................................................... *passim*

*Marshall, et al. v. Northrop Grumman Corp.*,
  2017 WL 6888281 (C.D. Cal. Nov. 2, 2017).........................................................1

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985)............................................................................................16

*Moreno et al. v. Deutsche Bank Ams. Holding Corp.*,
  2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017)................................................... *passim*

*In re Petrobras Sec. Litig.*,
  862 F.3d 250 (2d Cir. 2017)................................................................................19

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) .......................................................................3, 14

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015)................................................................................12

*Rozo v. Principal Life Ins. Co.*,
  2017 WL 2292834 (S.D. Iowa May 12, 2017) .......................................................1

iii

*Sacerdote v. New York Univ.*,
  2018 WL 840364 (S.D.N.Y. Feb. 13, 2018)..................................................*passim*

*In re Schering–Plough Corp. ERISA Litig.*,
  420 F.3d 231 (3d Cir.2005)...................................................................16

*Shanehchian v. Macy's, Inc.*,
  2011 WL 883659 (S.D. Ohio Mar. 10, 2011)..................................21, 23

*Sims v. BB & T Corp.*,
  2017 WL 3730552 (M.D.N.C. Aug. 28, 2017)........................1, 18, 19

*In re SunTrust Banks, Inc. ERISA Litig.*,
  2016 WL 4377131 (N.D. Ga. Aug. 17, 2016) .................................23

*Taylor v. United Tech. Corp.*,
  2008 WL 2333120 (D. Conn. June 3, 2008)....................................1

*Troudt v. Oracle Corp., et al.*,
  325 F.R.D. 373 (D. Colo. 2018) ....................................................1

*Tussey v. ABB, Inc.*,
  2007 WL 4289694 (W.D. Mo. Dec. 3, 2007)...................................16

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
  2017 WL 2655678 (C.D. Cal. June 15, 2017) .................................1

*Wildman v. Am. Century Servs., LLC*,
  2017 WL 6045487 (W.D. Mo. Dec. 6, 2017)......................1, 16, 19

*In re Wilmington Trust Corp.*,
  2013 WL 4757843 (D. Del. Sept. 4, 2013)......................................3

*In re WorldCom Inc. ERISA Litig.*,
  2004 WL 2211664 (S.D.N.Y. Oct. 4, 2004).....................................3

**Federal Statutes**

29 U.S.C. § 1104..................................................................14, 22

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ....................*passim*

ERISA § 406..............................................................................15

ERISA § 409..............................................................................16

ERISA § 502.........................................................2, 3, 12, 13, 16

**Rules**

FED. R. CIV. P. 23 ................................................................................................................ *passim*

Plaintiffs Antoinette Fondren, Ferdinand Orellana, William Stirsman, Sean Daly, and James C. Monaghan (together, "Plaintiffs")[1] respectfully submit this memorandum in support of their motion for class certification.

## I.   INTRODUCTION

Plaintiffs' motion for class certification follows this Court's denial of Defendants' motion to dismiss Plaintiffs' Second Amended Consolidated Complaint [Dkt. No. 55] ("Complaint" or "¶") on March 29, 2018.  *See* Dkt. No. 73.   Plaintiffs allege claims under ERISA[2] for breaches of fiduciary duty of the type routinely certified in this Circuit and courts throughout the country. *See, e.g.*, *Leber, et al. v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145 (S.D.N.Y. 2017) (certifying class in case alleging fiduciaries saddled retirement plan with investment options that charged excessive management fees); *Moreno et al. v. Deutsche Bank Ams. Holding Corp.,* 2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017) (same); *Taylor v. United Tech. Corp.*, 2008 WL 2333120 (D. Conn. June 3, 2008) (same).[3]  This case is no different.

---

[1] Plaintiff Terre Beach is not moving forward in the litigation as a class representative but will remain an absent class member.

[2] The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

[3] Many other recent decisions have certified classes in ERISA actions alleging breach of fiduciary duty due to inclusion of investment options in retirement plans charging excessive fees.  *See, e.g., Henderson, et al. v. Emory Univ.*, et al., No. 1:16-cv-02920 (N.D. Ga. Sept. 13, 2018) (certifying class under 23(b)(1)(A) and (B)); *Fuller et al. v. SunTrust Banks, Inc. et al.*, 2018 U.S. Dist. LEXIS 113108 (N.D. Ga. June 27, 2018) (same); *Clark v. Duke Univ.*, 2018 WL 1801946 (M.D.N.C. April 13, 2018) (same); *Sacerdote v. New York Univ.,* 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) (same); *Troudt v. Oracle Corp., et al.*, 325 F.R.D. 373 (D. Colo. 2018) (certifying class and subclasses pursuant to Rule 23(b)(1)(A)); *Wildman v. Am. Century Servs., LLC,* 2017 WL 6045487 (W.D. Mo. Dec. 6, 2017) (certifying class and subclasses pursuant to Rule 23(b)(1)); *Marshall, et al. v. Northrop Grumman Corp.*, 2017 WL 6888281 (C.D. Cal. Nov. 2, 2017) (certifying class and subclasses pursuant to Rules 23(a) and 23(b)(1)); *Sims v. BB & T Corp.*, 2017 WL 3730552 (M.D.N.C. Aug. 28, 2017) (certifying class and subclasses pursuant to Rules 23(a) and Rule 23(b)(1)(A)); *Cryer v. Franklin Templeton Res., Inc.*, 2017 WL 4023149 (N.D. Cal. July 26, 2017) (certifying class and subclasses pursuant to Rule 23(b)(1)); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2017 WL 2655678 (C.D. Cal. June 15, 2017) (certifying class and subclass pursuant to Rule 23(b)(1)); *Rozo v. Principal Life Ins. Co.*, 2017 WL 2292834 (S.D. Iowa May 12, 2017) (certifying class and subclasses pursuant to Rules 23(a) and Rule 23(b)(1)(A)).

Plaintiffs allege that Defendants – fiduciaries of the Plan[4] – breached the duties of prudence and loyalty they owed to the Plan, to Plaintiffs, and to Plan participants by, *inter alia*, their failure to prudently evaluate the Plan's investment portfolio with respect to expenses and performance.  These breaches resulted in Plan participants paying unnecessarily high fees which diminished their retirement savings and cost the Plan tens of millions of dollars.  Additionally, Plaintiffs allege that Defendants JPMorgan Chase & Company ("JPMorgan Chasse"), JPMorgan Chase Bank, NA. (the "Bank") and JPMorgan Investment Management Inc. ("JPMIM") violated ERISA's prohibited transaction rules, which bar fiduciaries and certain parties in interest such as JPMIM from receiving Plan assets for their own benefit.  To remedy these fiduciary breaches, Plaintiffs seek relief on behalf of the Plan, themselves, and a class of Plan participants pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).

Plaintiffs seek to certify the following class pursuant to FED. R. CIV. P. 23(a) and (b)(1):

> All persons, except Defendants and any other persons with responsibility for the Plan's investment menu, who were participants in or beneficiaries of the Plan, at any time between January 25, 2011 and the present (the "Class Period"), and whose individual accounts were invested in one or more of the subject funds.[5]

Additionally, Plaintiffs respectfully request that this Court appoint them as representatives for the certified Class, and appoint their counsel, Kessler Topaz Meltzer & Check, LLP ("KTMC") as Class Counsel.  The Court previously appointed KTMC to serve as Interim Class Counsel (*see* Dkt. No. 35).

---

[4] The "Plan" as used herein, refers to the JPMorgan Chase 401(k) Savings Plan.  All capitalized and undefined terms used herein shall have the same meanings ascribed to them in the Complaint.

[5] The subject funds refer to the following Plan investment options identified in the Complaint: JPM Growth and Income Fund; Earnest Partners Mid-Cap Value Fund; JPM Mid-Cap Growth Fund; JPM Small-Cap Core Fund; JPM Core Bond Fund; and the Target Date Income Funds.  ¶¶ 139-187.

As discussed below, Plaintiffs' ERISA claims satisfy the requisites of Rules 23(a) and (b): (1) there are several hundred thousand participants in the Plan, (2) Plaintiffs are typical of the participants, (3) common issues abound regarding the manner in which Defendants managed the Plan's assets, and (4) Plaintiffs have retained experienced class counsel and are adequate to represent the interests of the class.  Moreover, given the derivative nature of the claims on behalf of the Plan brought under ERISA § 502(a)(2), this case is distinctly well-suited for class treatment.  *See Douglin v. Greatbanc Trust Co., Inc.,* 115 F. Supp. 3d 404, 412 (S.D.N.Y. 2015) (finding an ERISA breach of fiduciary action to present a "paradigmatic" example of a Rule 23(b)(1) class).[6]  Notably, in addition to the decisions cited above, dozens of ERISA actions alleging similar breaches of fiduciary duty have been certified in this Circuit and throughout the country.[7]

---

[6] Plaintiffs seek class certification because it will likely afford Plan participants the best possible representation and the best protection of their interests (including via the Court's Rule 23(d) supervisory authority).  *See, e.g.*, *Coan v. Kaufman*, 457 F.3d 250, 261 (2d Cir. 2006) (finding plaintiff's failure to proceed under Rule 23 meant the case was "without the benefit of a procedural mechanism for the protection of the interested parties").  However, Plaintiffs do not concede that class certification is required for them to prosecute claims on behalf of the Plan and all participants. *See, e.g.*, *In re Wilmington Trust Corp.,* 2013 WL 4757843, at *3 (D. Del. Sept. 4, 2013) (granting plaintiffs' motion to proceed derivatively on behalf of all plan participants without class certification, because of the nature of such claims).

[7] *See In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2017 WL 1273963 (S.D.N.Y. Mar. 31, 2017) (certifying class and subclasses pursuant to Rules 23(a) and 23(b)(3)); *Board of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 345 (S.D.N.Y. 2010) (certifying under 23(b)(3)); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 78 (S.D.N.Y. 2006) (certifying under Rule 23(b)(1)); *In re AOL Time Warner ERISA Litig.*, 2006 WL 2789862, at *4 (S.D.N.Y. Sept. 27, 2006) (certifying under Rule 23(b)(1)(B)); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) (certifying under Rules 23(b)(1) and 23(b)(2)); *In re WorldCom Inc. ERISA Litig.*, 2004 WL 2211664, at *3 (S.D.N.Y. Oct. 4, 2004) (certifying under Rule 23(b)(1)(B)).  *See also* Exhibit 1 to the accompanying Declaration of Mark K. Gyandoh (the "Gyandoh Decl.") (a non-exhaustive list of 74 decisions certifying classes in ERISA breach of fiduciary duty actions like the instant action brought pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), including 25 decisions certifying classes in "excessive fee" suits).

## II.    STATEMENT OF FACTS

### A.    Nature of the Plan

As a "defined contribution" or "individual account" retirement plan, the Plan enables its participants to invest money contributed from their salary or employer matching funds in a number of investment options selected by the Employee Plans Investment Committee (the "EPIC").  *See* Gyandoh Decl. Exhibit 2 (JPMorgan Chase 401(k) Savings Plan Effective Jan. 1, 2016) at 25-26; Gyandoh Decl. Exhibit 3 (401(k) Savings Plan Summary Plan Description JPMorgan Chase Jan. 1, 2016) at 10-12.  *See also* Exhibit 4 (Excerpts of the Deposition Transcript of Bernadette Branosky, dated September 23, 2018) at 22:7-11 (testifying that the Plan is for the benefit of employees and former employees of JPMorgan Chase).  The Plan matches employee contributions up to 5% of eligible compensation for employees making less than $250,000 and Plan participants receive matching employer contributions that vest fully after three years of employment.  *See* Exhibit 3 at 11-12.  At the end of 2011, the first year of the Class Period, there were 301,076 participants in the Plan and a total of $13.953 billion in assets invested.  *See* Exhibit 5 (Excerpts from 2011 Form 5500 for the Plan) at 2, 49.  As of December 31, 2017, there were 266,439 participants in the Plan and a total of $27.656 billion in assets invested.  *See* Exhibit 6 (Excerpts from 2017 Form 5500 for the Plan) at 2, 54.  The same Plan procedures and guidelines applied to every participant in the Plan in the same way, such as the matching employer contribution formula.  *See* Exhibit 4 at 22:12 to 23:15.

### B.    Defendants Were Fiduciaries of the Plan[8]

The Bank is the Plan sponsor, as well as the Trustee of the Plan.  *See* Exhibit 4 at 21:14-17.  *See also* Exhibit 5 at 1; Exhibit 6 at 1.  Through its Board of Directors, the Bank also has the

---

[8] To the extent any Defendants deny being a fiduciary, this will be a question decided on a class-wide basis.

power to designate named fiduciaries to the Plan, such as the Plan Administrator and the members of the Selection Committee, who select those who will sit on the EPIC. *See* Exhibit 2 at 57. The Plan document also states that the Board of Directors for JPMorgan Chase, the Board of Directors for the Bank, and/or the members of the Compensation and Management Development Committee ("CMDC") are the bodies which have the power to designate the named fiduciaries. *Id*. at 6.

The CMDC has "delegated certain authorities with respect to the Plan such as [the] EPIC having responsibility for the funds under the plan, a Selection Committee naming the members of EPIC, and the director of human resources having the authority [to] amend the Plan." Exhibit 4 at 24:14-19. The CMDC also receives annual reports on the operation of the Plan from the benefits team, run by Bernadette Branosky, and from the Chief Investment Office. *Id*. at 25:2-20. The Chief Investment Office reports concern the fund lineup, changes thereto, and the overall asset allocation of the Plan's trust. *Id*. at 26:25 to 27:4. The current members of the CMDC are William Weldon, Stephen Burke, and Lee Raymond. *Id*. at 28:22-23.

The Selection Committee, the Plan Administrator, and the EPIC are named fiduciaries for the Plan. *Id*. at 31:9-23. The Plan Administrator since 2009 has been Bernadette Branosky. *Id*. 32:7-14. The Selection Committee is always comprised of the Director of Human Resources ("HR") and the Chief Financial Officer ("CFO"). *Id*. at 27:19-21. Currently, Marianne Lake is the CFO, and the current Director of HR is Robin Leopold. John C. Donnelly is the former CFO and has served on the Selection Committee during parts of the Class Period. *Id*. 33:9-20.

As noted above, members of the EPIC are selected by the Selection Committee. The EPIC has wide-ranging responsibility with respect to the Plan's investment options. Among other things, its responsibilities include:



*See* Exhibit 7 (2016 Investment Policy Statement) at 8.  In pertinent part, the EPIC is responsible for the selection and monitoring of the investment options available under the Plan, as well as their applicable fees. Exhibit 4 at 35:9-17.  The current members of the EPIC are Bernadette Branosky, Thelma Ferguson, David Watson, Greg Bishop, Tom Horne, Corrine Burger, Terry Belton, and Brandon Konigsberg.  *Id*. at 34:8-18.  The EPIC decides the menu of investment options by relying on the information and recommendations provided by the Retirement Plans Investment Group (the "RPIG") of the Chief Investment Office.  *Id*. at 36:14 to 37:3.  The RPIG is composed of Ameeta Gosain, Jon Fraade, Angela Howard, and Bob King.  *Id*. 38:6-12.

### C.    The Defendants' Self-Dealing and Breaches of Fiduciary Duties

The Plan plays a central role in the retirement planning for Plaintiffs and the other Class members, and thus the performance of their Plan investments will directly impact their financial security during retirement.  Exhibit 3 at 2.  Accordingly, the prudent selection and monitoring of investment options by the EPIC is crucial to fulfill the purpose of the Plan, which is ███

██████████████████████████████████████████████████████████████.

Exhibit 7 at 2.

Plaintiffs have alleged that Defendants have failed to select investment options with the prudence and loyalty required by ERISA.  ¶¶ 224-228.  Instead of offering the most prudent investment options for its participants, Defendants loaded the Plan with funds affiliated with JPMorgan or its close business partner, BlackRock.  In fact, over the course of the Class Period, approximately 50 percent of all Plan investment options were proprietary investment vehicles managed by the Bank, or another subsidiary of JPMorgan Chase, and over 72 percent of the options were managed by a JPMorgan Chase affiliate or by BlackRock.  *See* Exhibit 8 (401(k) Savings Plan Investment Fund Profiles circa 2011); Exhibit 9 (401(k) Savings Plan Investment Fund Profiles Effective July 1, 2011); Exhibit 10 (401(k) Savings Plan Investment Fund Profiles Effective June 1, 2016); Exhibit 11 (Annual Fee Disclosure Notice January 2013); Exhibit 12 (Annual Fee Disclosure Notice November 2013); Exhibit 13 (Fee Disclosure Notice July 2014); Exhibit 14 (Fee Disclosure Notice November 2014); Exhibit 15 (Fee Disclosure Notice November 2015); Exhibit 16 (Fee Disclosure Notice November 2016).

At least two JPMorgan Chase affiliates managed investment options selected for the Plan during the Class Period: JPMIM and the Bank.  *See* Exhibits 11-16.  For example, the Core Bond Fund, the Mid Cap Growth Fund, and the Small Cap Core Fund were each managed by JPMIM, while the Target Date Funds are managed by the Bank.  *Id.*[9]  Because JPMorgan Chase and its affiliates receive management fees from these investments, they are incentivized to charge higher fees and retain these investment options instead of critically reviewing the Plan's portfolio to ensure the costs associated with its investment options are reasonable.  *See, e.g.*, Exhibit 4 at

---

[9] *But see also* Exhibit 4 at 42:19 to 43:16 (testimony which identifies JPMIM as the manager of the "glide path," or asset allocation mix tied to a particular maturity date, for the Target Date Funds).

57:7-21, 61:9 to 62:10, 62:19 to 63:15, 64:8 to 65:22, 72:10 to 73:19 (testimony that JPMIM as well as another JPMorgan affiliate, JPMorgan Retirement Plan Services, received fees that were not remitted to the Plan or its participants until fund changes in 2016).  In fact, the Core Bond, Mid Cap Growth and Small Cap Core Funds had three of the six highest expense ratios of all investment options in the Plan until the Plan made changes in the fourth quarter of 2015.  *See* Exhibits 11-16.

Not coincidentally, in 2015, the SEC investigated JPMorgan Chase for, among other things, failing to disclose the Bank's preference for investing client money in proprietary assets rather than recommending the best product for its clients' needs.  ¶ 130.  Some of the breaches of fiduciary duty committed were similar to those alleged in this action.  For instance:

> From 2008 to 2013, a minority of the Proprietary Mutual Funds used in CSP [Chase Strategic Portfolio] offered both Select and Institutional classes.  In certain of these funds, JPMS [J.P. Morgan Securities LLC] invested CSP client assets in the Select share class even though the lower cost Institutional class was available.  The Select share class typically had a shareholder servicing fee that was 15 basis points higher than the Institutional share class offered by those Proprietary Mutual Funds.  As a result, JPMAM [JPMorgan Asset Management] earned higher fees when JPMS invested CSP client assets in the Select share class.

*See* Cease and Desist Order[10] at 6.  In December 2015, the SEC announced that both the Bank and an affiliate, JPMS had agreed to pay $267 million collectively and admit wrongdoing in failing to disclose conflicts of interest in proprietary investments to clients.  The Bank also agreed to pay an additional $40 million penalty to the U.S. Commodity Futures Trading Commission related to those same activities.  ¶ 131.[11]  Concomitant with the SEC investigation

---

[10] The "Order Instituting Administrative and Cease-and-Desist Proceedings, Pursuant to Section 8A of the Securities Act of 1933, Section 15(b) of the Securities Exchange Act of 1934, and Sections 203(e) and 203(k) of the Investment Advisers Act of 1940, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order" may be accessed at https://www.sec.gov/litigation/admin/2015/33-9992.pdf.

[11] *See also* https://www.sec.gov/news/pressrelease/2015-283.html (press release announcing agreement with the SEC).

and announcement of its findings, JPMorgan Chase belatedly undertook a comprehensive review of the Bank's proprietary investment options and BlackRock managed options in the Plan.

JPMorgan Chase and BlackRock have a close and longstanding business relationship consisting of, among other things, JPMorgan Chase's management of over $1 trillion of BlackRock's assets.[12]   Plaintiffs allege that this BlackRock and JPMorgan Chase partnership over a range of businesses modalities and financial products presented a conflict-of-interest, and prevented Defendants from acting prudently and without bias with respect to BlackRock managed investment options, when other non-conflicted and better performing investment alternatives were available that would have better served Plan participants. *See, e.g.*, ¶¶ 122, 129.

In addition to self-dealing, Plaintiffs allege that JPMorgan Chase breached its fiduciary duties by imprudently offering investment options, including actively managed mutual funds, which were unduly expensive given the bargaining power commensurate with the Plan's massive assets, now valued at over $27 billion and never lower than $13 billion during the Class Period. *See* Exhibit 5 at 49; Exhibit 6 at 54.   Indeed, due to the "jumbo" size of the Plan, it was capable of accessing a variety of investment products, including passively managed collective trusts, commingled accounts, and separate accounts, and securing the lowest fees on the market while also being provided the highest level of service.  ¶ 112; *see also* Exhibit 4 at 42:5-8 and 86:25-88:4 (testimony that the EPIC was aware of the existence of commingled funds and separate accounts during the entirety of the Class Period).  Defendants failed to do so by not adequately monitoring the prudence of such high fees until too late.

---

[12] Discovery regarding JPMorgan Chase's business relationship with BlackRock is ongoing.

A series of changes were made to both the proprietary and BlackRock Plan investment options beginning in the fourth quarter of 2015. *See* Exhibit 17 (Fund Change Bulletin September 2015); Exhibit 18 (Fund Change Bulletin February 2016); Exhibit 19 (May 26, 2016 Message from JPMC Human Resources). *See also* Exhibit 16, fn. 12. The result was that fees were reduced significantly for the Bank, JPMIM and BlackRock managed investment options in the Plan's portfolio.[13] *See id.* As each one of these investment options was managed either by the Bank, an affiliate, or its business partner, BlackRock, the management fee reductions which began on November 6, 2015 and ended on April 1, 2016 were within the capabilities of Defendants to undertake prior to November 6, 2015.[14] ¶ 136.

Failure to make these changes before the end of 2015 is inexplicable when doing so earlier was possible and would have saved the Plan tens of millions of dollars. In the June 18, 2015 EPIC meeting, ████████████████████████████████████████

████████████████████████████████████████████████████████████

████    *See* Exhibit 21 at 6. It also stated ████████████████████████

████████████████████████████████████████████████████████████

Exhibit 22 (September 22, 2015 EPIC meeting) at 4.

---

[13] First, in November 2015, the Mid Cap Value and Mid Cap Growth Funds, both JPMorgan funds, were removed and replaced by a StateStreet Mid Cap Index Fund, resulting in a substantial fee decrease for those in Mid Cap investments. Second, the Small Cap Core Fund, a JPMorgan fund, was changed from a mutual fund format to a separate account format, reducing the fee from 82 basis points to 0 basis points in December 2015. Third, the Core Bond Fund, a JPMorgan fund, was changed from a mutual fund format to a commingled account format, reducing the fee from 36 basis points to 0 basis points in March 2016. Fourth, all of the JPMorgan Target Date funds, which include BlackRock Index Funds as investments, and all of the separate BlackRock funds, had their investment management fees reduced significantly in April 2016.

[14] Similarly, the lack of a comprehensive, unbiased review of the Plan investments led to the continued inclusion of the Growth and Income Fund until June 14, 2013, a mutual fund option managed by JPMIM. *See* Exhibit 20 (Financially Fit Bulletin May 2013).

### D.     Named Plaintiffs

Each of the named plaintiffs was a participant in the Plan during the Class Period and was invested in the options currently at issue.  Plaintiff Antoinette Fondren was invested in the Target Date 2025 Fund and remains a participant in the Plan.  *See* Exhibit 23 (Declaration of Plaintiff Antoinette Fondren).  Plaintiff Ferdinand Orellana was a participant in the Plan until August 2016 and was invested in the Core Bond Fund, the Mid Cap Growth Fund, the Small Cap Core Fund, and the Target Date 2045 Fund.  *See* Exhibit 24 (Declaration of Plaintiff Ferdinand Orellana).  Plaintiff William Stirsman was a participant in the Plan during the Class Period until 2014, during which time he was invested in the Core Bond Fund.  *See* Exhibit 25 (Declaration of Plaintiff William Stirsman).  Plaintiff Sean Daly, also a participant in the Plan, was invested in the Large Cap Growth Index Fund, the Large Cap Value Index Fund, the S&P 500 Index Fund, and the Target Date 2050 Fund.  *See* Exhibit 26 (Declaration of Plaintiff Sean Daly).  Plaintiff James Monaghan is a current participant in the Plan and was invested in the Large Cap Growth Index Fund.  *See* Exhibit 27 (Declaration of Plaintiff James C. Monaghan).

## III.    PLAINTIFFS ASSERT VIABLE CLAIMS

In accordance with the Court's March 29, 2018 Order, Plaintiffs proceed with the following claims: (1) Count I, failure to prudently and loyally manage the Plan's assets because during the Class Period, "Defendants knew or should have known that, as described herein, the proprietary mutual funds and/or the affiliated funds were not suitable and appropriate investments for the [Chase] Plan" given their "unduly excessive fees and/or including due to conflicts of interest," ¶ 224; (2) Count II, failure to adequately monitor other fiduciaries, ¶¶ 230-236; (3) Count IV, engaging in prohibited transactions with a party in interest by "authorizing or causing the [Chase] Plan to invest in unduly expensive investment options managed by JPMorgan Chase's affiliates…and pay, directly or indirectly, unduly excessive investment

management and other fees in connection therewith….” ¶ 253; (4) Count V, engaging in prohibited transactions with a fiduciary, ¶¶ 256-267, (5) Count VI, alleging knowing participation in fiduciary breaches, ¶¶ 268-281; and (6) Count VII, brought in the alternative, alleging that Defendants JPMorgan Chase, the Bank, and JPMIM through their actual or constructive knowledge of the breaches of fiduciary duties in Counts I, III, and IV, are liable as non-fiduciaries to disgorge the ill-gotten gains and/or provide other equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), ¶¶ 282-290.[15]

## IV.    ARGUMENT

### A.    Standard for Class Certification

A proposed class must meet the four requirements of FED. R. CIV. P. 23(a) and one of the requirements of Rule 23(b). *Roach v. T.L. Cannon Corp*., 778 F.3d 401, 405 (2d Cir. 2015); *Sacerdote*, 2018 WL 840364 at * 2; *Moreno*, 2017 WL 3868803 at *3-4.  The Supreme Court has repeatedly acknowledged the virtues of the class action device and the utility of FED. R. CIV. P. 23 (“Rule 23”) in bringing private rights of action.  *See, e.g.*, *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (“[T]he class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.”).  Consistent with this public policy, courts have adopted a liberal approach to class certification.  *See Board of Trustees of the AFTRA Ret. Fund*, 269 F.R.D. at 345 (“Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility.”); *see also Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013) (“[a]lthough we have cautioned that a court’s class-certification analysis must be ‘rigorous’… Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.”) (citations omitted).

---

[15] This Court dismissed Plaintiffs’ disclosure claim in Count III.

Courts in similar ERISA fiduciary breach cases have overwhelmingly granted certification under Rule 23(b)(1), because the distinctive 'representative capacity' aspect of ERISA participant and beneficiary suits brought under ERISA § 502(a)(2) makes litigation of this kind a "paradigmatic" example of a Rule 23(b)(1) class. *Douglin,* 115 F. Supp. 3d at 412. The same result should apply here.

**B.     The Proposed Class Satisfies the Requirements of Federal Rule of Civil Procedure 23(a)**

Plaintiffs have established each element of Rule 23(a) by a preponderance of the evidence.  To be certified, a class must first satisfy the four basic prerequisites of Rule 23(a):  (1) numerosity, (2) commonality, (3) typicality and (4) adequacy of representation.  FED. R. CIV. P. 23(a); *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).  "Although plaintiffs have the burden of demonstrating compliance with Rule 23, doubts concerning the propriety of class certification should be resolved in favor of class certification."  *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2017 WL 1273963 at *5.

**1.     The Proposed Class Satisfies the "Numerosity" Requirement of 23(a)(1)**

Rule 23(a)(1) calls for certification if "the class is so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1).  "As a general rule, courts [in the Second Circuit] find that the numerosity requirement is satisfied if a proposed class comprises 40 or more members."  *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2017 WL 1273963, at *7; *Moreno*, 2017 WL 3868803, at *4; *Leber,* 323 F.R.D. at 159; *Sacerdote*, 2018 WL 840364, at *3.  Here, evidence adduced in discovery demonstrates there were between 266,439 and 301,076 participants in the Plan during the Class Period. The proposed class clearly meets the numerosity requirement.

13

## 2.    The Case Satisfies the "Commonality" Requirement of 23(a)(2)

"[A] common issue of law or fact that is sufficient to satisfy Rule 23(a)(2) is one that is 'capable of classwide resolution … mean[ing] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2017 WL 1273963, at *7 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)); *Moreno*, 2017 WL 3868803, at * 4; *Leber,* 323 F.R.D. at 159.[16]  "Typically, the question of defendants' liability for ERISA violations is common to all class members because a breach of fiduciary duty affects all participants and beneficiaries." *Moreno*, 2017 WL 3868803, at *4 (quoting *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2017 WL 1273963 at *7); *see also Sacerdote*, 2018 WL 840364, at *3 ("in general, the question of defendants' liability for ERISA violations is common to all class members because a breach of fiduciary duty affects all participants and beneficiaries") (quoting *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 452); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 74 (S.D.N.Y. 2006) (holding same).[17]

Here, Defendants owed duties to the Plan, and Plaintiffs' claims all concern Plan-level decisions regarding administrative fees and investment options. *See* 29 U.S.C. §1104(a)(1)("a fiduciary shall discharge his duties with respect to a plan").  The same menu of investment options, the same fee structures, and the same fiduciary actions and omissions applied to *all*

---

[16] *See also Johnson v. Nextel Comms. Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (same).

[17] *See also Henderson*, No. 1:16-cv-02920, slip op. at 11 (noting commonality is a "low hurdle and "even a single common question will do.") (Citations omitted); *Clark*, 2018 WL 1801946 at * 6 (M.D.N.C. April 13, 2018)("In this case there are numerous common questions central to validity of each claim."); *Cryer*, 2017 WL 4023149 at * 5 ("Plaintiff identifies multiple common questions of law and fact. All proposed members of the class participated in the [p]lan. Their participation in the [p]lan is governed by the same written document and they were provided the same investment options. The [p]lan's fiduciaries' alleged conflicts of interest affected the options offered under the plan and the allegedly eHighxcessive fees.  They owed the same duty to the [p]lan and recovery is on behalf of the [p]lan as a whole.")

participants. *See supra* Section II.  Therefore, there are numerous common questions upon which all class members' claims depend, including: (1) whether Defendants are fiduciaries; (2) whether Defendants breached their fiduciary duties in each respect alleged by Plaintiffs; (3) Whether certain of the Defendants engaged in prohibited transactions under ERISA § 406; (4) whether the Plan suffered resulting losses; (5) how to calculate the Plan's losses; and (6) what equitable relief should be imposed to remedy such breaches and to prevent future ERISA violations.

These "core questions … are common to all participants." *Sacerdote*, 2018 WL 2018, at *3.  Moreover, the evidence needed to answer these contentions involve Plan-level facts, and thus is the same for all the Plan's participants.  *Id.*  If the evidence shows that Defendants "failed to monitor [plan] investments" or fees, "it would not only generate answers applicable to all class members, but would also address the heart of the claims at issue in this litigation." *Leber*, 323 F.R.D. at 160; *see also Sacerdote*, 2018 WL 840364, at *3 ("the discovery at issue in this case will 'generate common answers apt to drive the resolution of the litigation'") (quoting *Wal-Mart*, 564 U.S. at 350); *Moreno*, 2017 WL 3868803, at *5 ("Plaintiffs raise numerous questions that are capable of classwide resolution, such as whether each [d]efendant was a fiduciary; whether [d]efendants' process for assembling and monitoring the [p]lan's menu of investment options, including the proprietary funds, was tainted by a conflict of interest or imprudence….").

These answers do not depend on particular circumstances of any one participant. That is because, in ERISA fiduciary breach actions, Defendants' "centralized administration of [the Plans] is common to all class members," *Sacerdote*, 2018 WL 840364, at *3, and because "[l]iability is determined based on Defendants' not Plaintiffs' decisions." *Moreno*, 2017 WL 3868803, at *5 (citation omitted). Thus, as numerous federal courts in similar cases, in addition to *Sacerdote*, *Moreno*, and *Leber*, have recognized, the questions of law and fact in this action

are common to each class member.[18]

  The damages sought on behalf of the Plan further confirms that commonality is satisfied. In an ERISA case such as this, the proper measure of damages for any given participant derives from the loss to the Plan as a whole and is calculated as the difference between what Plan participants received and what the Plan participants would have received if the Plan assets had been invested prudently. *See* Preliminary Expert Report of Cynthia Jones ("Jones Report"). The loss to the Plan as a whole is not calculated on an individual plan participant basis. *Id.*; *accord*, *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) ("[R]ecovery for a violation of [ERISA] § 409 inures to the benefit of the plan as a whole. . . . [T]he potential personal liability of the fiduciary is 'to make good *to such plan* any losses *to the plan* . . . .'") (quoting 29 U.S.C. § 1109); *Tussey v. ABB, Inc.*, 2007 WL 4289694, at *7 (W.D. Mo. Dec. 3, 2007) ("Because this lawsuit is brought on behalf of the Plan, individual participants' varying damages are irrelevant."). Rather, the trier of fact looks to the prudent investment alternatives the Plan should have offered during the Class Period to determine what the Plan would have earned but for the Defendants' breaches of fiduciary duty and then the loss is allocated formulaically to participants based upon the difference in administration and management fees. *See In re Schering–Plough Corp. ERISA Litig.*, 420 F.3d 231, 235 (3d Cir.2005)) (reasoning in § 502(a)(2) claim alleging fiduciary misconduct that "[a]ny recovery of lost benefits will go to the Plan and will be held, allocated, and ultimately distributed in accordance with the requirements of the Plan and ERISA").

  In sum, because Defendants owed identical fiduciary duties to all members of the class and made decisions at the Plan level as to the Plan, commonality is satisfied.

---

[18] *See, e.g.*, *Henderson,* slip op. at 13 (finding commonality satisfied); *Fuller et al.* 2018 U.S. Dist. LEXIS 113108 at *9 (same); *Clark*, 2018 WL 1801946 at * 6 (same); *Wildman*, 2017 WL 6045487 at *4 (same).

###### 3.      Plaintiffs' Claims Satisfy the "Typicality" Requirement of 23(a)(3)

"Typicality is intended to 'ensure that maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Moreno*, 2017 WL 3868803, at *7 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). A plaintiff meets this requirement where "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *Id.* (citations omitted).

Here, Plaintiffs' claims are typical of those of the proposed class. As set forth above, Plaintiffs and all other class members have the same legal claim for the same breaches of fiduciary duty and violations of ERISA's prohibited transactions by Defendants. As the *Moreno* court found:

> Plaintiffs are five current or former participants in the Plan who held investments in the Plan at any time on or after December 21, 2009. Their claims arise from the same course of events—their participation in the Plan. They make similar legal arguments to prove liability—that Defendants mismanaged the Plan in violation of ERISA and continue to do so today. Each Plaintiff has done one or more of the following: (1) invested in at least one proprietary mutual fund; … and (3) invested in a proprietary or non-proprietary fund for which cheaper alternatives were allegedly available. This is sufficient to show typicality.

*Moreno*, 2017 WL 3868803 at *7; *see also Leber*, 323 F.R.D. at 163 ("in this case, the funds that plaintiffs seek to represent are all proprietary funds and each of the claims concerns allegedly disloyal and imprudent conduct that impacted them in the same manner. In these circumstances, the Court concludes that plaintiffs' claims have the requisite level of congruence with those of the putative class members despite the fact that all class members did not all invest in the same funds."); *Sacerdote*, 2018 WL 840364, at *6 ("Typicality is also satisfied, as the "claims of [the]

17

representative plaintiffs arise from [the] same course of conduct that gives rise to claims of the other class members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives.") (citation omitted).[19]

    **4.**    **Plaintiffs Will Fairly and Adequately Protect the Interest of the Class, Satisfying Rule 23(a)(4)**

"The focus of the adequacy inquiry is on determining whether there are 'conflicts of interest between named parties and the class they seek to represent.'" *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2017 WL 1273963, at *9 (citations omitted). "In general, class representatives must not have interests that conflict with the interests of other class members, and class representatives and their attorneys must be sufficiently interested in prosecuting—and able to prosecute—the litigation." *Id.*; *see also Moreno,* 2017 WL 3868803, at *7.

Plaintiffs have no interests antagonistic with each other, the Class, or any segment of the Class. To the contrary, Plaintiffs' interests are identical to those of the Class. Plaintiffs, like all Class members, were participants during the Class Period, and they seek Plan-wide relief for Defendants' identical breaches of fiduciary duty that equally affected similarly situated participants, as discussed above. Plaintiffs must prove the same wrongdoing by Defendants as any and every absent Class members would need to show to establish Defendants' liability. Moreover, each Plaintiff has confirmed that he or she is ready, willing, and able to fulfill the

---

[19] *See also Henderson*, slip op. at 14 ("The class members' claims are based on the same events and legal theories – breach of fiduciary duty in managing and monitoring the [p]lans. Proof of the defendants' alleged misconduct and the alleged harm would be the same for each class member rather than turning on individual circumstances."); *Sims*, 2017 WL 3730552, at * 4 ("In this case, each named plaintiff's claim and each class member's claim is based on the same events and legal theory—a breach of fiduciary duty stemming from the defendants' alleged disloyal and imprudent process for selecting, administering, and monitoring the [p]lan's investments. The same is true of the remedial theory—enforcement of the defendants' obligations under section 1109(a) through section 1132(a)(2)—which is identical for the named plaintiffs and the class members. Therefore, the typicality requirements of Rule 23(a)(3) are satisfied.") (citations omitted).

duties required of a class representative.  Each Plaintiff has submitted a declaration attesting to

his or her efforts to date and confirming their desire to serve as a representative of the Class.  *See*

Exhibits 23 through 27.  As noted therein, Plaintiffs understand their responsibilities and duties

as class representatives and will take all steps necessary to protect the interests of the proposed

Class.  Courts have relied upon similar declarations as evidence of the named plaintiffs'

adequacy.  *See, e.g.*, *Henderson,* slip op. at 18 (finding adequacy prong met where, among other

things, plaintiffs "submitted affidavits attesting to their participation in [the] action and vowing

to vigorously pursue the case."); *Fuller*, 2018 U.S. Dist. LEXIS 113108 at *17  ("Although the

affidavits are pro forma documents prepared by counsel, each Plaintiff signed at the bottom

acknowledging that the affidavit contained their true contentions"); *Moreno*, 2017 WL 3868803,

at * 7 ("Each Plaintiff has filed a declaration attesting that they have reviewed the allegations of

the [c]omplaint, are aware that the suit concerns allegations that [d]efendants' investment

offerings were improper …."); *Sims*, 2017 WL 3730552, at *5 (finding adequacy prong met

where "[t]he Plaintiffs have declared that they will fairly and adequately represent the interests of

the class, Docs. 147-1 to 147-12").  Further, in directly analogous actions, courts find plaintiffs,

similar to Plaintiffs here, to be adequate.[20]  In sum, Plaintiffs satisfy Rule 23(a)(4)'s adequacy

requirement.

### 5.    The Proposed Class is Adequately Defined and Clearly Ascertainable

Implicit in Rule 23 is a "modest threshold requirement" of ascertainability, which asks if

the "proposed class is defined using objective criteria that establish a membership with definite

boundaries."  *In re Petrobras Sec. Litig.*, 862 F.3d 250, 269 (2d Cir. 2017).  To satisfy this

requirement, the "class description must be sufficiently definite such that it is administratively

---

[20] *See, e.g.*, *Clark*, 2018 WL 1801946 at *9 (finding plaintiffs met the adequacy requirement); *Wildman*,
2017 WL 6045487, at *5) (same).

feasible for a court to determine, by reference to objective criteria, whether a particular individual is a member of the class." *In re J.P. Morgan Stable Value Fund ERISA Litig*., 2017 WL 1273963, at *12; *see also AFTRA*, 269 F.R.D. at 345-46.  Ascertainability is easily met here.

The proposed class is defined using objective criteria: status as a participant or beneficiary of the Plan during the proposed class period and invested in one or more of the subject funds.  As noted above in the discussion of Rule 23(a)(1)'s numerosity requirement, the Plan's filings specify the number of participants in the Plan during the Plan year.  That information, together with the list of all Plan participants that the Plan's recordkeeper, Empower, maintains, readily satisfies the identifiability requirement.  *See* Exhibit 4 at 49:10-21.  One court recently noted that a similarly defined class – "all participants and beneficiaries of the [Plans] from August 11, 2010 through the date of judgment, excluding [d]efendants" – is criteria that is "objective and the identification of its members is administratively feasible via the [p]lans' participant account records." *Henderson,* slip op. at 9-10; *see also Clark*, 2018 WL 1801946, at *2 ("The proposed class members can be easily identified in participant account records possessed by the defendants or the [p]lan's recordkeepers.").  Accordingly, the proposed class satisfies the threshold ascertainability requirement implicit in Rule 23(a).

### C.    The Class May be Properly Certified Under Rule 23(b)(1)

Once "the requirements of Rule 23(a) are met, courts next determine whether the proposed class fits into one of the categories of class actions described in Rule 23(b)." *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2017 WL 1273963 at *5.  Here, the proposed Class may be certified under Rule 23(b)(1)(A) and/or (B), as numerous courts have done in similar cases. *See supra* at n.3; *see also* Exhibit 1.[21]

---

[21] Plaintiffs only address class certification under Rule 23(b)(1) because it is clear that certification is proper under Rule 23(b)(1), and Rule 23(b)(3) is intended to address "situations in which class action

### 1.    Certification Under Rule 23(b)(1)(B) is Most Appropriate

Rule 23(b)(1)(B) asks whether one participant's action over these claims "as a practical matter, would be dispositive of the interests" of the other participants' actions over the same claims because they concern the same actions, damages, and fiduciary duties owed to the Plan. FED. R. CIV. P. 23(b)(1)(B).  Due to the trust-like nature of a defined contribution plan, with fiduciary duties owed to the plan and not to individual participants, many courts (including several in this Circuit) have found similar claims to be classic Rule 23(b)(1)(B) class actions. *See* Exhibit 1 to Gyandoh Decl.

Indeed, the Advisory Committee Notes to Rule 23 explicitly instruct that certification under Rule 23(b)(1)(B) is appropriate in "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust."  FED. R. CIV. P. 23(b)(1)(B) Advisory Committee's Note (1966 Amendment)). "This case falls squarely within the meaning articulated by the Advisory Committee as Plaintiffs allege breaches of fiduciary duties affecting the Plan[] and the thousands of participants in the Plan[]." *Shanehchian v. Macy's, Inc.*, 2011 WL 883659, at *10 (S.D. Ohio Mar. 10, 2011).

Accordingly, class certification should be granted under Rule 23(b)(1)(B), consistent with the Advisory Committee Note and the overwhelming weight of case law. *See Leber,* 323 F.R.D. at 165 ("Most courts that have certified ERISA class actions alleging breaches of fiduciary duties have done so under Rule 23(b)(1)(B)); *Moreno*, 2017 WL 3868803, at * 8 ("Several courts in

---

treatment is not as clearly called for as it is in Rule 23(b)(1) …" *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997).  However, in the event that further analysis were required, the proposed class also satisfies the requirements of Rule 23(b)(3) because the common questions in this case "predominate" and class treatment is "superior." *See* FED. R. CIV. P. 23(b)(3).

this Circuit have certified a class of plan participants alleging ERISA claims under Rule 23(b)(1)(B)…"); *Banyai v. Mazur*, 205 F.R.D. 160, 165 (S.D.N.Y.2002) ("Because plaintiffs, as a Fund participant and a Fund beneficiary, seek to remedy an alleged breach of fiduciary duty, and because any recovery here would benefit the Fund as a whole, the Court finds that there is a risk that separate prosecutions by individual Fund participants or beneficiaries would be dispositive of the interests of other members not parties to those prosecutions.").

Even if absent participants were not barred by *res judicata* from litigating the same claims on behalf of the Plan, as a "practical matter" a prior adjudication of whether the fiduciaries breached their duties to the Plan would influence a subsequent court's adjudication of the same claims.

### 2.      Certification is Also Appropriate under Section 23(b)(1)(A)

Rule 23(b)(1)(A) "takes in cases where the party is obligated by law to treat the members of the class alike … or where the [defendant] must treat all alike as a matter of practical necessity." *Amchem*, 521 U.S. at 614 (citation omitted).  This is precisely such a case because the fiduciary duties imposed by ERISA are "duties with respect to a plan" that protect the "interest of the participants and beneficiaries" collectively. *See* 29 U.S.C. § 1104.  In discharging their duties to the Plan, Defendants, as fiduciaries, were obligated to treat all participants (and all class members) alike.

Allowing several hundred thousand individual class members to pursue this action on behalf of the Plan could result in varying adjudications over whether Defendants breached their duties as alleged, whether Defendants are liable for these actions, and how to measure losses to the Plan.  *Henderson*, slip op. at 27 ("[A]djudicating these claims among the some 45,000 participants individually runs the risk of inconsistent results that could place 'incompatiable

standards of conduct' on the defendants."); *Sacerdote*, 2018 WL 840364, at *6 ("Allowing 20,000 individual cases could result in varying adjudications over defendant's alleged breach and how to measure the damages."); *Shanehchian*, 2011 WL 883659, at *9 ("If liability is found in one court but not in another, Defendants would be left in limbo, having been vindicated with respect to their duties to the Plans in one court but subject to judgment that would vitiate that vindication in another, thus making compliance impossible."); *see also Fuller*, 2018 U.S. Dist. LEXIS 113108, at 20   (finding certification under Rule 23(1)(A) appropriate); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 577 (D. Minn. 2014) (same).

### D.   KTMC Will Adequately Represent the Class

The inquiry into the adequacy of class counsel is now decoupled from the Rule 23(a)(4) inquiry into the adequacy of the class representatives.   Rule 23(g)(1)(A) focuses upon the qualifications of plaintiffs' counsel, and instructs the Court to consider, *inter alia*:  (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.   FED. R. CIV. P. 23(g)(1)(A).   Each of these considerations demonstrates KTMC's adequacy.   Indeed, KTMC has been appointed to serve as class counsel (or interim class counsel) in numerous ERISA class actions and other complex litigation.   *See, e.g, In re SunTrust Banks, Inc. ERISA Litig.*, 2016 WL 4377131, at *8 (N.D. Ga. Aug. 17, 2016) (appointing KTMC as Co-lead Class Counsel); *Board of Trustees of the AFTRA Ret. Fund*, 269 F.R.D. at 355 (appointing KTMC as class counsel).[22]   In appointing KTMC interim class counsel in an analogous ERISA breach of fiduciary action, one court stated:

---

[22] As noted *supra*, this Court has already appointed KTMC as Interim Lead Class Counsel.  *See* Dkt. No. 35.

> [T]he Court finds that KTMC is one of the most experienced ERISA litigation
> firms in the country, with particular expertise in the area of ERISA breach of
> fiduciary duty class actions.  Further, KTMC's litigation efforts have resulted in
> favorable court opinions in a number of ERISA decisions denying motions to
> dismiss and motions for summary judgment.  KTMC has also prevailed in appeals
> before the First, Third, Sixth, and Ninth Circuits resulting in seminal decisions
> that have helped shape this relatively new area of ERISA jurisprudence.

*In re Chesapeake Energy Corp. 2012 ERISA Class Litig.*, 286 F.R.D. 621, 624 (W.D. Okla. 2012).

KTMC's attorneys are qualified and experienced with broad-based, multi-jurisdictional experience in complex class action litigation, including extensive experience in the context of analogous ERISA claims.  KTMC is comprised of approximately 100 attorneys and a considerable support staff, with a presence on both coasts of the United States, *i.e.*, Radnor, Pennsylvania and San Francisco, California, providing the abundant resources necessary to litigate any case.  KTMC's litigation team is trial tested, being one of only a few firms to complete a trial in an ERISA breach of fiduciary duty class action that spanned several weeks: *Brieger v. Tellabs, Inc.*, No. 06-cv-01882 (N.D. Ill.).

Moreover, the firm has recovered hundreds of millions of dollars for class members in ERISA cases where the firm served as lead or co-lead counsel.  *See, e.g., In re Colgate-Palmolive Co. ERISA Litig.*, No. 07-cv-9515 (S.D.N.Y. Jul. 8, 2014) (KTMC as Co-Lead Counsel, helped obtain a $45.9 million settlement on behalf of retirement plan participants); *In re AOL ERISA Litig.*, No. 02-cv-8853 (S.D.N.Y. Sept. 28, 2006) (as Co-Lead Counsel with two other firms, KTMC helped obtain a $100 million settlement); *In re Bristol-Myers Squibb Co. ERISA Litig.*, No. 02-cv-10129 (LAP) (S.D.N.Y Oct. 12, 2005) (as Co-Lead Counsel, achieved a cash recovery of $41.22 million and significant structural relief regarding how the 401(k) plans at issue are administered a value of up to $52 million); *In re Global Crossing Secs. & ERISA*

*Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) (settlement providing injunctive relief and $78 million payment for plan losses).  And in the *Board of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.* case, KTMC filed suit in the Southern District of New York on behalf of AFTRA and other participants in JPMorgan's securities lending program alleging that JPMorgan violated its common law and ERISA fiduciary duties.  The parties reached a settlement in the amount of $150,000,000.

As demonstrated by this litigation to date, KTMC, along with the other Plaintiffs' counsel, has vigorously litigated this action on behalf of Plaintiffs and the proposed Class. KTMC spearheaded the filing of amended complaints containing details discerned through extensive and thorough investigation.  KTMC has delved into discovery, including with respect to preparing and serving document requests, and most recently taking a Rule 30(b)(6) deposition regarding the operation and administration of the Plan.  The firm résumé of KTMC, Exhibit 28, further demonstrates their adequacy to serve as such.  Rule 23(g)'s requirements for appointment of counsel are thus fully satisfied.

## V.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court certify this action as a class action under FED. R. CIV. P. 23(a) and (b)(1), appoint Plaintiffs Antoinette Fondren, Ferdinand Orellana, William Stirsman, Sean Daly, and James C. Monaghan as representatives for the certified Class, and appoint KTMC as counsel for the certified Class.

Dated:  October 1, 2018                 Respectfully Submitted,

                                        **KESSLER TOPAZ**
                                         **MELTZER & CHECK, LLP**

                                        /s/ *Mark K. Gyandoh*
                                        Joseph H. Meltzer
                                        Peter A. Muhic
                                        Mark K. Gyandoh

Donna Siegel Moffa
280 King of Prussia Road
Radnor, Pennsylvania 19087
(610) 667-7706
(610) 667-7056 (fax)
Email: jmeltzer@ktmc.com
          pmuhic@ktmc.com
          mgyandoh@ktmc.com
          dmoffa@ktmc.com


Kai Richter
Carl F. Engstrom
Jacob Schutz
          *admitted in W.D.N.Y.
**NICHOLS KASTER, PLLP**
4600 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Tel: 612-256-3200
Fax: 612-338-4878
Email: krichter@nka.com
          cengstrom@nka.com
          jschutz@nka.com


David S. Preminger
Tanya Korkhov
**KELLER ROHRBACK L.L.P.**
1140 Avenue of the Americas, 9th Floor
New York, NY 10036
Tel: 646-380-6690
Fax: 646-380-6692
Email: dpreminger@kellerrohrback.com
          tkorkhov@kellerrohrback.com


Lynn Lincoln Sarko
Derek W. Loeser
Erin M. Riley
Gretchen S. Obrist
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel: 206-623-1900
Fax: 206-623-3384
Email: lsarko@kellerrohrback.com
          dloeser@kellerrohrback.com
          eriley@kellerrohrback.com

gobrist@kellerrohrback.com

Samuel H. Rudman
Evan J. Kaufman
Jordan Mamorsky
**ROBBINS GELLER RUDMAN
    & DOWD LLP**
58 South Service Road, Suite 200
Melville, NY 11747
Tel: 631-367-7100
Fax: 631-367-1173
Email: srudman@rgrdlaw.com
        ekaufman@rgrdlaw.com
        jmamorsky@rgrdlaw.com

Nancy A. Kulesa (NK 2015)
Shannon L. Hopkins (SH-1887)
Stephanie Bartone
**LEVI & KORINSKY LLP**
733 Summer Street, Suite 304
Stamford, CT 06901
Tel: (212) 363-7500
Fax: (866) 367-6510
Email: shopkins@zlk.com
        nkulesa@zlk.com
        sbartone@zlk.com

27

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2018, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esq.