UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                        :

TERRE BEACH, *on behalf of all others similarly*  :
*situated*, et al.,                                :

                                      :       17-CV-563 (JMF)
                      Plaintiffs,      :

                                        :      OPINION AND ORDER
        -v-                        :

                                        :

JPMORGAN CHASE BANK, NATIONAL      :
ASSOCIATION et al.,                        :

                                        :

                    Defendants.      :

                                        :
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Plaintiffs bring this putative class action pursuant to the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1100 *et seq.*, on behalf of the JPMorgan Chase 401(k)

Savings Plan (the "Plan").  Plaintiffs allege that JPMorgan Chase Bank, N.A. ("JPMorgan") and

several related Defendants breached their duties of loyalty and prudence by including funds with

excessive fees in the Plan's investment options.  Plaintiffs now move, pursuant to Rule 23 of the

Federal Rules of Civil Procedure, for class certification, seeking to certify a class of Plan

participants and to appoint class counsel.  The parties also seek to seal certain filings associated

with the class certification motion.  The motion for class certification and appointment of class

counsel is granted, subject to modifications described below, and the motion to seal is also granted.

## BACKGROUND

### A.  The Plan

       This case concerns Defendants' management of the JPMorgan Chase 401(k) Savings Plan, a

retirement plan for JPMorgan employees.  *See* Docket No. 55 ("Second Amended Complaint" or

"SAC") ¶ 87.  The Plan has approximately 266,000 to 300,000 participants and over $14 billion in

assets.  *See id.* ¶ 87; *see also* Docket No. 96 ("Cert. Mem."), at 4.  It is a "defined contribution" or "individual account" plan, meaning that each participant has a separate, individual account within the Plan.  *See* SAC ¶ 60.  Participants choose how much money to put into their individual accounts (within legal limits) and in which of the Plan's investment options to invest.  *See id.* ¶¶ 60, 62-65.  As is common with 401(k) plans, participants receive tax benefits by investing in the Plan.  *See id.* ¶ 3.  As is also common with 401(k) plans, participants must invest the money in their individual accounts in an investment option offered by the Plan; they cannot invest the money outside of the Plan's funds.  *See id.*

JPMorgan and other Defendants control which investment options — that is, which "funds" — are in the Plan.  *See id.* ¶¶ 22-24.  More specifically, JPMorgan, as the trustee of the Plan trust, is authorized (1) to appoint and remove the Plan Administrator, who is named as the Plan's fiduciary and has "the authority to control and manage the . . . operation and administration of the Plan," and (2) to designate the Selection Committee, which, in turn, appoints and removes members of committees that oversee the Plan.  *See id.* ¶¶ 23, 28, 53; Docket No. 55-2 ("Trust Agreement"), at 56-57.  Two of the committees overseeing the Plan are the Compensation & Management Development Committee ("CMDC") and the Employee Plans Investment Committee ("EPIC"), both of which are named Defendants here.  *See* SAC ¶¶ 31, 41, 46.  The parties do not dispute at this stage that these Defendants and others were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  *See* SAC ¶¶ 26, 31, 45, 46; *see generally* Docket No. 107 ("Opp'n").

The funds that Defendants chose to include in the Plan have different characteristics and fees.  *See, e.g.*, SAC ¶¶ 145, 165.  Some of the funds are passively managed investments designed to mimic a market index (such as the S&P 500), while others are actively managed investments designed to beat the market.  *See id.* ¶¶ 88-89.  Each of the funds charges fees to the Plan, often to

cover management expenses.  *See id.*  The fees vary by fund, but generally are higher for actively managed funds.  *See id.*  For example, the fees in the passively managed S&P 400 Mid Cap Index Fund were four basis points per year, while the fees in the actively managed Mid Cap Growth Fund were approximately ninety-three basis points per year.  *See id.* ¶¶ 146, 151.  For some of the funds, JPMorgan pays the fees, while for other funds, the participants pay the fees.  *See* Opp'n 4.

**B.  The Plaintiffs**

The five remaining named Plaintiffs in this case — Antoinette Fondren, Ferdinand Orellana, William Stirsman, Sean Daly, and James Monaghan — were all participants in the Plan.[1]  They invested in different funds, each with different fees.  *See* SAC ¶¶ 16-20.  Fondren invested in the Target Date 2030 Fund, which, like other Target Date Funds, is made up of other investment options.  *Id.* ¶¶ 16; Docket No. 97-23; *but see* Cert. Mem. 11 (incorrectly stating Fondren invested in the Target Date 2025 Fund).  Orellana invested in the Core Bond Fund, the Mid Cap Growth Fund, the Small Cap Core Fund, the Target Date 2045 Fund, and others.  SAC ¶ 17; *see also* Docket No. 97-24.  Stirsman invested in the Core Bond Fund, SAC ¶ 18; *see also* Docket No. 97-25, the Target Date 2015 Fund, and others, *see* Docket No. 108-26.  Daly invested in the Target Date 2050 Fund and others.  SAC ¶ 19; *see also* Docket No. 97-26.  Monaghan invested in the Large Cap Growth Index Fund and others.  SAC ¶ 20; *see also* Docket No. 105.

Three of the Plaintiffs — Fondren, Daly, and Monaghan — signed arbitration agreements when accepting their employment with JPMorgan or its subsidiaries.  *See* Opp'n 10; Reply 3; Docket No. 109 ("Childers Decl.") ¶ 2.  In those arbitration agreements, the three Plaintiffs agreed to arbitrate all of their claims against Defendants except for "claims for benefits under a plan that is

---

[1]      Terre Beach's claims were dismissed by stipulation.  *See* Docket No. 112.  Thus, Beach is no longer a named Plaintiff (although she remains a member of the putative class).  *See id.*

governed by [ERISA]," among others. *See* Docket Nos. 109-1, 109-2. The agreement also stated that "[n]o claims may be arbitrated on a class or collective basis." *See id.*[2]

## C. The Litigation

Plaintiffs' primary contention in this lawsuit is that Defendants violated their fiduciary duties to the Plan by "retaining unduly expensive Plan investment options." SAC ¶ 2. Plaintiffs bring the suit on behalf of the Plan. *See id.* ¶ 266. They contend that Defendants violated ERISA § 404(a), which requires that fiduciaries manage plans "solely in the interest of the participants and beneficiaries" including by "defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a); *see also id.* § 1105; SAC ¶ 223. In particular, Plaintiffs challenge the Plan's inclusion of high-fee investment options (that is, funds), some of which were managed by JPMorgan and its affiliates. The funds they challenge are: the JPMIM Growth and Income Fund, which charged approximately sixty-five basis points per year, *see* SAC ¶ 140; the Mid Cap Value Fund, which charged forty-two basis points per year, *see id.* ¶¶ 145, 147; the JPMIM Mid Cap Growth Fund, which charged approximately ninety-three basis points per year, *see id.* ¶¶ 145, 146; the JPMIM Small Cap Core Fund, which charged approximately eighty-one basis points per year, *see id.* ¶ 157; the JPMIM Core Bond Fund, which charged between thirty-five and forty basis points per year, *see id.* ¶ 166; and the Target Date Funds, which had annual expenses of seven to eighteen basis points, *see id.* ¶ 176. Plaintiffs seek to recover any losses caused by the breaches and to restore any profits made through the breach pursuant to ERISA § 1109. *Id.* ¶ 229; *see* 29 U.S.C. § 1109(a). The majority of Plaintiffs' claims — and the only ones discussed here — previously survived a motion to dismiss. *See* Docket No. 73.

---

[2]     The class action waiver provision read: "**CLASS ACTION/COLLECTIVE ACTION WAIVER**: All Covered Claims under this Agreement must be submitted on an individual basis. **No claims may be arbitrated on a class or collective basis**. . . ." Docket No. 109-1.

Plaintiffs now seek to certify a class of Plan participants and to be appointed as class representatives. *See* Cert. Mem. 2. The class they propose is defined as follows:

> All persons, except Defendants and any other persons with responsibility for the Plan's investment menu, who were participants in or beneficiaries of the Plan, at any time between January 25, 2011 and the present (the "Class Period"), and whose individual accounts were invested in one or more of the subject funds.

*Id.*[3] The "subject funds" are the funds named in the Second Amended Complaint, to wit: the Growth and Income Fund, the Mid Cap Value Fund, the Mid Cap Growth Fund, the Small Cap Core Fund, the Core Bond Fund, and the Target Date Funds (which appear to include several Target Date Funds[4]). *See id.* at 2 n.5; Docket No. 107-1 ("Addendum A").

Defendants oppose class certification. *See* Opp'n 1. In particular, Defendants challenge the named Plaintiffs' standing to be class representatives; Plaintiffs' ability to serve as class representatives despite arbitration agreements and limited knowledge of the class; the inclusion of subject funds in which no Plaintiff invested; and the inclusion of funds which changed fee structures during the Class Period. *See id.* at i-ii. The parties also seek to seal various internal JPMorgan documents related to the class certification motion. *See* Docket Nos. 91, 92, 99. The Court granted the parties permission to temporarily seal the documents pending a decision on the underlying certification motion. *See* Docket No. 100.

---

[3] In the Second Amended Complaint, Plaintiffs defined the proposed class differently: "All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, at any time between January 25, 2011 and the present." SAC ¶ 69. But the Court has "broad discretion to modify the definition of the class," *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 201 (2d Cir. 2000), so it is not bound by the class proposed by Plaintiffs in the pleadings.

[4] The specific Target Date Funds are as follows: the Target Date 2015 Fund, the Target Date 2020 Fund, the Target Date 2025 Fund, the Target Date 2030 Fund, the Target Date 2035 Fund, the Target Date 2040 Fund, the Target Date 2045 Fund, the Target Date 2050 Fund, the Target Date 2055 Fund, and the Target Date Income Fund. *See, e.g.*, SAC ¶¶ 147, 158, 166; Docket No. 107-1.

**DISCUSSION**

Defendants oppose certification of Plaintiffs' proposed class on several grounds. First, they argue that the class definition must be narrowed to exclude funds in which Plaintiffs did not invest because Plaintiffs lack standing to represent participants in those funds. Second, Defendants contend that arbitration agreements prevent three named Plaintiffs from acting as class representatives. Third, Defendants assert that class certification is not proper under Rule 23 for several reasons. The Court addresses each of these contentions in turn. After that, the Court addresses two uncontested issues: the appointment of interim class counsel as class counsel; and the request to maintain three exhibits under seal.

**A. Standing**

**1. Applicable Legal Standards**

To ensure that federal courts resolve only "'those disputes in which the parties have a concrete stake,'" Article III of the United States Constitution requires a plaintiff seeking relief to demonstrate that he or she has "standing." *Bhatia v. Piedrahita*, 756 F.3d 211, 218 (2d Cir. 2014) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000)). The "irreducible constitutional minimum" of standing requires a plaintiff to establish three elements: (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014). Significantly, "[t]hat a suit may be a class action" — as this one is — "adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation

marks omitted); *see also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 199 (2d Cir. 2005) (hereinafter "*Central States I*") (noting in an ERISA lawsuit that "class representatives must have standing").  But, as in other class actions, "only one of the named Plaintiffs" in an ERISA class action "is required to establish standing in order to seek relief on behalf of the entire class."  *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 241 (2d Cir. 2007) (hereinafter "*Central States II*").

In the context of ERISA lawsuits brought on behalf of retirement plans, Section 502(a)(2) of the statute "confers standing," as a matter of statute,

> on "a participant, beneficiary or fiduciary" to seek relief under ERISA § 409. . . .  Claims pursuant to § 409(a) may not be made for individual relief, but instead are brought in a representative capacity on behalf of the plan.  Standing is conferred upon certain classes of plaintiffs whose common interest is in the financial integrity of the plan to seek remedies against the misuse of plan assets.  The basic standing issue is whether the plaintiff is *within the zone of interests ERISA was intended to protect*.

*Long Island Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.*, 710 F.3d 57, 65 (2d Cir. 2013) (internal quotation marks, alterations, and citations omitted). Similarly, as a constitutional matter, "a plan participant may have Article III standing to obtain injunctive relief related to ERISA's . . . fiduciary duty requirements without a showing of individual harm to the participant."  *Central States I*, 433 F.3d at 199.  It is "sufficient" that a participant who asserts "claims in a derivative capacity" alleges "injuries to the Plan caused by the [fiduciaries'] breach of their fiduciary duties."  *Long Island Head Start*, 710 F.3d at 67 n.5; *see Fletcher v. Convergex Grp., LLC*, 679 F. App'x 19, 20-21 (2d Cir. 2017) (summary order).

A plaintiff must prove standing "'in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'"  *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Lujan*, 504 U.S. at 561).  In determining standing at the class certification stage, the Court "must

accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party (i.e., the class members)." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (emphasis and internal quotation marks omitted).

### 2. Discussion

Defendants do not seek dismissal on standing grounds. Instead, invoking standing, they contend that the class definition must be narrowed to exclude funds in which Plaintiffs did not invest (the "Other Funds"). *See* Opp'n 18-22. That contention fails for two reasons.

First, Defendants argue that the rule in *Central States I* and *Long Island Head Start* — namely, that plan participants bringing derivative claims need not show individual harm to establish standing — "does not govern here" because the rule does not apply to "a defined-contribution plan like the one at issue here." Opp'n 19 & n.12 (citing *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015) (summary order)). But "[a]lthough the applicability of *Long Island Head Start* to actions involving defined contribution plans has been called into question, the decision has not been displaced as Second Circuit precedent." *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 155 (S.D.N.Y. 2017); *see also Cunningham v. Cornell Univ.*, No. 16-CV-6525 (PKC), 2019 WL 275827, at *3 (S.D.N.Y. Jan. 22, 2019) (adopting *Leber*'s reasoning and collecting other S.D.N.Y. cases that have done so); *Sacerdote v. N.Y. Univ.*, No. 16-CV-6284 (KBF), 2018 WL 840364, at *1, *7 (S.D.N.Y. Feb. 13, 2018) (applying *Long Island Head Start* to defined contribution plans). For one, *Long Island Head Start* did not "rel[y] on any unique characteristics of defined benefit plans to reach its conclusion about standing"; instead, it relied primarily on "the derivative nature of the suit." *Leber*, 323 F.R.D. at 155. Because a "suit brought on behalf of a defined contribution plan is no less derivative than one brought on behalf of a defined benefit plan," there is no reason the *Long Island Head Start* rule would not apply to a defined contribution plan. *Id.* Additionally, *Taveras*, the case upon which Defendants rely to distinguish *Long Island Head*

*Start*, is unpublished and "non-precedential." *See id.* In short, Defendants provide no convincing reason why *Long Island Head Start* does not govern here. And, under *Long Island Head Start* precedent, Plaintiffs have standing to challenge Defendants' conduct with respect to all the subject funds. *See id.*

Defendants' second argument is that Plaintiffs lack standing with respect to the Other Funds because claims about the Other Funds "do not implicate the same set of concerns" as the claims about the funds in which they invested. Opp'n 20. It is true that a class action plaintiff must have suffered an injury based on conduct that "implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class." *Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 161 (2d Cir. 2014) (internal quotation marks omitted); *see also Fletcher*, 679 F. App'x at 21 (summary order) (remanding for consideration of this factor in an ERISA case). But "the allegedly disloyal and imprudent conduct of defendants implicates the same set of concerns for investors in all [of the funds]" because the conduct relates to "the process Defendants used to manage the Plan." *See Leber*, 323 F.R.D. at 157 (internal quotation marks omitted). As other district courts in this Circuit have concluded, "[b]ecause the alleged harms are premised on the process Defendants used to manage the Plan, the claims involve similar inquiries and proof, and thus implicate the same set of concerns. Plaintiffs have class standing to pursue the claims on behalf of the absent class members, including those who invested in . . . funds offered by the Plan in which none of them invested." *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15-CV-9936 (LGS), 2017 WL 3868803, at *10 (S.D.N.Y. Sept. 5, 2017) (internal quotation marks omitted); *see also Leber*, 323 F.R.D. at 156 (concluding that the fact that the challenged conduct did not occur entirely "in the named plaintiffs' individual accounts does not deprive [P]laintiffs of their standing to seek redress on behalf of the Plan for the broader injuries the Plan incurred.").

**B. Arbitration of ERISA Claims**

Next, Defendants argue that three of the named Plaintiffs — Daly, Fondren, and Monaghan — cannot be class representatives because they agreed to arbitrate the claims in this suit. *See* Opp'n 10-14. Plaintiffs argue, among other things, that Defendants waived any right to enforce the agreements in this litigation. *See* Reply 4-5. A defendant is deemed to have waived its right to compel arbitration if it "engage[d] in protracted litigation that result[ed] in prejudice" to the plaintiff, *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991) (internal quotation marks and citation omitted), and "express[ed its] intent to litigate the dispute," *La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010). The relevant factors to consider in the inquiry are: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *Id.* (internal quotation marks omitted). Prejudice exists when "a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration," *Kramer*, 943 F.2d at 179, or when a party fails to raise arbitration as an affirmative defense in an answer, files substantive motions that do not seek to compel arbitration, and engages in discovery, *see, e.g.*, *La. Stadium*, 626 F.3d at 159 (eleven month delay and the filing of a motion to remove, a motion to transfer, a motion to stay, and an answer); *S&R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2d Cir. 1998) (fifteen month delay during which the party "failed to plead the defense of arbitration . . . despite asserting other defenses" and "engag[ed] in extensive discovery"); *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 108-10 (2d Cir. 1997) (five month delay, filing of substantive motions, and discovery).

Applying those standards here, the Court concludes that Defendants waived any right to compel arbitration. Defendants waited for more than a year to raise arbitration as an issue and now do so in briefing, not by motion. *See* Docket No. 1 (filed on January 25, 2017); Docket Nos. 20, 22

(proof of service on Defendants on March 8 and 9, 2017); Opp'n (filed on November 5, 2018). Defendants did not mention arbitration while litigating a motion to dismiss or when filing an answer with other affirmative defenses.  *See* Docket Nos. 59, 66, 78.  Moreover, the parties have conducted extensive discovery, including multiple depositions.  *See, e.g.*, Docket No. 117 (filing deposition transcripts).  These actions demonstrate an intent to litigate, and they establish that Plaintiffs would be prejudiced if Defendants now sought to compel arbitration.  *See La. Stadium*, 626 F.3d at 159; *Latona Trucking*, 159 F.3d at 83; *PPG Industry*, 128 F.3d at 108-10.  Because Defendants waived any right to compel arbitration in this litigation, Plaintiffs are, in effect, not bound by the arbitration agreements.  In this context, the unenforceable agreements cannot preclude Plaintiffs from representing the proposed class.

## C.  Class Certification

The Court turns, then, to the analysis of class certification.  Under Rule 23, members of a class may sue as representational parties "only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  "Said differently, in order to qualify for class certification, plaintiffs in the proposed class must demonstrate that they satisfy four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation."  *Central States II*, 504 F.3d at 244.  The third factor, typicality, "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Id.* at 245 (internal quotation marks omitted).  Part of the typicality requirement (or a separate requirement implicit in Rule 23(a), as it is sometimes viewed, *see* 1 Newberg on Class Actions § 3:1 (5th ed., June 2019

update)) is that the proposed class representatives be members of the class they seek to represent. *See id.*; *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011). In addition, there is an "implied requirement of ascertainability . . . , which demands that a class be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) (internal quotation marks omitted), *petition for cert. filed*, No. 17-664 (Nov. 3, 2017). In the Second Circuit, that "requires only that a class be defined using objective criteria that establish a membership with definite boundaries." *Id.* at 264.

If the requirements of Rule 23(a) are met, "the district court must also find that the action can be maintained under Rule 23(b)(1), (2), or (3)." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011). Plaintiffs need establish only one basis for certification under Rule 23(b). *See Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017). "Rule 23(b)(1) applies . . . where individual adjudications 'as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.'" *Wal-Mart*, 564 U.S. at 361 n.11 (quoting Rule 23(b)(1)(B)). The Court addresses each element in turn.

### 1. Numerosity

The numerosity requirement is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although the practicality of joinder "depends on all the circumstances surrounding a case, not on mere numbers," the Second Circuit has stated that "courts are likely to conclude that the numerosity requirement is satisfied when the class comprises 40 or more members." *Novella v. Westchester Cty.*, 661 F.3d 128, 143-44 (2d Cir. 2011) (internal quotation marks omitted); *see, e.g.*, *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (numerosity requirement is met for class of 275 people); *Moreno*, 2017 WL

3868803, at *4 (numerosity requirement met in derivative ERISA suit where the plan had 22,000 participants and 10,000 former participants). Because the class here consists of thousands of members, *see* SAC ¶ 70, the numerosity requirement is plainly met.

### 2. Commonality

Next, the "commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *Central States II*, 504 F.3d at 245 (internal quotation marks omitted). "In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 452 (S.D.N.Y. 2004) (internal quotation marks omitted); *see also In re Marsh ERISA Litig.*, 265 F.R.D. 128, 142-43 (S.D.N.Y. 2010) ("By their very nature, ERISA actions often present common questions of law and fact, and are therefore frequently certified as class actions."). Here, the questions of law and fact — including "(1) whether Defendants were fiduciaries of the Plan; (2) whether Defendants breached their fiduciary duties; (3) whether the Plan and its participants and beneficiaries were injured by Defendants' breaches; and (4) whether the Class is entitled to damages and, if so, the proper measure of damages" — are "common questions [that] satisfy Plaintiffs' burden under Rule 23(a)(2)." *In re Marsh*, 265 F.R.D. at 143; *see* SAC ¶ 72; *see also Moreno*, 2017 WL 3868803, at *4 ("Typically, the question of defendants' liability for ERISA violations is common to all class members."). Admittedly, distinctions about which fund class members invested in and when "may affect the calculation of damages." *Moreno*, 2017 WL 3868803, at *5. But, because commonality does not require that all issues be identical as to all class members, that does "not defeat class certification when the underlying harm derives from the same common contention — that the investment lineup made available to all participants violated ERISA." *Id.* Accordingly, the commonality requirement is met here.

### 3. Typicality

The third Rule 23(a) requirement — typicality — is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Central States II*, 504 F.3d at 245 (internal quotation marks omitted). In many contexts, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Wal-Mart*, 564 U.S. at 349 n.5. In ERISA breach of fiduciary duty cases, however, courts sometimes break the typicality requirement into three elements. *See, e.g.*, *Moreno*, 2017 WL 3868803, at *7; *see also Cunningham*, 2019 WL 275827, at *7 (breaking down into first two components). The first element is that the claims largely "arise from the same course of events — the[ parties'] participation in the Plan." *Moreno*, 2017 WL 3868803, at *7. That element is satisfied here, as the claims arise from Plaintiffs' participation in the Plan. Second, plaintiffs must make "similar legal arguments to prove liability — that Defendants mismanaged the Plan in violation of ERISA." *Id.* That element is also satisfied here, as Plaintiffs' argument is that Defendants mismanaged the Plan by including funds with excessive fees among the investment options. The third element is, effectively, that each plaintiff invested in at least one of the subject funds. *See id.*

Defendants argue that Plaintiffs fail to satisfy this third element in two ways. First, they contend that one of the Plaintiffs, Monaghan, cannot represent the class because a "class representative must be part of the class," and he is a not a member of the proposed class. *Wal-Mart*, 564 U.S. at 348-49 (internal quotation marks omitted); *see also In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 n.52 (S.D.N.Y. 2006) (noting in an ERISA case that a "class representative must be part of the class"). They are correct. In their motion papers, Plaintiffs seek to represent only "participants in or beneficiaries of the Plan . . . whose individual accounts were invested in one or more of the subject funds," Cert. Mem. 2; *cf.* SAC ¶ 69 (including all participants

without reference to the subject funds), and it is undisputed that Monaghan did not invest in any of the subject funds, *see* Addendum A; SAC ¶ 20; *but see* Cert. Mem. 11 ("Each of the named plaintiffs was . . . invested in the options currently at issue.").  Accordingly, Monaghan cannot be appointed as a class representative.

Second, Defendants argue that the class definition must be narrowed to ensure that Plaintiffs' investments are typical of the class members' investments.  *See* Opp'n 25.  Defendants are correct that none of the funds have the same fee structure today that they had at the start of the Class Period in January 2011.  Two funds reduced the fees charged to the Plan to zero — the Small Cap Core Fund starting on December 19, 2015, *see* SAC ¶¶ 157, 159, 160, and the Core Bond Fund starting on March 12, 2016, *see id.* ¶¶ 166-68 — and the Target Date Funds substantially reduced their fees starting on April 1, 2016, *see id.* ¶¶ 176, 178.[5]  Plaintiffs acknowledge this fact, but argue that it affects only damage calculations, not class certification.  *See* Reply 9-10; *see also Leber*, 323 F.R.D. at 162; *In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12-CV-2548 (VSB), 2017 WL 1273963, at *10 (S.D.N.Y. Mar. 31, 2017).  But the changed fees here do affect the typicality of Plaintiffs' investments.  Typicality requires a "common thread linking the proposed class members," *see In re J.P. Morgan*, 2017 WL 1273963, at *9, and the common thread here is investment in funds with allegedly excessive fees.  The named Plaintiffs share this common thread because they invested in the subject funds when the funds had excessive fees.  But participants who invested in the subject funds only when the funds had no fees or reasonable fees do not share the same thread.  *See, e.g.*, *Bell v. Pension Comm. of ATH Holding Co.*, No. 15-CV-2062 (TWP), 2018 WL 4385025, at *5 (S.D. Ind. Sept. 14, 2018) (stating that in an ERISA case containing allegations

---

[5]     Three of the subject funds were eliminated during the Class Period: the Growth and Income Fund was removed some time after January 2013, *see* SAC ¶ 141, and the Mid Cap Value Fund and Mid Cap Growth Fund were not offered after November 6, 2015, *see id.* ¶¶ 145, 148 n.14, 150.

regarding excessive investment and management fees, "the inclusion of two different fee structures[] in the proposed class" defeats typicality).  Thus, for the named Plaintiffs' claims to be typical of the class's, the class definition must be narrowed to exclude members who invested in the subject funds only at times when the funds had no fees or reasonable fees.

### 4. Adequacy of Representation

The final Rule 23(a) factor is adequacy of representation.  Class representatives can adequately represent a class if they (1) "have an interest in vigorously pursuing the claims of the class" and (2) "have no interests antagonistic to the interests of other class members."  *In re Literary Works*, 654 F.3d at 249 (internal quotation marks omitted).  Defendants do not suggest any antagonism here, nor does the Court find any.  The general rule that there is "a relatively low likelihood of intra-class conflicts in cases of excessive fee claims" because the recovery is to the Plan, not to individual Plaintiffs, holds true here.  *See Leber*, 323 F.R.D. at 164 (internal quotation marks omitted).  Instead, Defendants argue that the named Plaintiffs cannot vigorously pursue the interests of the class because they lack the knowledge necessary "to protect the interests of the class against the possibly competing interests of the attorneys."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 42 (2d Cir. 2009) (internal quotation marks omitted); *see* Opp'n 14-16.  Although courts may properly deny class certification "where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect interests of the class," courts should also view with "general disfavor . . . attacks on the adequacy of a class representative based on the representative's ignorance."  *In re Flag Telecom*, 574 F.3d at 41-42 (internal quotation marks omitted).  In accordance with this guidance, courts tend to find that the "deficiencies in knowledge" necessary to disqualify a representative "must either pertain to issues central to the plaintiffs' case or . . . must be so substantial that they threaten to undermine plaintiffs' case as a whole."  *See Scott v. N.Y. City Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353,

355-56 (S.D.N.Y. 2004) (internal quotation marks omitted); *see, e.g.*, *id.* at 356 (class representatives did not know what the allegations in the complaint were, what a class representative was, who was included in the class, or what the lawsuit was about); *Kulig v. Midland Funding, LLC*, No. 13-CV-4715 (PKC), 2014 WL 6769741, at *3 (S.D.N.Y. Nov. 20, 2014) (collecting cases).

The named Plaintiffs know enough about this case to act as class representatives. Daly could explain what a "higher cost ratio" was, *see* Docket No. 114-1 ("Daly Tr."), at 44; that unreasonably high fees would be "anything higher than the norm for an investment of a certain class that has a certain level of return associated with it," *id.* at 53; and that the class sought "[s]ome type of oversight" as well as damages, *id.* at 74; *see id.* at 52-53. Stirsman could explain that the action related to fees (although he also said it related to assets' underperformance). *See* Docket No. 114-2 ("Stirsman Tr."), at 11-13, 17. Fondren could explain that she invested in the Target Date Fund because it included bonds (as compared to stocks) and that she now alleges that it had excessive fees. *See* Docket No. 114-3 ("Fondren Tr."), at 53-54, 72-73. Orellana could explain that the lawsuit was about excessive fees and the fact that most of the investment options were from JPMorgan or Blackrock, which somehow benefited JPMorgan (although she could not explain how). *See* Docket No. 114-4 ("Orellana Tr."), at 95-96, 99-100. And all Plaintiffs could explain the representative nature of a class action and that their obligations as a class representative included being deposed, staying up to date on the case, and making decisions for the class (although many conceded they had not made any such decisions yet). *See* Daly Tr. 50-51, 89-90; Stirsman Tr. 41, 43-44; Fondren Tr. 116-18; Orellana Tr. 206-08. Fondren stated that she had even researched the lawyers on her own, by reading newspaper articles about similar cases they had handled. *See* Fondren Tr. 148-49. This level of knowledge is sufficient to withstand Defendants' challenge and to allow the named Plaintiffs to be appointed class representatives.

### 5. Ascertainability

Defendants do not challenge the ascertainability of Plaintiffs' proposed class, and the Court finds that the class is "sufficiently definite" because it is "administratively feasible" to determine whether someone is a member. *See In re Petrobras Sec.*, 862 F.3d at 260 (internal quotation marks omitted). When the class "may be ascertained with reference to investor records, it is administratively feasible to determine whether an investor is a [class] member." *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 353 (S.D.N.Y. 2015). That is precisely the situation here: The class members can be identified from the Plan's records through a simple search for those invested in the subject funds during the relevant time. *See* Cert. Mem. 20. Indeed, Defendants have already done such a search for the named Plaintiffs. *See, e.g.*, Docket 108-25 (Defendants' production of Stirsman's Plan records). Accordingly, the proposed class, as modified above, meets the explicit and implicit requirements of Rule 23(a).

### 6. Rule 23(b)(1)

Finally, Plaintiffs seek to certify the class under Rule 23(b)(1)(B), for "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications." Fed. R. Civ. P. 23(b)(1)(B); *see* Cert. Mem. 20. The "derivative nature of ERISA § 502(a)(2) claims makes them paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class . . . because any decision regarding whether the defendants breached their fiduciary duties would necessarily affect the interests of other participants." 2 Newberg on Class Actions § 4:21 (5th ed., June 2019 update) (internal quotation marks omitted); *see also Coan v. Kaufman*, 457 F.3d 250, 261 (2d Cir. 2006) ("[A] breach of trust by . . . [a] fiduciary . . . similarly affecting the members of a large class of beneficiaries . . . [is] among the classic examples of Rule 23(b)(1)(B) class actions." (internal quotation marks omitted)); *In re Glob. Crossing*, 225 F.R.D. at 453 ("Because of ERISA's

distinctive representative capacity and remedial provisions, ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class." (internal quotation marks omitted)). Defendants proffer no reason why this default rule does not govern here, and the Court finds none. As in the default case, Plaintiffs here seek "Plan-wide relief . . . to recover losses sustained by the Plan" and to enjoin future violations, both of which bind the Plan and all Plan participants even without class certification. SAC ¶¶ 218, 261; *see* 2 Newberg § 4:21. Thus, the class is properly certified under Rule 23(b)(1)(B).[6]

**D. Appointment of Class Counsel**

Defendants do not oppose Plaintiffs' request to appoint their interim counsel, Kessler Topaz Meltzer & Check, LLP ("KTMC"), as class counsel. *See* Cert. Mem. 2 (requesting appointment of counsel); Opp'n i-ii; Docket No. 35 (appointment of KTMC as interim counsel). In evaluating this request, the Court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Considering these factors, the Court finds that KTMC will "fairly and adequately represent the interests of the class." *See* Fed. R. Civ. P. 23(g)(4). On the first, counsel has already filed multiple amended complaints and successfully litigated a motion to dismiss. On the second and third, KTMC's extensive experience with class actions generally, and ERISA class actions specifically, demonstrates its ability to handle class actions and its extensive knowledge of ERISA

---

[6]        Because the Court certifies the class under Rule 23(b)(1)(B), it need not address certification pursuant to Rule 23(b)(1)(A). *See* Cert. Mem. 22-23.

law.  *See, e.g.*, *In re Mercy Health ERISA Litig.*, No. 16-CV-441, 2017 WL 1078589, at *1 (S.D. Ohio Mar. 21, 2017) (appointing KTMC interim class counsel); *Boggs v. Chesapeake Energy Corp.*, 286 F.R.D. 621, 624 (W.D. Okla. 2012) (appointing KTMC interim class counsel because "KTMC is one of the most experienced ERISA litigation firms in the country, with particular expertise in the area of ERISA breach of fiduciary [duty] class actions"); *see also La. Mun. Police Employees Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 11-CV-289, 2017 WL 3149424, at *4 (D. Vt. July 21, 2017) (appointing KTMC co-class counsel in a securities class action because the parties did not dispute that it is "among the most experienced class action law firms in the country").  And finally, as a firm of approximately 100 lawyers with offices across the country, KTMC has sufficient resources to devote to this class action, as it has already done.  *See* Cert. Mem. 24.  Accordingly, the Court appoints KTMC as class counsel.

**E.  Sealing**

One final matter calls for brief discussion.  The parties seek to keep under seal exhibits containing internal JPMorgan documents about the Plan and the parts of a brief that rely on them.  *See* Docket Nos. 91, 92, 99.[7]  The three documents are: excerpts from the 2016 Investment Policy Statement of the JPMorgan Chase 401(k) Savings Plan, *see* Docket No. 97-7; minutes from the June 18, 2015 EPIC meeting, *see* Docket No. 97-21; and minutes from the September 22, 2015 EPIC meeting, *see* Docket No. 97-22.  Defendants argue that the documents contain "proprietary information concerning JPMorgan Chase's internal governance and reflect private deliberations."

---

[7]      One other sealing issue, about sealing the deposition transcripts, has been resolved.  In accordance with the parties' agreement to keep deposition testimony confidential for thirty days, Defendants sought to seal excerpts of deposition testimony that they had filed with the Court within that thirty-day window.  *See* Docket Nos. 64, 106, 108.  Plaintiffs sought to keep under seal after the thirty-day window only twelve lines of the Daly deposition.  *See* Docket No. 115.  The Court granted that request and ordered Plaintiffs to file the remaining depositions on the docket, which they did.  *See* Docket Nos. 116, 117-1, 117-2, 117-3, 117-4, 117-5.

Docket No. 92; *see also* Docket No. 64. The redactions in the brief relate to Plaintiffs' arguments that Defendants were fiduciaries of the Plan and that Defendants breached their fiduciary duties. *See* Cert. Mem. at 4-10.

The issue here is the "relevance of the document[s'] specific contents to the nature of the proceeding." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (internal quotation marks omitted). That is because a filing is a judicial document subject to a presumption of public access only if it is "'relevant to the performance of the judicial function and useful in the judicial process.'" *Id.* (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)). A document is relevant to the judicial function if it is *currently* relevant to the judicial function, not if it "*could* later become relevant to the judicial function." *United States v. HSBC Bank USA, NA*, 863 F.3d 125, 140 (2d Cir. 2017). Under this standard, the sealed exhibits are not judicial documents subject to a presumption of public access. The exhibits are used in support only of arguments regarding Defendants' status and conduct as fiduciaries, and Defendants do not contest those arguments here. *See* Cert. Mem. 6, 10; *see generally* Opp'n. Nor does the Court need to address the arguments, or rely on the documents offered in support of them, in resolving the class certification motion. Thus, at this time, the exhibits are not properly considered judicial documents.

Because "the findings requirement for sealing documents arises only after a First Amendment right of access to judicial documents is found," *N.Y. Times Co. v. U.S. Dep't of Justice*, 806 F.3d 682, 688 (2d Cir. 2015) (internal quotation marks omitted), the exhibits here are not subject to a presumption of access or a findings requirement and may be filed under seal. And, because sealing the exhibits is proper, redaction of information taken from the exhibits is proper as well. *See id.* at 689 ("Because we have upheld nondisclosure of that Exhibit in this opinion, we will uphold nondisclosure of those redactions.").

**CONCLUSION**

For the reasons stated above, Plaintiffs' motion for class certification and appointment of

lead counsel is GRANTED as modified. Specifically, the Court certifies the following class:

> All persons, except Defendants and any other persons with responsibility for the Plan's investment menu, who were participants in or beneficiaries of the Plan, at any time between January 25, 2011 and the present (the "Class Period"), and whose individual accounts were invested in one or more of the following funds: the Growth and Income Fund; the Mid Cap Value Fund; the Mid Cap Growth Fund; the Small Cap Core Fund, but only if the investment occurred before December 19, 2015; the Core Bond Fund, but only if the investment occurred before March 12, 2016; and any of the Target Date Funds, but only if the investment occurred before April 1, 2016.

Additionally, the Court appoints Daly, Fondren, Orellana, and Stirsman — but not Monaghan — as

class representatives, and appoints KTMC as class counsel.

Finally, the Court GRANTS the motion to seal. By **June 20, 2019** (unless they have already

done so), Defendants shall file unredacted copies of the three sealed exhibits — that is, Docket Nos.

97-7, 97-21, and 97-22 — with the Court's Sealed Records Department.

The Clerk of Court is directed to terminate Docket No. 95.

SO ORDERED.

Dated: June 11, 2019
      New York, New York
                                JESSE M. FURMAN
                              United States District Judge